UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. No. 05-11682MLW

| | |
|---|---|
| L & T YACHT SALES, INC. | ) |
|     Plaintiff | ) |
| v. | ) |
| | ) |
| POST MARINE CO., INC., | ) |
|     Defendant | ) |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Post Marine Co., Inc. ("Post") requests that summary judgment be entered in its favor on all counts set forth in Plaintiff's Complaint and as grounds in support states:

**I.  STATEMENT OF THE CASE**

Post is a New Jersey recreational boat manufacturer, which sells its product to boat dealers who resell the boats to consumers. Post does not sell its boats to retail customers. L&T Yacht Sales, Inc. ("L&T") is a Rhode Island corporation that privately purchased a used Post boat, which is the subject of this lawsuit ("the Relentless"). Although manufactured by Post, L&T purchased the boat "used" from an unrelated private third party. L&T's Complaint asserts five causes of action: breach of contract; fraudulent misrepresentation; negligent misrepresentation; breach of implied warranty of merchantability; and negligence arising out of the alleged failure of the boat's "gel coat."[1] The parties attended a scheduling conference on May 30, 2006 at which time the Court entered a scheduling order setting out discovery deadlines. The parties concluded discovery and attended another status conference on May 4, 2007 at which time the Court entered a schedule for filing summary judgment motions. Concurrently with this motion, Post is filing a Motion to Exclude Testimony, Documents,

---

[1] Gel coat is a protective gloss covering a boat's hull. Gel coat is not manufactured by Post.

1

Expert Witnesses and Undisclosed Witnesses.

**II.     ARGUMENT**

Although Post issues a written one year limited warranty ("Limited Warranty") which covers all boats it manufactures, the boat purchased by L&T was out-of-warranty at the time L&T purchased the boat. The Limited Warranty was a "repair or replacement" warranty which specifically excluded gel coat, limited the duration of the implied warranty of merchantability to the duration of the Limited Warranty and further disclaimed all liability, incidental and consequential damages.

Although the boat was out-of-warranty, as a gratuitous accommodation to L&T, Post agreed to make certain repairs to the gel coat on the boat. This agreement, including the terms and conditions upon which the repairs would be made, was set forth in two letters dated August 25, 2004 and September 2, 2004.

During the repair process, L&T's sole officer and director, Todd Hamilton, visited Post's factory to inspect the repair process. After several visits during which he voiced no objections, on June 15, 2005, toward the end of the repair process, he provided Post with a written checklist of what remained to be done.

On July 15, 2005, after Post had performed over 2,200 hours of repair work, Mr. Hamilton, claiming the scope of work was not what he wanted (he now claims he wanted Post to strip the entire boat of all gel coat), ordered Post to stop work on the boat, and then removed the boat.

"[W]hen a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof at trial, there can no longer be a genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." *Smith v. Stratus Computers, Inc.*, 40 F.3d 11, 12 (1st Cir.1994), cert. denied, 514

2

U.S. 1108 (1995). In connection with a motion for summary judgment, "[m]ere allegations, or conjecture unsupported in the record, are insufficient to raise a genuine issue of material fact." *Horta v. Sullivan*, 4 F.3d 2, 11 (1st Cir.1993).

  A. <u>*Post is entitled to summary judgment on Count I - Breach of Contract*</u>

Count I of the Complaint is for breach of contract. The elements of a cause of action for breach of contract are: the existence of a contract, its breach by the defendant, and damages. *Michelson v. Digital Financial Services, 167 F.3d 715, 720 (1st Cir.1999).*

L&T alleges that "Post breached its contract with L&T by failing to repair the boat as promised and in a good and workmanlike and timely matter." *See*, Complaint, ¶ 29, attached as Exhibit A to Statement of Material Facts (the "Statement").

L & T claims that Post only repaired the "affected areas" of gel coat, rather than replace the boat's entire gel coat. However, Post never agreed to remove the gel coat from the entire boat, as evidenced by every piece of correspondence exchanged between the parties. Mr. Hamilton's testimony and L&T's allegations to the contrary are a last minute attempt to change the terms of the agreement, and constitute a "mutual mistake" making the contract voidable at Post's discretion.

Post's August 25, 2004 letter is clear and unambiguous: "Post Marine will inspect the entire vessel to determine the extent of the gel coat repairs to be performed." *See* August 24, 2005 letter, attached as Exhibit D to the Statement. In the same letter, Post agreed to repair only "the affected areas." In the September 2, 2004 letter sent to L&T from Joseph Matorana, he specifically states:[2] "To clarify the letter sent to you from Michel Weisz. In making the repairs to your your[sic] boat we will spray gelcoat in such a way as to eliminate any spotting or color

---

  [2] It is the September 2, 2004 letter upon which L&T basis its claim that the gel coat to the entire boat would be replaced. *See,* Complaint, ¶15, attached as Exhibit A to the Statement of Material Facts.

variations <u>in the areas to be repaired</u>. Gelcoat will be removed from entire surfaces, examples being shelter sides, cockpit, forward deck, side decks, pulpit and hull to ensure consistency." [emphasis added] *See* September 2, 2004 letter attached as Exhibit F to the Statement. These letters form the basis of the entire agreement between the parties.

> Q. Was there ever anything in writing that indicated what Post was going to do?
> A. Yes.
> Q. Okay. What was there in writing?
> A. A letter from Joe Martorna to me.
> Q. Anything else?
> A. About the work they were going to do?
> Q. Yes.
> A. No, not about – The only thing in writing from them about work was the one letter, I believe, except for the letter from you, of course.

*See*, Deposition of Todd Hamilton, p. 27, ln. 10-21 attached as Exhibit I to the Statement .

L&T never objected to or otherwise disputed the terms of these letters until one year later when this lawsuit was filed.

The only evidence that Post was not performing in accordance with the terms of the August 25, 2004 or September 2, 2004 letters is a single letter from L&T on June 15, 2005. This letter was a specific and detailed punch-list of the repairs remaining to be done on the boat. *See*, June 15, 2005 letter attached as Exhibit G to the Statement. By this time the boat was nearly complete, needing only to have the bottom paint inspected. *See*, Deposition of Joe Matorana, p.24, ln. 8-19, attached as Exhibit I to the Statement.

Not a single reference in the June 15, 2005 letter supports L&T's claim that the boat's entire gel coat would be replaced, rather than just having the affected areas repaired. This is despite the fact that L&T meticulously listed thirteen other minor areas in need of repair including, blending spots on front deck hatches, refinishing non kid on front bench seat, fixing over spray on back deck walls, refinishing bridge compartments, refinishing the compass area on the bridge, fixing overspray

on the bridge compartment and aluminum pipe, re-caulking side windows, cleaning the gunnels from overspray, repairing a bubble below the stern light on the transom, repairing bubbles on the right and left boot stripes, redoing the crack below the engine intakes, refinishing the backdoor step, and fixing a crack in the stem of the bow.  Nowhere does the letter complain that Post did not "remove all the gel coat from the entire boat."

Still, on July 15, 2005, L&T ordered Post to stop repairing the boat.[3]  Joseph Martorana, Vice President of Manufacturing for Post testified that Post spent approximately 2,200 hours of time repairing the boat in accordance with the terms of the August 25, 2004 letter.  *See*, Deposition of Joseph Matorana, p.24, ln. 2-3, attached as Exhibit I to the Statement.  *See*, July 15, 2005 letter attached as Exhibit H to the Statement.  Even the letter of July 15, 2005 only complains that the boat was not <u>completed</u>.  It does not state that the scope of work was not as Post had agreed – to fix the affected areas.

---

[3] Independent of the foregoing, as its Ninth affirmative defense, Post alleged that to the extent it entered an enforceable agreement to repair the boat, Post "fully and completely performed its obligations thereunder, and was prevented from fulfilling and completing performance by Plaintiff." *See*, Answer and affirmative defenses attached as Exhibit J to the Statement of Material Facts. *See, generally, Frank Fitzgerald Inc. v. Pacella Bros, Inc.*, 2 Mass.App.Ct. 240, 242, 310 N.E.2d 379, 381 (Mass.App. 1974) holding that "[o]ne who prevents performance of a contract cannot take advantage of its nonperformance."

In the Complaint, L&T alleged for the first time that Post was supposed to remove all the gel coat from the entire boat. Thus, the most that L&T can allege is that it believed it was going to receive a benefit different than what Post was actually offering. This is a classic example of "mutual mistake." "The legal principle underlying the doctrine of mutual mistake are well established. Where there has been a mistake between the parties as to the subject mater of a contract, there has been no 'meeting of the minds' and the contract is voidable at the election of the party adversely affected." *LaFleur v. C.C. Pierce Co., Inc.*, 398 Mass. 254, 257-58, 496 N.E.2d 827, 830 (1986). "The mistake must be shared by both parties, and must relate to an essential element of the agreement." *Id*. 496 N.E. 2d at 830.[4]

Thus, Post is entitled to summary judgment because no "contract" exists as a matter of law due to the parties' mutual mistake. Alternatively, there is no enforceable contract because of lack of consideration.[5] "Under Massachusetts law, a valid contract requires offer, acceptance, and consideration." *Campbell v. General Dynamics Government Systems, Corp*., 321 F.Supp.2d 142, 148 fn. 3 (D.Mass.2004).

The August 25, 2004 letter sets forth the terms of the gratuitous accommodation. Post's counsel specifically wrote to counsel for Plaintiff that: "Having said that, Post is willing as a matter of accommodation and customer good will to gratuitously undertake and perform repairs to the gel coat finish." *See*, August 24, 2004 letter attached as Exhibit D to the Statement.

Further, at his deposition Todd Hamilton testified that no consideration was paid:

> Q. Did you ever pay Post anything to repair the boat?

---

[4] Here, Post would be the adverse party, because to enforce the agreement as L&T alleges requires Post to confer a greater benefit than it had already agreed to perform gratuitously.

[5] Post raised the lack of consideration as its fifth affirmative defense. See, Post's Answer and Affirmative Defenses attached as Exhibit J to the Statement of Material Facts.

A. Nope.

*See*, Deposition of Todd Hamilton, p. 32, ln. 22-23, p. 33, ln. 1, attached as Exhibit C to the Statement.

The court in *Neuhoff v. Marvin Lumber and Cedar Co.*, 370 F.3d 197 (1st Cir. 2004) discussed similar issues concerning a manufacturer's promise to repair defects after knowledge of their existence. There, purchasers of windows complained to the window manufacturer of "window decay." The manufacturer notified the purchasers that the windows would be replaced for free due to decay. Certain windows were then replaced. Thereafter, a contractor of the manufacturer orally agreed to replace other windows due to their decay. The manufacturer then notified the purchasers that the remaining windows would only be replaced if new windows were purchased at a discount. The purchasers filed suit for breach of the "oral agreement" to replace the defective windows.

The court drew a distinction between promises that arise under the original contract and those that are independent of the contract. Thus, the court held that if the contractor's oral agreement to repair the windows existed apart from the underlying contract, it was still unenforceable since no consideration was paid to bind it. "Nonetheless, the [purchasers'] breach of contract claim fails because [the manufacturer's] alleged promise to repair lacked consideration." *Neuhoff*, 370 F.3d at 201.

In this case, there was no promise from Post under the terms of the Limited Warranty because it did not apply. The boat was purchased as a used boat, after the warranty term had expired and the problem was with gel coat, an item expressly not covered by the warranty. Having paid no consideration to bind any independent promise to repair, no contract arose as a matter of law for Post to have breached.

To the extent L&T may claim that it is entitled to the repairs under the terms of the limited

warranty, the boat which is the subject of the dispute between Post and L&T was originally sold to Jim Zappi before he sold it to L&T. The boat was covered by a one year Limited Warranty. In accordance with G.L c.106, § 2-316 [6] the Limited Warranty was a "repair or replace" warranty, for one year, not transferable to subsequent purchasers, and did not warrant the performance of gel coat.[7] *See*, Limited Warranty attached as an exhibit to the Affidavit of Ken Jensen attached as Exhibit B to the Statement.

It was only after the expiration of the warranty that the gel coat began to crack. At that time Post, as a gratuitous accommodation, agreed to repair the boat for L&T under the terms of its August 25, 2004 letter.[8]

"A 'promise to repair warranty' refers to a type of warranty that stipulates the remedy to be invoked *if* the product purchased becomes faulty. If the promisor does not abide by the promise to repair, then the promisee has a cause of action for the underlying breach of warranty for the defective product. In this case, the promise to repair made by [the manufacturer] was not the type of promise that stipulates the remedy to be invoked in case of a defect, rather it was an independent promise addressing a known defect." *Neuhoff*, 370 F.3d at 201 (emphasis original, internal citations omitted).

Here, there cannot be a breach of contract under the terms of the Limited Warranty because

---

[6] GL c.106, § 2-316(1) provides in pertinent part that: "Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed whenever reasonable as consistent with each other..."

[7] The terms of the Limited Warranty provided: "The replacement or repair of defective parts as stated in this warranty shall be under sole remedy of the purchaser and the sole liability of the Dealer and the Company under this warranty and any implied warranties." *See*, Limited Warranty attached as an exhibit to the Affidavit of Ken Jensen attached as Exhibit B to the Statement of Material Facts.

[8] In its first Request for Admissions propounded on the Plaintiff, to which Plaintiff never responded, the series of documents that Post requested L&T admit contained certain letters of correspondence. The failure to admit or deny deems each request admitted. *See, U.S. v. DiFonzo*, 654 F.Supp. 263 (D.Mass. 1986).

the Limited Warranty specifically did not apply to gel coat or to individuals other than the first owner, and was limited in duration to one year from the date of delivery to the first owner. *See*, Limited Warranty attached as attached as an exhibit to the Affidavit of Ken Jensen attached as Exhibit B to the Statement.

      B.    *Post is entitled to summary judgment on Count IV - Breach of the Implied Warranty of Merchantability*

L&T asserts a claim against Post for breach of the implied warranty of merchantability in count IV of the complaint. Although labeled a "breach of implied warranty of merchantability," L&T only asserts that "[t]he boat and its gel coat were not suited for its particular purpose." *See*, Complaint, ¶ 44, attached as Exhibit A to the Statement.

Despite the fact that plaintiff ignores the clear differences between the implied warranty of fitness for a particular purpose and the implied warranty of merchantability[9],[10] Post is entitled to summary judgment on this claim for two reasons: (1) because the repair of the boat is a "contract" for services to which the Uniform Commercial Code does not apply and therefore no implied warranty exists as a matter of law;[11] and (2) because any applicable implied warranty of merchantability or fitness had expired.

First, Post did not sell the boat to L&T. Rather, L&T purchased the boat used from an

---

[9] The implied warranty of fitness for a particular purpose is codified at MGL c.106 § 2-315. The implied warranty of merchantability is codified at MGL c.106 § 2-314.

[10] L&T cannot as a matter of law maintain a claim or breach of the implied warranty of fitness for a particular purpose. *See* GL c.106 §2-315 ("Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose." Since Post was not the entity that sold the boat to L&T it is impossible for L&T to have relied on Post's skill or judgment in selecting or furnishing "suitable goods."

[11] At paragraph of the Compalint 42 L&T alleges "Post is a merchant as that term is defined by the Uniform Commercial Code."

individual named Jim Zappi.[12]  When L&T became the owner of the boat, the Limited Warranty had already expired on its own terms.  As a gratuitous accommodation, Post agreed to repair the boat under the terms of the August 25, 2004 letter.  This was the only agreement between the parties – one for services, making the Uniform Commercial Code inapplicable to the transaction.  Thus, the implied warranty of merchantability does not arise as a matter of law.

It is black letter law that the rendition of services is not covered by the Uniform Commercial Code. *White v. Peabody Constr. Co*., 386 Mass. 121, 132, 434 N.E.2d 1015 (1982).  See *Nickerson v. Nautilus II*, 1993 WL818703 at 3  (Mass.Super.1993)(to the extent health club membership was a contract for services,"warranty liability would be equally inappropriate.")  Accordingly, as the "contract" at issue did not arise from the purchase of the boat, but rather from an independent agreement to repair the boat, Post is entitled to summary judgment since the Uniform Commercial Code's implied warranty provisions do not apply to contracts for services.

To the extent the implied warranty of merchantability existed under the terms of the original sale to Jim Zappi, the Limited Warranty specifically provides:  "THE DURATION OF ANY IMPLIED WARRANTIES OF MERCHANTABILITY OF FITNESS FOR A PARTICULAR PURPOSE OR OTHERWISE SHALL BE LIMITED TO AND COINCIDENT WITH THE DURATION OF THIS EXPRESS WARRANTY."  The Limited Warranty only extends for one year

---

[12]  Todd Hamilton, at his deposition testified to the fact that L&T purchased the boat used from a person other than Post.
  Q.  Did you buy this as a new boat or a used boat?
  A.  Used boat; secondhand.
*See*, Deposition of Todd Hamilton, p. 53, ln. 12-14, attached as Exhibit C to the Statement of Material Facts.

from the date of purchase to the original purchaser, is not applicable to individuals other than the original purchaser, and does not cover gel coat. *See*, Limited Warranty attached as an exhibit to the Affidavit of Ken Jensen attached as Exhibit B to the Statement.

Such limitations are consistent with G.L. c.106 § 2-314 which provides that implied warranties of merchantability may be excluded or modified:

> Unless excluded or modified by section 2-316, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale

G.L. c.106 §2-316(2) provides: "[T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be in by a writing and conspicuous."

L&T does not claim that the modifications were not in writing, did not contain the required statutory language, or were not conspicuous.[13]

Since the defect did not arise until May 2004, the implied warranty of merchantability had already expired because it was limited to one year from the date of purchase by the original

---

[13] To the extent L&T claims it was not on notice that an express warranty covered the boat, this does not bar summary judgment in Post's favor. See *Theo & Sons, Inc. v. Mack Trucks, Inc.*, 431 Mass. 736, 740, 729 N.E.2d 1113, 1118 (2000) (subsequent purchasers are bound by the terms, limitations, and disclaimers in an express warranty even if not on notice of the express warranty's existence; subsequent purchaser bears the burden of ascertaining the existence of any limitations on the implied warranties).

purchaser, was not applicable to subsequent purchasers, and did not cover gel coat.

Accordingly, because the implied warranty of merchantability does not apply to contracts for services and because even if such a warranty did exist, was effectively modified in the express Limited Warranty, Post is entitled to summary judgment in its favor on Count IV.

  C. *Post is entitled to summary judgment on Count II - Negligent Misrepresentation and Count III - Fraudulent Misrepresentation*

L&T has asserted claims for negligent misrepresentation and fraudulent misrepresentation (Counts II and III, respectively) arising out of Post's promise to repair the defective gel coat.

The elements of a claim of fraudulent misrepresentation are that: (1) the defendant made a false misrepresentation of material fact; (2) defendant acted with knowledge of its falsity; (3) defendant acted with purpose of inducing plaintiff to act on misrepresentation; and (4) plaintiff relied on the misrepresentation to her detriment. *See, International Floor Crafts, Inc. v. Adams*, 477 F.Supp.2d 336, 341 (D.Mass.2007).

Likewise, the elements of a claim for negligent misrepresentation are that a defendant: (1) in the course of his business, (2) supplied false information for the guidance of others (3) in their business transactions (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance upon the information, and that he (6) failed to exercise reasonable care or competence in obtaining or communicating the information. *See, Golber v. Baybank Valley Trust Co.*, 46 Mass.App.Ct. 256, 257, 704 NE.2d 1191, 1192 (Mass.1999).

It is black letter law that "false statements of opinion, of conditions to exist in the future, or of matters promissory in nature are not actionable." *Yerid v. Mason*, 341 Mass. 527, 530, 170 N.E.2d 718 (1960). The gratuitous agreement by Post to make certain repairs is obviously promissory in nature and cannot support a fraud claim.

With regard to the fraudulent misrepresentation claim, Plaintiff alleges: "In agreeing to provide said repairs to L&T's boat, on numerous occasions falsely and fraudulently represented that Post was willing, ready and able to provide the repairs in a TIMELY, complete and workmanlike manner." *See*, Complaint, ¶32, attached as Exhibit A to the Statement. With regard to negligent misrepresentation claim, Plaintiff alleges: "In agreeing to provide the repairs to L&T's boat, Post negligently represented that it was willing, ready, and able to provide the repairs in a TIMELY, complete and workmanlike manner, when it knew or should have known that it could not or would not perform as promised." *See*, Complaint, ¶37 attached as Exhibit A to the Statement.

There is not even a scintilla of evidence in the record of any conduct by Post that it did anything other than go out of its way to provide over 2,200 hours of repair work to a boat as to which it had no obligation  Similarly, although L&T emphasizes the word "timely" in its allegation, nowhere in the August 25, 2004 letter was any time frame established for the repair work to be completed.  In fact, the letter specifically states the time needed for completion is an estimate, Exhibit D to the Statement, and no time frame is stated in the September 2, 2004 letter. Exhibit F to the Statement of Material Facts.

As Todd Hamilton already testified these two letters formed the entire basis of the parties' agreement.  *See*, Deposition of Todd Hamilton, p. 27, ln. 10-21, attached as Exhibit C to the Statement of Material Facts. Since there is no term in either letter that the repairs would be made "timely"or by a certain date, such an omission cannot form the basis of an actionable affirmative misrepresentation.

Further, the record is also void of any evidence that any of these "misrepresentations" were made to <u>induce</u> L&T to deliver the boat to Post so that it could perform over 2,200 hours of repair on the vessel gratuitously with the specific intention to deprive L&T of the boat for an extended period

13

of time longer than what was "represented."

    *See, Bouvier Bros., Inc. v. Baker Protective Services*, 1994 WL 879634 (Mass.Super.1994) holding that claims for intentional and negligent misrepresentation must be premised on misrepresentation inducing the plaintiff to action. Promises made in good faith that are subsequently broken do not give rise to misrepresentation claims. *Id.*

    Accordingly, in both the claims for fraudulent misrepresentation and negligent misrepresentation Post is entitled to summary judgment in its favor.

    *D. Post is entitled to summary judgment on Count V- Negligence*

    L&T has also asserted a claim for negligence (Count V) against Post because Post breached its "duty to L&T" by not performing such repairs according to a "certain standard of care." *See*, Complaint, ¶46, 47 attached as Exhibit A to the Statement.

    To the extent that L&T has alleged the existence of a contract, a claim in negligence is barred by the economic loss rule.[14] *Cruickshank v. Clean Seas Co.*, 346 B.R. 571, 582 (D.Mass. 2006)(economic loss doctrine provides that purely economic losses are not recoverable in negligence and strict liability actions in the absence of personal injury or damage to other property other than the product itself). Here, there are allegations of harm to persons or other property.

    To the extent L&T foregoes its contract claim and takes the position that no contract existed, Post is still entitled to summary judgment. Under *Wheatley v. Pierce*, 354 Mass. 573 (1968), "when one enters upon a gratuitous undertaking for the benefit of another, the duty of care which he owes to that other with respect to his act of commission or of omission in the carrying out of the

---

[14] As its seventh affirmative defense Post alleged that "any claims in tort are barred by the economic loss rule." *See*, Answer and Affirmative Defenses, attached as Exhibit J to the Statement of Material Facts.

undertaking is only to refrain from gross negligence." See *Massachusetts Asset Fin. Corp. v. Harter, Secrest & Emery, LLP*, 220 F.Supp.2d 20, 23-25 (D.Mass.2002). There is no evidence (or allegation) that Post was grossly negligent.

> Gross negligence is substantially and appreciably higher in magnitude than ordinary negligence. It is materially more want of care than constitutes simple inadvertence. It is an act or omission respecting legal duty of an aggravated character as distinguished from a mere failure to exercise ordinary care. It is very great negligence, or the absence of slight diligence, or the want of even scant care. It amounts to indifference to present legal duty and to utter forgetfulness of legal obligations so far as other persons may be affected. It is a heedless and palpable violation of legal duty respecting the rights of others. The element of culpability which characterizes all negligence is in gross negligence magnified to a high degree as compared with that present in ordinary negligence.

*Altman v. Aronson*, 231 Mass. 588, 591 -592 (1919).

Not only does the record not reflect this 'gross negligence' standard, the record reflects that Post spent over 2,200 hours repairing the boat in accordance with the terms of its August 25, 2004 letter. Further, the repair work only ceased upon L&T's demand. *See*, July 15, 2005 letter attached as Exhibit H to the Statement.

Finally, L&T has only alleged negligence and not gross negligence, and the record reflects that Post was diligent in repairing the vessel, a far cry from the heightened standard of gross negligence that L&T must demonstrate.

    E.    <u>Post is entitled to summary judgment on all counts because L&T did not suffer any form of damages</u>

An element of each of the claims (breach of contract, negligent misrepresentation, fraudulent misrepresentation, breach of the implied warranty of merchantability and negligence) is that the Plaintiff must have suffered damages. L&T averred that it has suffered damages generally under the theories of fraudulent misrepresentation, negligent misrepresentation, and negligence. *See*, Complaint, ¶ 35, 40, 47, attached as Exhibit A to the Statement.

15

The only specific damages pleaded by Plaintiff appear in paragraph 30 of the complaint under the theory of breach of contract. "As a result of the actions of Post and its breach of contract, L&T has incurred substantial monetary damages including, but not limited to, a loss of the benefit of its bargain; the diminished value of the boat; the lost opportunity of sale; expenditures for travel, insurance and carrying costs while the boat was at Post's facility in New Jersey; and the anticipated future expense of proper repair and cleaning, and has otherwise been damaged." *See*, Complaint, ¶ 30, attached as Exhibit A to the Statement.

It is uncontroverted that L&T paid no consideration for the repair of the boat. *See*, Deposition of Todd Hamilton, p. 32, ln. 22-23, p. 33, ln. 1 attached as Exhibit C to the Statement. Also, it was L&T itself that ordered Post to stop performing the requested repairs prior to their completion. *See*, Deposition of Todd Hamilton, p. 51, ln. 14-20 attached as Exhibit C to the Statement of Material Facts.

L&T could not have lost the benefit of its bargain, since the agreement to repair the yacht was gratuitous. The rule in Massachusetts is that the wronged party under a <u>contract</u> should receive the benefit of the bargain, i.e. be placed in the same position as though the <u>contract</u> had been performed. *See, generally, Doering Equipment, Co. v. John Deere, Co.*, 61 Mass.App.Ct. 850, 815 N.E.2d 234 (Mass.App.Ct. 2004).[15]

Here, the agreement to repair was gratuitous. Thus, there can be no contract damages, because there was no contract. Even still, benefit of the bargain damages must be proved with reasonable precision. *See, Hurwitz v. Prime Communications, Inc.,* 1994 WL 561864 (Mass.Super.

---

[15] Assuming this work is covered under the Limited Warranty, L&T is barred from recovering any consequential or incidental damages, including loss of a prospective sale, expenditures for travel, insurance, or carrying costs because the Limited Warranty disclaims all Post's liability for consequential damages. Such disclaimers are enforceable pursuant to M.G.L. 106 §2-719 against subpurchasers with or without notice. *See, Boston Helicopter Charter, Inc. v. Agusta Aviation Corp.*, 767 F.Supp. 363, 376 (D.Mass.1991).

1994). Here, L&T has been wholly unable to substantiate <u>any</u> damages it has allegedly suffered.

On May 30, 2006 Defendant served a Request for Production of Documents on Plaintiff. Request No. 1 specifically requests "all documents that in any way relate to, will be relied on, or will be used by Plaintiff to in any way substantiate, demonstrate, establish or proof any damages which Plaintiff is asserting were suffered by it." Only three letters were produced in response to the request for production, none of which are responsive to the request. These letters are attached as Exhibit L to the Statement.[16]

On March 13, 2007, Defendant served a Notice of Taking Deposition on Plaintiff L&T Yacht Sales, Inc., by and through its corporate representative. The deposition notice indicated and designated the areas on which the corporate representative was to be examined. The deposition notice specifically stated that the corporate representative would be examined concerning "the damages the Plaintiff claims."

At the deposition of L&T's corporate representative Todd Hamilton testified:

> Q. Okay. What damages are you claiming in this lawsuit?
> A. The loss of the sale of the boat and the damages to repair it and the carrying cost.
> Q. Okay. How much do you claim for the loss of the sale of the boat.
> A. I'd have to sit down and figure it out now that it's been three years.
> Q. Okay. Do you have an estimate?
> A. I don't. I haven't really sat down; no one has asked me to sit down and put a number together yet.

*See*, Deposition of Todd Hamilton, p. 22, ln. 4-16, attached as Exhibit C to the Statement

> Q. How much is the value of the work that has been done?

---

16  The reason these letters cannot support a claim of damages are set forth more specifically in Defendant's Motion to Exclude Evidence. Briefly, the letters are hearsay and thus were not submitted in support of any expert testimony. Moreover, the letters are estimates for re-gelcoating the entire boat prepared at Mr. Hamilton's request. The letters do not assert that Post's repairs were deficient.

17

> A. I don't know. They didn't break it down in sections. I would have to ask them to come out and redo the estimate for the section.

*See*, Deposition of Todd Hamilton, p. 23, ln. 6-10, attached as Exhibit C to the Statement.

> Q. How much have you paid?
> A. Oh, I don't know exactly to date with materials and stuff. I could get it for you.
> Q. What are you claiming are the carrying costs?
> A. Again, I'd have to sit down and figure out what my costs are to carry it.

*See*, Deposition of Todd Hamilton, p. 23, ln. 14-19 attached as Exhibit C to the Statement.

Thus L&T has consistently and categorically failed to provide any evidence supporting any claim for damages.[17]

Further, L&T could not have suffered diminished value to the boat because the repairs made would add value to the boat. *See, generally, Given v. Commerce Ins. Co.*, 440 Mass. 207, 796 N.E.2d 1275 (Mass. 2003). There the Massachusetts Supreme Judicial Court held that under an insurance contract to repair a damaged automobile, where the contract provided two alternatives (1) the actual diminished value or (2) the cost of repair, the plaintiff could not recover repair costs and any remaining "diminished value," inherently recognizing that a repair adds value to a damaged chattel.

Further, L&T's damages are not attributable to Post because L&T did not allow Post to complete the repairs by virtue of the fact it commanded Post to stop repairing the boat. *See Frank Fitzgerald Inc. v. Pacella Bros, Inc.*, 2 Mass.App.Ct. 240, 242, 310 N.E.2d 379 (Mass.App. 1974).

Lastly, attorney's fees are not recoverable since Massachusetts follows the "American rule."

"Massachusetts generally follows the 'American Rule' and denies recovery of attorneys fees absent

---

[17] In fact, due to L&T's failure, Post has filed a motion *in limine* to exclude L&T's ability to call undisclosed expert witnesses and offer evidence of damages should this matter go to trial.

a contract or statute to the contrary." *Police Commissioner of Boston v. Gows*, 429 Mass. 14, 705 N.E.2d 1126 (Mass.1999). No such contractual or statutory provision exists in this matter.

    F.    *Post is entitled to summary judgment on the basis of improper venue*

This Court should enter summary judgment on the basis of improper venue. This dispute is between L&T, a Rhode Island corporation and Post, a New Jersey corporation. *See*, Complaint, ¶ 1 attached as Exhibit A to the Statement. The alleged contract between the parties to repair the boat was to be performed at Post's principal place of business in New Jersey. *See*, Complaint, ¶ 17, attached as Exhibit A to the Statement . The boat's port of call is in Rhode Island. *See*, Certificate of Documentation attached as Exhibit M to the Statement.

Massachusetts is not the appropriate district for this case because no defendant resides in Massachusetts, no substantial event occurred in Massachusetts, and this action could have been brought in New Jersey which does have jurisdiction over Post. See 28 U.S.C. §1391(a):

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

## IV. CONCLUSION

Based on the foregoing, Post requests this Court enter summary judgment in its favor on all of the asserted causes of action

DEFENDANT
By its counsel

| | |
|---|---|
| /s/ Howard M. Brown | /s/ Michel Weisz |
| Howard Brown | Michel Weisz |
| Bartlett Hackett Feinberg P.C. | SEGREDO & WEISZ |
| 155 Federal Street, 9th floor | 9350 South Dixie Highway, Suite 1500 |
| Boston, MA 02110 | Miami, Florida 33156 |
| (617) 422-0200 | (305) 670-3820 |