UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BOSTON DIVISION
DOCKET NO. 05-11682

L & T YACHT SALES, INC.,                   )
                          Plaintiff        )
                                           )
VS.                                        )
                                           )
POST MARINE CO., INC.,                     )
                          Defendant        )

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff, L & T Yacht Sales, Inc. ("L & T ") requests that partial summary judgment on

the issue of liability be entered in its favor on Counts I (Breach of Contract), III (Negligent

Misrepresentation) and V (Negligence) as set forth in Plaintiff's complaint and as grounds in

support states:

**INTRODUCTION**

Although Post became aware of the serious problems caused by the series 953 gel coat

manufactured by Cook Composite and Polymer used on boats manufactured by Post between,

1997 and 2002; has, by its own officers' admissions under oath, described the problems as

including but not limited to "catastrophic cracking" and "wholesale cracking;" and has brought a

legal action against the aforesaid gel coat manufacturers seeking many millions of dollars in

damages for the 81 boats Post built using the series 953 gel coat, nonetheless Post consciously,

negligently and with reckless disregard for the reasonably foreseeable results, chose to utilize the

series 953 gel coat in its repair of Plaintiff's boat during 2004 and 2005.  This is only one of

1

many examples of Post's liability in contract for breach of expressly assumed obligations as expressed clearly by letter of its own legal counsel dated August 25, 2004 and further clarified in writing by Post's Vice President on September 2, 2004.

A ship owner may sue in either tort or contract for negligent repairs to its boat with the ship repairer potentially facing three sources of liability for repairs it performs improperly, i.e. liability for negligent repairs, liability for breach of contract and liability for breach of implied warranty of workmanlike performance.  See *La Esperanza Inc.* v. *Perez, Inc.* 124 F3rd 10 (1st Cir 1997); *Todd Shipyard, Corp.,* v. *Turbine Serv. Inc.* 674 F2nd 401; *Ryan Stevedoving Co.* v. *Atlcht. SS Corp*, 350U.S. 124.

## I.      L & T is entitled to summary judgment on the issue of liability on Count I (Breach of Contract)

In order to prevail on a breach of contract claim, a party must prove the following four elements by a preponderance of the evidence:  (1) that there is a contract; (2) that the party performed its obligations under the contract (or is excused from performance); (3) that the other party breached the contract; and (4) that the non-breaching party suffered damages as a result of the breach of contract.

Detrimental reliance on an offer or a promise is a substitute for consideration.  Thus, an offer or promise that the offeror should reasonably expect to induce action or forbearance of a substantial character by the other party before acceptance, and that does induce the other party to act or forbear, is enforceable as a contract to the extent necessary to avoid injustice.  When a

2

promise is enforceable because of detrimental reliance, it is a contract, and it is enforceable in the same manner as any other contract. *Loranger Constr. Corp.* v. *E.F. Hauserman Co.*, 376 Mass. 757, 760-61, 384 N.E. 2d 176, 179-80 (1978) (citing Restatement (Second) of Contracts §89B(2) & Illus. 6 (Tent, Drafts Nos. 1-7, 1973) and noting that this principle comports with "traditional contract theory antedating the modern doctrine of consideration."). *See also **Rhode Island Hosp. Trust*** v. *Varadian*, 419 Mass. 841 848, 647 N.E. 2d 1174, 1178 (1995).

Prior to Post's August and September 2004 written and verbal representations to repair L & T's boat, Plaintiff had been seriously considering filing a civil action against Post and had directly expressed to the Defendant its intent to do so. However, Posy agreed to remove the gel coat from the entire surfaces that were cracking and repair the same. Post estimated that this would take about four (4) months, thereby returning boa in time to enjoy the 2005 boating season. L & T's accepted Post's representations that it would repair the boat in this specific and workmanlike manner. L & T in good faith sought to mitigate damages by refraining from filing suit and placing its boat in Defendant's control and allowing Defendant the opportunity to provide repairs as it agreed. Plaintiff satisfied it's obligations under the agreement by bearing the cost of transporting its boat from Massachusetts to New Jersey in accord with instructions from the Defendant and by leaving its boat in the possession and control of Defendant for over nine (9) months. This was more than twice as long as Post represented the repairs should have taken to complete, and made the boat unusable for the 2005 boating season.

Post also benefited by the opportunity to repair provided by L & T, in that Post had a major public relations problem relative to the series 953 gel coat. Opportunity to repair given by Plaintiff to Defendant enabled Defendant to attempt to control and diminish the growing public

relations problem potentially costing Defendant millions of dollars in lawsuits and damages to its business reputation. Despite this valuable opportunity, Post did not provide the repairs in accord with its expressed obligations and representations. Instead of removing the gel coat from entire surfaces, as it had agreed to do, Post instead patched and filled cracks in the gel coat and then sprayed over the areas, using the same defective gel coat that caused the "catastrophic cracking" in the first place. As a result, more than nine months after it took the boat in for the repairs that it agreed to perform, L&T had a boat with the same defective gel coat, either which Post failed to remove or which Post used use to spray over the cracks that it filled (which have now re-cracked). Further, the boat was nowhere nearly completed after more than 9 months of work. Accordingly, Post breached its agreement (1) to repair the boat by removing the defective gel coat from the entire surfaces; (2) to do the workmanlike manner (using the same defective gel coat to perform repairs that had caused the catastrophic cracking); and (3) failing to perform the repairs in nine months, which it estimated would take only 4 months to complete.

## NEGLIGENT MISREPRESENTATION

## II.    L & T is entitled to summary judgment on the issue of liability on Count III (Negligent Misrepresentation).

Post's failure to remove the defective 953 gel coat from entire surfaces and the continued use of the series 953 gel coat, in its repairs of L & T's boat, are graphic examples of Defendant's negligent misrepresentations that it would render repairs in a proper, workmanlike and timely manner. L & T must prove that the misrepresentation of the Defendant was a material influence

in inducing its action in 2004 (allowing Defendant the opportunity to repair L & T's boat and forbearing civil action against Defendant) but L & T does not need to prove that Defendant's misrepresentations were the sole or predominant cause. *National Shawmut Bank of Boston* v. *Johnson*, 317 Mass 485, J8 NE 2nd 849 (1945).

Negligent Misrepresentation differs from an action of fraud because liability for the misrepresentation does not require a showing that the Defendant ever knew that the statements made were false or that the Defendant actually intended to deceive the Plaintiff. Justifiable reliance is integral to Plaintiff's claim for negligent misrepresentation. *Kabrick Offshore Fund, Ltd*, 442 Mass 43, 809 NE 2$^{nd}$1017 (2004).

L & T clearly, reasonably and justifiably relied on Defendant's misrepresentations to L & T's great detriment. See Plaintiff's Statement of Material Facts, #20-37. L & T forbore filing suit and lost use of its boat for the 2005 season based on its reasonable reliance that Post would perform the repairs in a workmanlike manner, by removing the defective gel coat from entire surfaces, over a four (4) month period. These representations all proved to be false. Post did not remove the gel coat from entire surfaces, as it represented it would do. Contrary to its representations, Post did not perform the repairs in a workmanlike manner, as it utilized the same defective gel coat in its repairs, which have now re-cracked. And finally, it took Post more than nine (9) months to conduct repairs in this manner, despite representations that workmanlike repairs would take four (4) months. To its detriment, L & T now has a boat still with the defective 953 gel coat.

**III.    L & T is entitled to summary judgment on the issue of liability on Count V**
**(Negligence).**

A long line of cases reflect the following:

Negligence, without qualification and in its ordinary sense is Defendant's failure, either

by action or omission to exercise that degree of care, vigilance and forethought which, in the

discharge of the duty then resting upon Defendant, the person of ordinary caution and prudence

ought to exercise under the particular circumstances. It is a want of diligence commensurate

with the requirement of the duty at the moment imposed by the law. *Altman* v. *Aronson*, 231

Mass 588; 121 NE 505 (1919).  See also Restatement, 2nd, Torts § 282, 284.

Post's breach of numerous expressly assumed obligations also reflects a myriad of

negligent repairs to L & T's boat.  Post, like the ship repairer in *La Esperanza* v. *Perez* supra,

attempts to evade responsibility and escape liability by blaming the boat owner for not

developing in a timely manner, a comprehensive repair plan in tandem with the Coast Guard.

The First Circuit Court of Appeals found the ship repairer's attempt to evade responsibility and

escape liability to be unavailing and Post's attempt to "blame" L & T for putting a stop to the

repairs, (1) substantially deviating from the specific 2004 obligations assumed by Post and (2)

falling far short of a workmanlike standard, after more than nine (9) months, is also unavailing.

(see Plaintiff's Statement of Material Facts #20-37).

The First Circuit Court of Appeals in evaluating negligence or gross negligence indicated

that "we can not say that it was clearly erroneous for the district court to conclude that the *Perez*

shipyard did not act in such a way as to willfully inflict harm on the boat owners or to cause the

boat owners damage in a wanton and gross disregard of the vessel or the ship owner's interest in it.". "See also *Todd Shipyard*, supra. L & T argues that Post's use of the series 953 gel coat in its repairs upon Plaintiff's vessel, despite Post's knowledge of its causation of "catastrophic cracking" rises to the level of wanton and gross disregard.

Post assumed the duty to repairs the Plaintiffs boat and thereby had a duty to L & T to conform to a certain standard of conduct and care in its repair of L & T's boat. By 2004 / 2005, Post was acutely aware that the series 953 gel coat was, by its own statements, "defective" and caused "catastrophic cracking." It was in the process of repairing boats with this problem. In fact, it was suing the manufacturer of the gel coat. Nevertheless, Post used this same defective gel coat to repair L & T's boat. Post clearly lacked the care and forethought that a reasonable person would used under the circumstances.

There was clearly a causal connection between Post's conduct and the resulting harm to L & T and the actual damages to L & T's boat. *U.S.* v. *Carroll Towing Co*. 159 F 2nd 169 (2nd Civ. 1947); *Gilhooley* v. *Star Market Co., Inc*., 400 Mass 205, 508 NE 2nd 609 (1987).

Post agreed in August of 2004 to provide repairs to Plaintiff's boat in a timely and workmanlike manner. Plaintiff had a right to rely on the expertise of the Post shipyard and had reason to expect a "stable seaworthy vessel upon completion of the repairs, regardless of the condition of the boat prior to the repairs." See *Empacadova Del Norte, S.A.* v. *Steiner Shipyard Inc.,* 469 F. Supp. 954 (1979). Post's 2004 written assumption of specific repair obligations did not "evince any manifestation of intent to deviate from this principle". See *La Esperanza* v. *Perez*, supra. Failing to remove the defective gel coat and instead "repairing" the cracks with the

same defective gel coat necessarily breached Posts duty of care, resulting in damage to the

Plaintiff by, nine months later, returning a boat in worse condition than before Post undertook

the repairs.

## CONCLUSION

For the foregoing reasons, the court should enter partial summary judgment on the issues

of liability be entered in favor of L & T Yacht Sales, Inc. on Counts I (Breach of Contract), III

(Negligent Misrepresentation) and V (Negligence) as set forth in Plaintiff's complaint Inc., and

allow the trier of fact to assess damages.

> Respectfully submitted,
> The Plaintiff,
> By its Attorneys,
>
> _/s/ John E. Zajac_
> John E. Zajac, Esquire BBO # 560195
> Carmichael, Zajac & Fleury, P.C.
> 170 High Street
> Taunton, MA 02780
> (508) 821-2552

## CERTIFICATE OF SERVICE

I, John E. Zajac, Esquire this 8th day of June, 2007 have given notice of the within
Plaintiff's Motion for Partial Summary Judgment, Statement of Material Facts and Memorandum
of Law, by mailing a copy of the same to by overnight mail to Defendant's legal counsel, Michel
O. Weisz, Esquire at his 9350 S. Dixie Highway, Miami, Florida 33156 office and by e-mail
service, via the Court's CM/ECF system which sent notification of such filing to Howard M.
Brown, Esquire, Bartlett Hackett Feinberg P.C., 155 Federal Street, 9th floor, Boston, MA 02110

> _/s/ John E. Zajac_
> John E. Zajac, Esquire