UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BOSTON DIVISION
DOCKET NO. 05-11682

L & T YACHT SALES, INC.               )
                    PLAINTIFF,        )
                                      )
VS.                                   )
                                      )
POST MARINE, INC.                     )
                    DEFENDANT         )
_____ )

## PLAINTIFF, L & T YACHT SALES RESPONSE AND OPPOSITION
## TO DEFENDANT POST MARINE CO., INC.'S STATEMENT
## OF MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1

### (ORAL ARGUMENT REQUESTED)

The Plaintiff, L & T Yacht Sales, Inc. hereby responds to each of the purported material

facts that the Defendant, Post Marine Co., Inc. ("Post") alleges are not in dispute as follows, and

requests that the court consider the additional material facts contained herein in support of

Plaintiff's Opposition to Post's Motion for Summary Judgment:

1.     Plaintiff agrees that this fact is not in dispute.


2.     Plaintiff agrees that this fact is not in dispute.


3.     Plaintiff agrees that this fact is not in dispute.


4.     Plaintiff agrees that this fact is not in dispute.

1

5.     Plaintiff agrees that this fact is not in dispute, but submits that this fact is not dispositive of the warranty issue in this case, as further detailed herein and in its Brief in Opposition to the Plaintiff's Motion for Summary Judgment.

6.     Plaintiff agrees that this fact is not in dispute, but submits that this fact is not dispositive of the warranty issue in this case, as further detailed in its Memorandum in Opposition to the Plaintiff's Motion for Summary Judgment. Plaintiff further states that Post has attempted to repair the defective gel coat on numerous boats.  See Post's Answers to Interrogatories No. 20-22 in Viking Yacht, et al v. Composite One, LLC, et al, New Jersey District Court, Docket No.05-538, attached hereto as Exhibit A.  Notwithstanding the alleged exclusion under its warranty, Post has sued the manufacturer of the gel coat. A copy of Posts Amended Complaint filed in its litigation against the gel coat manufacturer is attached hereto as Exhibit B.  Post is seeking damages for its actual or anticipated cost to repair each of the boats that it manufactured using the defective gel coat. *See,* Deposition of Kenneth Jensen, p. 85, ln. 10-19; p. 88, ln. 13-17 attached hereto as Exhibit C.

7.     Plaintiff agrees that this fact is not in dispute, but states that this fact is not dispositive of the warranty issue in this case, as further detailed in its Memorandum in Opposition to the Plaintiff's Motion for Summary Judgment.   Plaintiff further states that Post has attempted to repair the defective gel coat on numerous boats more than one year after their date of sale. See Post's Answers to Interrogatories No. 20-22 in Viking Yacht, et al v. Composite One, LLC, et al, New Jersey District Court, Docket No.05-538, attached hereto as Exhibit A.   Notwithstanding the alleged expiration of its warranty, Post has sued the manufacturer of the gel coat for

2

damages. A copy of Posts Amended Complaint filed in its litigation against the gel coat manufacturer is attached hereto as Exhibit B.  Post is seeking damages for the actual or anticipated cost to repair each of the boats that it manufactured using the defective gel coat. *See*, Deposition of Kenneth Jensen, p. 85, ln. 10-19; p. 88, ln. 13-17 attached hereto as Exhibit C.

8.    Plaintiff agrees that this fact is not in dispute, but states that this fact is not dispositive of the warranty issue in this case, as further detailed in its Memorandum in Opposition to the Plaintiff's Motion for Summary Judgment. Plaintiff further states that Post has attempted to repair the defective gel coat on numerous second owner boats. See Post's Answers to Interrogatories No. 20-22 in Viking Yacht, et al v. Composite One, LLC, et al, New Jersey District Court, Docket No.05-538, attached hereto as Exhibit A.  Notwithstanding the alleged non-application of its warranty to second owners, Post has sued the manufacturer of the gel coat for damages. A copy of Posts Amended Complaint filed in its litigation against the gel coat manufacturer is attached hereto as Exhibit B.  Post is seeking damages for the actual or anticipated cost to repair each of the boats that it manufactured using the defective gel coat. *See,* Deposition of Kenneth Jensen, p. 85, ln. 10-19; p. 88, ln. 13-17 attached hereto as Exhibit C.

9.    Plaintiff agrees that this fact is not in dispute, but states that this fact is not dispositive of the warranty issue in this case, as further detailed in its Memorandum in Opposition to the Plaintiff's Motion for Summary Judgment. Plaintiff further states that Post has attempted to repair the defective gel coat on numerous boats more than one year after their date of sale.  See Post's Answers to Interrogatories No. 20-22 in Viking Yacht, et al v. Composite One, LLC, et al, New Jersey District Court, Docket No.05-538, attached hereto as Exhibit A.  Notwithstanding

3

the alleged expiration of its warranty, Post has sued the manufacturer of the gel coat for damages. A copy of Posts Amended Complaint filed in its litigation against the gel coat manufacturer is attached hereto as Exhibit B.  Post is seeking damages for the actual or anticipated cost to repair each of the boats that it manufactured using the defective gel coat. *See*, Deposition of Kenneth Jensen, p. 85, ln. 10-19; p. 88, ln. 13-17 attached hereto as Exhibit C.

10.    Plaintiff agrees that this fact is not in dispute

11.    Plaintiff agrees that this fact is not in dispute.  However, the Plaintiff adds that Post was aware of the defects with the gel coat used on boats manufactured by Post between 1997 and 2002 by the summer / fall of 2002.  *See*, Deposition of Kenneth Jensen, p. 22. ln. 1-p. 23. ln. 14; p. 23, ln. 15-18;   p. 24. ln. 12-15, attached hereto as Exhibit C.

12.    Plaintiff agrees that this fact is not in dispute.

13.    Plaintiff states that the letter speaks for itself.  The Plaintiff adds that this letter was precipitated by the threat of the Plaintiff's president to sue Post due to the defective gel coat. *See,* Deposition of Kenneth Jensen, p. 81, ln. 5-8, attached hereto as Exhibit C.  Todd Hamilton, President of L & T Yacht Sales had instructed his attorney to file suit if Post did not agree to perform repairs.  See Affidavit of Todd Hamilton attached hereto as Exhibit D.

14.    Plaintiff agrees that this fact is not in dispute.

4

15.    Plaintiff states that the letter speaks for itself. The Plaintiff adds that contrary to what the letter states would happen, the gel coat was not removed from entire surfaces. *See,* Deposition of Joseph Martorana, p. 19, ln. 11-15; (the sides of the hull) p. 19, ln. 16-18; (the bridge) p. 20, ln 3-7; (the interior of the bridge) p. 20, ln 7-8; (the hardtop) p. 20, ln 12-13; (the bottom of the boat) p. 21, ln. 14 - pg. 22, ln. 16, attached hereto as Exhibit E and *see,* Deposition of Cortez Marks, p. 19, ln. 14-16; (the back bulkhead) p. 20, ln. 7-8; (the dashboard) p. 20, ln. 22-23; (the hardtop) p. 20, ln. 24-25; (the bottom of the boat) p. 19, ln. 20-23, attached hereto as Exhibit F.

16.    Plaintiff agrees that this fact is not in dispute, thus a time frame *was* established. Plaintiff adds that Post failed to complete the repairs within this time frame. *See,* Deposition of Todd Hamilton, p. 26, ln. 4-21 attached hereto as Exhibit G. See, Affidavit of Todd Hamilton attached hereto as Exhibit D.

17.    Denied. Mr. Hamilton's deposition transcript states that these were the only agreements in writing. *See*, Deposition of Todd Hamilton, p. 27, ln. 10-21, attached hereto as Exhibit D.

18.    The Plaintiff states that this issue is in dispute. The Plaintiff states that its forbearance from filing suit at the time and allowing Post to attempt repairs was consideration relative to the agreement for the boat repairs. *See,* Deposition of Kenneth Jensen, p. 81, ln. 5-8, attached hereto as Exhibit C. See, Affidavit of Todd Hamilton attached hereto as Exhibit D.

19.    Plaintiff agrees that this fact is not in dispute.

20.    Plaintiff agrees that this fact is not in dispute.

21.    Plaintiff agrees that this fact is not in dispute.

22.    Plaintiff states that the letter speaks for itself. However, Plaintiff adds that it disputes that items identified therein are "relatively minor repairs." Further, Plaintiffs states that when Hamilton went to review the boat, Post had one side of it covered, which could not be removed. Thus, the letter only outlined the items that Hamilton could see at that time. See, Deposition of Todd Hamilton, p. 39, ln. 15 – 19; p. 45, ln. 4 – 12, attached hereto as Exhibit G.

23.    Plaintiff agrees that this fact is not in dispute.

24.    Plaintiff agrees that up to that point, Post had spent over 2,200 hours repairing. Plaintiff disputes that the repairs were in accordance with the terms of its August 25, 2004 letter and the clarifying letter of September 2, 2004 as Post did not remove the gel coat from entire surfaces. *See,* Deposition of Joseph Martorana, p. 19, ln. 11-15; (the sides of the hull) p. 19, ln. 16-18; (the bridge) p. 20, ln 3-7; (the interior of the bridge) p. 20, ln 7-8; (the hardtop) p. 20, ln 12-13; (the bottom of the boat) p. 21, ln. 14 - pg. 22, ln. 16, attached hereto as Exhibit E and *see,* Deposition of Cortez Marks, p. 19, ln. 14-16; (the back bulkhead) p. 20, ln. 7-8; (the dashboard) p. 20, ln. 22-23; (the hardtop) p. 20, ln. 24-25; (the bottom of the boat) p. 19, ln. 20-23, attached hereto as Exhibit F.

25.     The Plaintiff disputes this fact.   The 953 series gel coat is defective.  *See,* Deposition of Kenneth Jensen, p. 78, ln. 7-8 attached hereto as Exhibit C.   Post used more of the 953 gel coat to perform repairs to Plaintiff's boat. *See,* Deposition of Joseph Martorana, p. 26, ln. 9-16, attached hereto as Exhibit E.   The 953 gel coat sprayed on by Post to perform repairs on Plaintiffs boat has re-cracked. *See,* Deposition of Todd Hamilton, p. 33, ln. 7-10, p. 59, ln. 14-20 attached hereto as Exhibit G

26.     Plaintiff agrees that this fact is not in dispute.

27.     Plaintiff agrees that this fact is not in dispute.

28.     Plaintiff states that the documents speak for themselves.  Plaintiff disputes that the letters are non-responsive.  The diminished amount ($125,000.00 - $150,000.00) that a buyer would pay for the boat, due to the issues with the cracked gel coat is one measure of the Plaintiff's damages.

29.     Plaintiff agrees that this fact is not in dispute.

                         The Plaintiff,
                         By its Attorneys,

                          */s/ John E. Zajac*
                         John E. Zajac, Esquire BBO # 560195
                         **CARMICHAEL, ZAJAC & FLEURY, P.C.**
                         170 High Street
                         Taunton, MA 02780
                         (508) 821-2552

**CERTIFICATE OF SERVICE**

I, John E. Zajac, Esquire this 13th day of July, 2007 have given notice of the within Plaintiff, L & T Yacht Sales Response And Opposition To Statement Of Material Facts Pursuant To Local Rule 56.1 In Support Of Defendant Post Marine Co., Inc.'s Motion For Summary Judgment, by e-mail service, via the Court's CM/ECF system which sent notification of such filing to Howard M. Brown, Esquire, Bartlett Hackett Feinberg P.C., 155 Federal Street, 9th floor, Boston, MA 02110 and by regular mail, postage pre-paid to Michel O. Weisz, Esquire at his 9350 S. Dixie Highway, Miami, FL 33156.

*/s/ John E. Zajac*
John E. Zajac, Esq.

# EXHIBIT

# A

DEC 1 2 2006

**MICHEL O. WEISZ, P.A.**
**9350 South Dixie Highway**
**Suite 1500**
**Miami, Florida 33156**
**Telephone: (305) 670-3820**
**Attorneys for Plaintiffs Viking Yacht**
**Company and Post Marine Co., Inc.**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| VIKING YACHT COMPANY, a New Jersey Corporation and POST MARINE CO., INC., a New Jersey Corporation, | : <br> : <br> : |
| | :   CIVIL ACTION NO. 05-538 |
| Plaintiffs, | :   (JEI/JS) |
| v. | : <br> : |
| COMPOSITES ONE LLC, a Foreign Limited Liability Co., and COOK COMPOSITES AND POLYMERS, a Missouri Corporation, | : <br> : <br> : |
| | : |
| Defendants. | : <br> : |

## POST MARINE CO., INC.'S SUPPLEMENTAL ANSWERS TO
## FIRST SET OF INTERROGATORIES OF COMPOSITES ONE LLC

Post Marine Co., Inc. hereby supplements its answers to Composites One LLC's First Set of Interrogatories as follows:

20.    Identify and describe with particularity each and every customer complaint you have received regarding the 953 Series Gel Coat, including, but not limited to, a description with particularity of the complaint, when the complaint was made, who made the complaint, to whom the complaint was made, how the complaint was addressed by Post and/or any other third party, and the outcome of the complaint.

**Page 25.01**

**ANSWER:**

| Hull | First Complaint | Second Complaint | Initially Reported Via. | Reported By | Complaint | Action |
|------|-----------------|------------------|-------------------------|-------------|-----------|--------|
| 42-311 | Fall 2005 | | Phone | Fabricant, Robert MD/ Integrity Marine | Cracks in gel coat | No action to date |
| 42-316 | Fall 2003 | | Phone | Falco, Tom Portland Boat Works | Cracks in gel coat | Boat Repaired at Post Marine 2003/04 |
| 42-316 | | Fall 2005 | Phone | StJohn, David | Cracks in gel coat | No action to date |
| 42-317 | | | Phone | Isyk, Ron | Cracks in gel coat | Boat repaired at Post Marine 2004 |
| 42-319 | Summer 2004 | | Phone | Hildebrandt, Brad | Cracks in gel coat | Boat repaired at Post Marine 2004 |
| 42-324 | | Dec 2005 | Phone | Gatto, Anthony M. | Cracks in gel coat | Boat repaired at Post Marine 2004 |
| 42-326 | Summer 2003 | | Phone | Loper, Dr. Mark R. | Cracks in gel coat | Boat repaired at Post Marine 2004 |
| 42-328 | Spring 2005 | | Phone | Farrar, Gary | Cracks in gel coat | No action to date |
| 47-009 | | | Phone | Lippman, Richard | Cracks in gel coat | No action to date |
| 47-011 | Summer 2005 | | Phone | Burel, Marc & Kathy | Cracks in gel coat | Currently at Post Marine Awaiting Repairs |
| 50-052 | Spring 2002 | | Phone | Czipiel, Bob | Cracks in gel coat | Boat repaired |

| | | | | | | at Post Marine 2002 |
|---|---|---|---|---|---|---|
| 50-052 | | Spring 2004 | Phone | Keegan, John III | Cracks in gel coat | Currently at Post Marine Awaiting Repairs |
| 50-053 | | | Phone | Sadow, Alfred | Cracks in gel coat | No action to date |
| 50-055 | Nov/Dec 2005 | | Phone | Palmer, Cary | Cracks in gel coat | No action to date |
| 50-057 | Jan 2004 | | Phone | Hagar, John & Rita | Cracks in gel coat | Boat repaired at Post Marine Spring 2006 |
| 50-058 | Spring 2004 | | Phone | Thompson, Andy | Cracks in gel coat | Currently at Post Marine Being Repaired |
| 50-060 | May 2004 | | Phone | Mouriz, Lazaro J. | Cracks in gel coat | No action to date |
| 50-061 | Spring 2002 | | Phone | Silverberg, Michael & Gale | Cracks in gel coat | Boat repaired at Post Marine 2002 |
| 50-061 | | Spring 2004 | Phone | Silverberg, Michael & Gale | Cracks in gel coat | Boat repaired at Post Marine 2005 |
| 50-062 | Spring 2005 | | Phone | Loy, Peter M. | Cracks in gel coat | No action to date |
| 50-064 | March 2006 | | Phone | Integrity Marine | Cracks in gel coat | Currently being repaired at Portland Boat Works |
| 50-066 | | | Phone | Christy, Frank | Cracks in gel coat | Currently at Post Marine |

3

| | | | | | | Awaiting Repairs |
|---|---|---|---|---|---|---|
| 50-067 | Winter 2005/06 | | Phone | Taymore, Bruce | Cracks in gel coat | No action to date |
| 50-072 | Dec 2005 | | Phone | Miller, William N. | Cracks in gel coat | No action to date |
| 50-076 | May 2004 | | Phone | Hamilton, Todd | Cracks in gel coat | Boat Repaired at Post Marine |
| 50-079 | Fall 2003 | | Phone | Mabardy, Chuck | Cracks in gel coat | Boat Repaired at Post Marine 2004 |
| 50-079 | | Fall 2006 | Phone | Mabardy, Chuck | Cracks in gel coat | Currently being repaired at Onset Bay Marine |
| 50-080 | Summer 2004 | | Phone | Gross, Randall A. | Cracks in gel coat | Boat Repaired at Post Marine 2004 |
| 50-082 | | | Phone | Fernandes, Mario | Cracks in gel coat | Boat Repaired 2003 |
| 50-084 | April 2005 | | Phone | Rau, William F. | Cracks in gel coat | Boat Repaired 2005 |
| 50-085 | Sep 2006 | | Phone | Wright, Doug | Cracks in gel coat | No action to date |
| 50-086 | | | Phone | Palidori, Bob | Cracks in gel coat | Boat Repaired at Post Marine |
| 50-087 | Fall 2005 | | Phone | Otis, Tom | Cracks in gel coat | No action to date |
| 50-088 | Summer 2004 | | Phone | Khan, Sal | Cracks in gel coat | No action to date |
| 50-089 | Jan 2006 | | Phone | Brown, Peter & Ellen | Cracks in gel coat | No action to date |
| 50-090 | | | Phone | Idzik, Ed | Cracks in | Boat |

SEGREDO & WEISZ, 9350 South Dixie Highway, Miami, Florida 33156 • Tel: (305) 670-3820, Fax: (305

| | | | | | gel coat | Repaired at Post Marine |
|---|---|---|---|---|---|---|
| 56-003 | Fall 2005 | | Phone | Buziak, Anthony | Cracks in gel coat | No action to date |
| 56-005 | Spring 2006 | | Phone | Touchstone, Jim | Cracks in gel coat | No action to date |

21.    Identify all damages you are claiming in connection with the claims asserted in
the First Amended Complaint, including, but not limited to, (i) an itemization and breakdown by
individual boat of the $1,444,873.79 in damages you assert in your Rule 26(a) disclosures, (ii) all
out-of-pocket expenses, any, and (iii) all documents that relate in any way to your damage
claims.

**ANSWER:**

December 6, 2006

| Hull # | Labor Hrs. | Labor Hrs. X 65 | Material (.078) | Total |
|---|---|---|---|---|
| *42-328 | Est. 1300 | 84,500.00 | 7,838.00 | 91,091.00 |
| 42-326 | 1138.50 | 74,002.50 | 5,772.20 | 79,774.70 |
| | Transportation to and from the | Great Lakes | For 42-326 | 8,726.80 |
| **42-324 | 1100 | 71,500.00 | 5,577.00 | 77,077.00 |
| 42-319 | 1382.75 | 89,878.75 | 7,010.54 | 96,889.29 |
| 42-317 | 1079 | 70,135.00 | 5,470.53 | 75,605.53 |
| **42-316 | 882.00 | 57,330.00 | 4,471.74 | 61,801.74 |
| *42-311 | Est. 1400 | 84,500.00 | 7,838.00 | 91,091.00 |
| *47-011 | Est. 1400 | 91,000.00 | 7098.00 | 98,098.00 |
| *47-009 | Est. 1400 | 91,000.00 | 7,098.00 | 98,098.00 |
| 50-090 | Est. 1673 | 108,745.00 | 8482.11 | 117,227.11 |
| *50-089 | | To Pay Integrity Marine | | 60,000.00 |
| *50-088 | Est. 1673 | 108,745.00 | 8,482.11 | 117,227.11 |
| *50-087 | Est. 1673 | 108,745.00 | 8482.11 | 117,227.11 |
| 50-086 | 1293.25 | 84,061.25 | 6,556.78 | 90,618.03 |
| 50-085 | Est. 1673 | 108,745.00 | 8,482.11 | 117,227.11 |
| 50-084 | 1761.75 | 114,513.75 | 8,932.07 | 123,445.82 |
| 50-082 | 180 | 11,700.00 | 912.60 | 12,612.60 |
| 50-080 | 1299.25 | 84,451.25 | 6,587.20 | 91,038.45 |
| 50-079 | 1284 | $83,460.00 | $6,509.88 | $89,969.88 |
| 50-079 | | To Pay Onset Bay Marine | (second repair) | 46,000.00 |

| 50-076 | 2090.75 | 135,898.75 | 10,600.10 | 146,498.85 |
|--------|---------|------------|-----------|------------|
| *50-072 | Est. 1673 | 108,745.00 | 8482.11 | 117,227.11 |
| *50-067 | Est. 1673 | 108,745.00 | 8,482.11 | 117,227.11 |
| 50-066 | 285.75 | 18,573.75 | 1,448.75 | 20,022.50 |
| 50-066 | Est. 1673 | 108,745.00 | 8482.11 | 117,227.11 |
| 50-064 | | Paid Portland Boat Works | | 60,000.00 |
| *50-062 | Est. 1673 | 108,745.00 | 8482.11 | 117,227.11 |
| 50-061 | 1546 | 100,490.00 | 7,838.22 | 108,328.22 |
| **50-061 | 230 | 14,950.00 | 1,166.10 | 16,116.10 |
| 50-060 | | Paid LUU Marine | | 47,700.00 |
| Travel to 50-060 | 15.75 | 1023.75 | Plane fare 270.40 | 1,294.15 |
| 50-058 | Est. 2300 | 149,500.00 | 11,661.00 | 161,161.00 |
| 50-057 | 3346 | 217,490.00 | 16,964.22 | 234,454.22 |
| *50-055 | Est. 1673 | 108,745.00 | 8482.11 | 117,227.11 |
| *50-053 | Est. 1673 | 108,745.00 | 8,482.11 | 117,227.11 |
| **50-052 | 235 | 15,275.00 | 1,191.45 | 16,466.45 |
| *,** 50-052 | Est. 1673 | 108,745.00 | 8,482.11 | 117,227.11 |
| 56-005 | Est. 2300 | 149,500 | 11,661.00 | 161,161.00 |
| *56-003 | Est. 2300 | 149,500 | 11,661.00 | 161,161.00 |
| | | | TOTAL | $3,715,799.54 |

*These boats have been reported to be cracking – no inspection has been made to date
** These boats were repaired with CCP 953 gel coat and additional cracking has occurred
Please note that while an inspection can be made and an estimate developed, our experience has been that when the boat can be scheduled and brought in for repair, the damage is more extensive

22.    Identify each and every boat you allege has been damaged as a result of the 953

Series Gel Coat, including, but not limited to, the model, year and series of boat, the geographic

location of storage for the boat for each year since its manufacture, the length of time it was

stored for each year since its manufacture, a description with particularity of the alleged damage,

and the name, address and telephone number of the current and any prior owners of each boat.

**ANSWER:**

| Hull # | Model | Year | Storage History | Damage |
|--------|-------|------|-----------------|--------|

SEGREDO & WEISZ, 9350 South Dixie Highway, Miami, Florida 33156 • Tel: (305) 670-3820, Fax: (30    **Page 25.06**

| 42-328 | 42 | 2001 | 01 – 03 FL<br>03 – 04 MA<br>04 – 05 FL | Gel Coat Cracks |
|--------|----|----|------|------|
| 42-326 | 42 | 2001 | 00 – 01 Great Lakes<br>01 – 02 Great Lakes<br>02 – 03 Great Lakes<br>03 – 04 N.J.<br>04 – 05 Great Lakes | Gel Coat Cracks |
| 42-324 | 42 | 2000 | New Jersey all year | Gel Coat Cracks |
| 42-319 | 42 | 2000 | New Jersey all year | Gel Coat Cracks |
| 42-317 | 42 | 1999 | Winter 99 – 00 OH<br>01 – 05 N.C. | Gel Coat Cracks |
| 42-316 | 42 | 1999 | Connecticut all year | Gel Coat Cracks |
| 42-311 | 42 | 2001 | New Jersey all year | Gel Coat Cracks |
| 50-090 | 50 |  | New Jersey all year | Gel Coat Cracks |
| 50-089 | 50 | 2003 | 02 – 05 N.J.<br>05 – 06 MA | Gel Coat Cracks |
| 50-088 | 50 | 2004 | Connecticut all year | Gel Coat Cracks |
| 50-087 | 50 | 2002 | Connecticut and Long Island | Gel Coat Cracks |
| 50-086 | 50 | 2002 | Connecticut all year | Gel Coat Cracks |
| 50-085 | 50 | 2002 | Winter 02 – 03 FL<br>03 - 04 FL<br>04 – 05 FL<br>05 – 06 CT | Gel Coat Cracks |
| 50-084 | 50 | 2002 | 02 – 03 N.C.<br>03 – 04 N.C.<br>04 – 05 MD. | Gel Coat Cracks |
| 50-082 | 50 |  | Maryland<br>Rhode Island | Gel Coat Cracks |
| 50-080 | 50 | 2001 | Maryland all year | Gel Coat Cracks |
| 50-079 | 50 | 2001 | Massachusetts all year | Gel Coat Cracks |
| 50-076 | 50 | 2001 | 01 – 03 CT<br>03 – 04 MA<br>04 – 05 NJ | Gel Coat Cracks |
| 50-072 | 50 | 2000 | 01 – 03 MA | Gel Coat Cracks |
| 50-067 | 50 | 2000 | Massachusetts all year | Gel Coat Cracks |
| 50-066 | 50 | 2000 | 00 – 04 NY<br>04 – 05 FL | Gel Coat Cracks |
| 50-062 | 50 | 2000 | Maryland and N.C. | Gel Coat Cracks |
| 50-061 | 50 | 2000 | Connecticut All Year | Gel Coat Cracks |
| 50-060 | 50 | 2000 | Winter 99 – 00 FL<br>00 – 01 CT<br>01 – 02 CT<br>02 – 03 FL<br>03 – 04 FL<br>04 – 05 FL | Gel Coat Cracks |

| 50-058 | 50 | 1999 | Maryland | Gel Coat Cracks |
|--------|-----|------|-----------------------------|------------------|
| 50-057 | 50 | 1999 | Massachusetts all year | Gel Coat Cracks |
| 50-055 | 50 | 1999 | Connecticut sold to Florida | Gel Coat Cracks |
| 50-053 | 50 | 1999 | Connecticut all year | Gel Coat Cracks |
| 50-052 | 50 | 1998 | Winter 98 - 99 CT<br>99 – 00 CT<br>00 – 01 FL<br>01 – 02 CT<br>02 – 03 FL<br>03 – 04 CT<br>04 – 05 CT | Gel Coat Cracks |
| 47-011 | 47 | 1999 | New Jersey all year | Gel Coat Cracks |
| 47-009 | 47 | 2000 | New Jersey all year | Gel Coat Cracks |
| 56-005 | 56 | 2002 | Winter  02 – 03 FL<br>03 – 04 FL<br>04 – 05 FL<br>05 – 06 SC | Gel Coat Cracks |
| 56-003 | 56 | 2002 | 01 – 04 FL<br>04 – 06 MD | Gel Coat Cracks |

23.    Describe with particularity all repairs made to boats by Post in connection with

damages allegedly related to the 953 Series Gel Coat.

**ANSWER:**

**42-316**    Effected areas were sanded down and **CCP953 WA411** gel coat was re-applied.

**42-317**    Effected areas were sanded down and **CCP953 WA411** gel coat was re-applied.

**42-319**    Effected areas were sanded down and **CCP953 WA411** gel coat was re-applied.

**42-324**    Effected areas were sanded down and **CCP953 WA411** gel coat was re-applied.
Extensive re-cracking has been reported.

**42-326**    Effected areas were sanded down and **CCP953 WA411** gel coat was re-applied.

**50-052**    Effected areas were sanded down and **CCP953 WA411** gel coat was re-applied.
Extensive re-cracking occurred.  Boat has returned to Post Marine for more
extensive repairs.

**50-057**    Effected areas were sanded down and **Interplastic** gel coat was applied.

Page 25.08

| | |
|---|---|
| **50-061** | Effected areas were sanded down and **CCP953 WA411** gel coat was re-applied. Extensive re-cracking occurred. Effected areas were sanded down and **Interplastic** gel coat was applied |
| **50-076** | Effected areas were sanded down and **Interplastic** gel coat was applied. |
| **50-079** | Effected areas were sanded down and **CCP953 WA411** gel coat was re-applied. Extensive re-cracking occurred. Scheduled for repairs at Onset Bay Marina, Buzzards Bay, Massachusetts. |
| **50-080** | Effected areas were sanded down and **CCP953 WA411** gel coat was re-applied. |
| **50-084** | Effected areas were sanded down and **Interplastic** gel coat was applied. |
| **50-086** | Effected areas were sanded down and **CCP953 WA411** gel coat was re-applied. |

Other boats have not had repairs completed as of this date.

Post has produced records of all CCP gel coat purchased subsequent to 2002 which was used to

repair boats. Post does not have exact batch records used for repairs.

**Page 25.09**

## **VERIFICATION**

I verify that the foregoing statements made by me are true. I further certify that the exhibits to these interrogatories are true and complete copies of originals. Pursuant to 28 U.S.C.

' 1746, I understand I make this Verification under penalty of perjury.

Signature

_Kenneth S. Jensen_
Print Name

_President_
Title

_12/8/06_
Date

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

VIKING YACHT COMPANY, a New Jersey        :
Corporation and POST MARINE CO., INC., a  :
New Jersey Corporation,                   :
                                          :  CIVIL ACTION NO. 05-538
                    Plaintiffs,           :  (JEI/JBR)
                                          :
        v.                                :
                                          :
COMPOSITES ONE LLC, a Foreign Limited     :
Liability Co., and COOK COMPOSITES AND    :
POLYMERS, a Missouri Corporation,         :
                                          :
                    Defendants.           :
                                          :

**CERTIFICATE OF SERVICE**

I hereby certify that on December ____, 2006, I caused a copy of the foregoing Post

Marine Co., Inc.'s Supplemental Answers to Composites One LLC's First Set of Interrogatories

to be served on counsel of record via Federal Express as follows:

Steven E. Bizar, Esquire
Meredith Myers LeConey, Esquire
BUCHANAN INTERSOLL PC
1835 Market Street, 14th Floor
Philadelphia, PA 19103

Michel Ociacovski Weisz (Fla. Bar No. 336939)

**Page 25.11**

# EXHIBIT

# C

ORIGINAL

1     UNITED STATES DISTRICT COURT

2     DISTRICT OF MASSACHUSETTS

3     BOSTON DIVISION

4     C.A. NO. 05-11682 MLW

5

6 L & T YACHT SALES, INC.,     :

7      Plaintiff,  :

8    -vs-     :

9 POST MARINE CO., INC.,    :

10     Defendant.  :

11 - - - - - - - - - - - - - - - - - - - - - - -

12

13

14    DEPOSITION OF: KENNETH JENSEN

15    WEDNESDAY, APRIL 11, 2007

16

17

18

19

20   Atlantic City Court Reporting, LLC.

21  Certified Shorthand Reporters & Videographers

22   1125 Atlantic Avenue - Suite 416

23   Atlantic City, New Jersey  08401

24     (609) 345-8448

25    www.accourtreporting.com

```
1                K E N N E T H   J E N S E N,
2    having been first duly sworn, testified as follows:
3                          EXAMINATION
4    BY MR. ZAJAC:
5         Q.     Good morning, Mr. Jensen.
6         A.     Good morning.
7         Q.     My name is John Zajac, and as I'm sure
8    you know, I represent L & T Yacht Sales, Incorporated,
9    the plaintiff, in an action in the Massachusetts
10   Federal District Court against Post Marine Company.
11              We are here today to take your
12   deposition, and I believe you have been deposed
13   before.
14        A.     Yes, I have.
15        Q.     So I'm going to briefly go over the
16   rules with you, but I assume that having been through
17   this process before, you're pretty familiar with what
18   they are.  We're here to take your deposition, which
19   is that I'm going to ask you questions and you're
20   going to answer them.
21              If you need to take a break for any
22   reason, we can certainly do that.  I would simply ask
23   that if there is a question before you, that you
24   answer that question before we take any type of break.
25              If you don't understand my question,
```

```
1          Q.    Mr. Jensen, has Post had problems with
2    the gel coating on boats in the past 10 years?
3          A.    With one particular series, yes.
4          Q.    When you say "series," what do you mean?
5          A.    One series of gel coat.
6          Q.    And is there a designation assigned to
7    that series of gel coat?
8          A.    Yes.
9          Q.    It's -- what is that designation?
10         A.    It's CCP's 953 series.
11         Q.    Who is CCP?
12         A.    * cook, Composite and Polymers.
13         Q.    When did Post begin using the 953 gel
14   coat?
15         A.    Fall of '97.
16         Q.    Did it use that -- did it use 953 gel
17   coat on all sizes of boats that it manufactured?
18         A.    Yes.
19         Q.    Did it use any other gel coat besides
20   the 953 between 1997 and 2004?
21         A.    Yes.
22         Q.    What other gel coats has Post used
23   besides the 953 gel coat since 1997?
24         A.    Early in '97 we used the CCP 952 gel
25   coat, and then late 2002 we started using the
```

1 Interplastic's gel coat.

2      Q.    Did Post exclusively use the

3 Interplastic's gel coat for all new boats manufactured

4 after 2002?

5      A.    Talking calendar year 2002, yes.

6      Q.    So for boats that were manufactured as

7 opposed to repaired, the 953 gel coat was only used

8 between 1997 and 2002?

9      A.    Yeah. Realize calendar year 2002 would

10 encompass some 2003 model boats, yes.

11      Q.    And is the 953 gel coat the only one in

12 which Post has experienced significant problems with

13 cracking?

14      A.    Yes.

15      Q.    When did Post first become aware of a

16 problem with cracking with the 953 gel coat?

17      A.    First time we saw it was in the summer

18 of 2002.

19      Q.    And how did you become aware of that

20 problem?

21      A.    A customer asked us if we would look at

22 his boat, if we, you know -- take care of some cracks

23 in it so he brought it down, and we took care of it.

24      Q.    What was the hull number of that boat?

25      A.    I believe it was 52.

| | | |
|---|---|---|
| 1 | Q. | And what size? |
| 2 | A. | 50-foot. |
| 3 | Q. | When was that boat manufactured? |
| 4 | A. | 1998. |
| 5 | Q. | What type of problems did the owner of |
| 6 | that boat encounter? | |
| 7 | A. | Just some unusual indiscriminate |
| 8 | cracking. | |
| 9 | Q. | And in 2002, was the person who brought |
| 10 | it to you the original owner of the boat? | |
| 11 | A. | Yes. |
| 12 | Q. | When did Post become aware that this was |
| 13 | not an isolated problem with Boat 50-52? | |
| 14 | A. | In the fall of 2002, we saw a second |
| 15 | boat. | |
| 16 | Q. | What was the hull number of that boat? |
| 17 | A. | Number 60. 50, Number 60. |
| 18 | Q. | And did that boat have the same problems |
| 19 | as 50-52? | |
| 20 | A. | Similar. |
| 21 | Q. | When was 60 manufactured? |
| 22 | A. | '98, '99. I'm not sure. |
| 23 | Q. | In the time line of Post becoming aware |
| 24 | of these problems, what happened next? | |
| 25 | A. | What do you mean? |

1     Q.    Well, as of the fall of 2002, Post has
2  become aware of problems with two boats.  When did
3  Post become aware of more problems than that?
4     A.    I'm going to say in '03.  I don't have
5  specifics.
6     Q.    How did Post become aware of further
7  problems with cracking of gel coat?
8     A.    Typically, a customer would call us up
9  seeing something unusual.
10    Q.    So by 2003, how many such calls had Post
11  received?
12    A.    It really wasn't too many initially.  I
13  can't tell you exactly, but it wasn't -- it wasn't
14  that many.
15    Q.    What is the hull number of Mr.
16  Hamilton's boat or L & T Yacht Sales' boat?
17    A.    50-076.
18    Q.    And when was that boat manufactured?
19    A.    I believe 2001.  Excuse me.  Let me
20  backtrack on that, okay?  Manufacturing is a lengthy
21  time.  The boat would have been started in 2000,
22  completed -- it was completed, I believe, in January
23  of '01.
24    Q.    What's the normal time frame for the
25  manufacture of a 50-foot Post boat?

| 1 | A. Approximately four months. Four, |
| 2 | four-and-a-half months. |
| 3 | Q. And the 953 gel coat would have been the |
| 4 | type of gel coat used on Number 76? |
| 5 | A. Yes. |
| 6 | Q. Did someone contact you about a problem |
| 7 | with cracking of the gel coat on Boat 76? |
| 8 | A. Yes. |
| 9 | Q. Who contacted you? |
| 10 | A. Mr. Hamilton. |
| 11 | Q. And did he speak with you directly about |
| 12 | it? |
| 13 | A. Yes. |
| 14 | Q. When were you first contacted by Mr. |
| 15 | Hamilton about that boat? |
| 16 | A. I believe it was in May of '04. |
| 17 | Q. How did he first contact you? |
| 18 | A. Telephone. |
| 19 | Q. And what did he say to you? |
| 20 | A. Just said he was experiencing some |
| 21 | unusual, odd cracking, and we told him what we had |
| 22 | experienced. |
| 23 | Q. What did you tell him? |
| 24 | A. Just that we were seeing in some -- on |
| 25 | some boats an unusual type of gel coat cracking. |

```
1          Q.     And is Post paying for that?
2          A.     We're paying for part of it.
3          Q.     Would those repairs require the removal
4    of a substantial amount of gel coat?
5          A.     It would require the remove of some gel
6    coat.  Yes.
7          Q.     How much?
8          A.     They need to -- let me backtrack just
9    one second.  At the time that Mr. Mobarri's boat was
10   repaired, it was repair using 953 gel coat, okay?  Mr.
11   Hamilton's boat was not repaired with 953 gel coat.
12   So the 953 gel coat on Mr. Mobarri's boat suffered a
13   second failure, okay?  The boat is being sanded -- you
14   know, is to be sanded aggressively.
15              The people at Onset Bay felt they knew
16   how far they had to take it down and then it was going
17   to be Awl Gripped.
18         Q.     And is it still at Onset Bay Marina for
19   repairs?
20         A.     I'm not sure.
21         Q.     For a period of time did Post use the
22   953 gel coat to perform repairs?
23         A.     Yes.
24         Q.     And during what period of time did Post
25   use 953 gel coat to perform repairs?
```

1       A.      Up until either late 2004 or early 2005.

2       Q.      And what was the reason that Post

3   initially used 953 gel coat to perform those repairs?

4       A.      The -- we had the people from CCP come

5   in and, you know, look at what was going on.  They

6   assured us their product was good.  They assured us

7   that, you know, how we were fixing the boats, that we

8   wouldn't have further problems.

9       Q.      When did those conversations take place?

10      A.      They took place during '04, '02 when

11  they came in.  I'm not sure if we ever had them visit

12  us during '03.

13      Q.      And subsequently did the repairs using

14  the 953 gel coat experience the same problems as?

15      A.      Some did.  Some haven't.

16      Q.      Is that why Post no longer uses 953 gel

17  coat for repairs?

18      A.      Yes.

19      Q.      Do you know if Bill Catauro also went to

20  view Mr. Mobarri's boat?

21      A.      He may have.

22      Q.      For the second repairs done to Mr.

23  Mobarri's boat, were they only to fix the first

24  repairs or was there continued cracking in the other

25  areas that had not been repaired?

1        Q.    Did Post ever advise Mr. Hamilton in

2  writing as to how the repairs to his boat would be

3  done?

4        A.    I believe we did.

5        Q.    And do you know who prepared that?

6        A.    I know that our attorney -- we prepared

7  an in-house memo, went to our attorney. He forwarded

8  a letter and then Joe Martorana sent a follow-up

9  letter.

10       Q.    Did Mr. Hamilton indicate that he was

11  going to use that letter to show to any subsequent

12  purchaser or purchasers?

13       A.    Not that I recall.

14       Q.    Did Mr. Hamilton express any concerns as

15  to the type of repairs that Post stated in that

16  letter?

17       A.    Well, I know in the first letter he

18  wanted a little clarification, and then Joe sent that

19  second letter.

20       Q.    If you recall, what were those

21  clarifications?

22       A.    I don't recall.

23       Q.    At any time did Post ever offer a cash

24  settlement, rather than repairs to Mr. Hamilton's

25  boat?

1        A.      Telephone.

2        Q.      When did Post first begin notifying

3   dealers with problems with the gel coat?

4        A.      Well, some of them knew because some of

5   them had their clients suffer that issue.  The only

6   people who weren't aware of it were the people in

7   Florida, and, I don't know, a couple years.

8        Q.      Is it a fair statement to characterize

9   the cracking of the 953 gel coat on Post boats a major

10  problem?

11       A.      It's not a structural issue.  It's not a

12  major problem with the boat.  It's a cosmetic issue,

13  which is labor intensive to repair, and it's expensive

14  to repair, but it is not a major problem in that it

15  prohibits a customer from utilizing the boat and

16  there's no safety issue involved in this problem.

17       Q.      Has Post ever referred to the gel coat

18  failure as being catastrophic?

19       A.      Yes, in the context of the gel coat, not

20  in the context of the boat.

21       Q.      Does the gel coat failure diminish the

22  value of a boat?

23       A.      It makes it unsightly and that's in the

24  eye of the beholder.  We've had people buy boats that

25  had this problem and it did not affect them buying the

1  Oyster Harbor as a dealer. We had gone a few years

2  without a dealer and then later -- and then

3  probably -- I'm ball parking this, probably around

4  '97, we had Oyster Harbor as a dealer and they were a

5  dealer with us until '04-'05, in that time frame.

6  BY MR. ZAJAC:

7       Q.    Is the 953 gel coat defective?

8       A.    In our opinion it is, yes.

9       Q.    Is it necessary to replace all the 953

10 gel coat on a boat?

11       A.    No. We're not seeing failure in all

12 areas. We believe there is certain environmental

13 issues that will affect it on certain areas of the

14 boat quicker or --

15            MR. WEISZ: At which we are not going to

16 discuss in this deposition.

17            THE WITNESS: Yeah.

18            MR. WEISZ: That's subject of expert

19 testimony that hasn't been disclosed yet.

20 BY MR. ZAJAC:

21       Q.    Is there anything that can be done

22 besides removal and replacing of the 953 gel coat to

23 prevent it from failing?

24            MR. WEISZ: Hang on one second. If you

25 ask the question in the sense of repairing the cracks,

1   BY MR. ZAJAC:

2          Q.    At the time that -- strike that.

3                In July of 2005, were there any areas of

4   Mr. Hamilton's boat that still needed to be stripped?

5          A.    There were -- again, I believe there

6   were a few cracks on the hull that we were going to

7   address, and we were going to remove the bottom paint

8   and inspect the bottom.

9          Q.    Does Post warranty gel coat?

10         A.    No.

11         Q.    Does Post offer any type of warranty on

12  its boats?

13         A.    Yes.

14         Q.    How long is that warranty?

15         A.    At the time that Mr. Hamilton's boat was

16  built, it was one year.

17         Q.    Does Post's warranty extend to anyone

18  beyond the original purchaser of the boat?

19         A.    No.

20         Q.    Is it Post's contention that if a boat

21  is sold one year -- resold within one year that the

22  warranty then expires?

23         A.    Yes.

24         Q.    Is it Post's contention that there is no

25  warranty applicable to Mr. Hamilton's boat?

1          A.     Yes.  Excuse me.  Back up.  From Post.
2   Now, some component manufacturers have different
3   warranties, which we don't address, but from Post, no
4   warranty.
5          Q.     Before Post performed any repairs on Mr.
6   Hamilton's boat, did Mr. Hamilton threaten to sue
7   Post?
8          A.     Yes.
9          Q.     Is it Post's contention that Mr.
10  Hamilton should have sued someone besides Post
11  relative to the defective gel coat on his boat?
12         A.     That's his prerogative.  That's -- it's
13  not our decision.
14         Q.     Is it Post's position that there's some
15  indispensable party to the action in the Massachusetts
16  District Court?
17                MR. WEISZ:  I'm going to object on the
18  basis of his competency.  That calls for a legal
19  conclusion.
20  BY MR. ZAJAC:
21         Q.     Do you know who the original owner of
22  Mr. Hamilton's boat was?
23         A.     Yes.
24         Q.     Who was it?
25         A.     Mr. Zappy (ph).

```
 1          Q.     Did anyone besides Mr. Zappy (ph) and
 2   L & T Yacht Sales, Incorporated own Number 76?
 3          A.     To my knowledge, no.  Excuse me.  With
 4   the exception of Portland Boat Works who was the
 5   stocking dealer.  I don't believe that there was a Mr.
 6   Zappy (ph) to somebody else.  I don't know the chain.
 7          Q.     Post has brought a claim against the
 8   manufacturer of the gel coat, correct?
 9          A.     Yes.
10          Q.     And there's litigation pending in New
11   Jersey Federal District Court concerning that matter?
12          A.     Yes.
13          Q.     And Viking Yacht is also a party to that
14   case?
15          A.     Yes.
16          Q.     Is it Post's contention in the
17   litigation in New Jersey that it has a warranty from
18   manufacturer of the 953 gel coat?
19                 MR. WEISZ:  Object.  Calls for a legal
20   conclusion.  If you care to review the pleadings,
21   you'll see what the claims are.
22                 MR. ZAJAC:  I think he can answer that.
23   I don't think that requires a conclusion -- a legal
24   conclusion.
25                 MR. WEISZ:  Well --
```

```
1                    MR. WEISZ:   If you want to go off the
2    record for a second.
3                    MR. ZAJAC:   Sure.
4                    (Discussion off the record.)
5    BY MR. ZAJAC:
6         Q.    Does Post contend that it had any
7    implied warranty from the gel coat manufacturer?
8         A.    I don't want to sound dumb, okay, but
9    I'm not -- I don't want to say.  I don't know.
10        Q.    In its claim for damages -- strike that.
11              What is the claim for damages that Post
12   is making against the manufacturer of the gel coat?
13        A.    We have -- we have -- we have the boats
14   that we've repaired, the cost on those, and then we're
15   also trying to cover all the boats that were
16   manufactured with 953 gel coat.
17        Q.    And how many boats were manufactured
18   with 953 gel coat?
19        A.    81.
20        Q.    How many have been repaired to date?
21        A.    81 have not had a problem, okay?
22        Q.    Uh-huh.
23        A.    Of those repaired, without counting, I'm
24   goes to guess we're probably somewheres up between 15
25   and 18.  I'm guessing.  It's ballpark.
```

1    three years ago with 953 gel coat.

2           Q.      How many boats have been repaired once

3    with 953 gel coat and have not required further

4    repair?

5           A.      Probably eight or nine.

6           Q.      And how many have been repaired with 953

7    gel coat and have required further repairs?

8                   MR. WEISZ:   I'm going to object to the

9    form, but you can go ahead and answer it.

10                  THE WITNESS:   Okay.  I know of two for

11   sure.   Three.   Three for sure.   Two have -- well, two

12   are in process.   One was done and there's maybe a

13   couple of others.

14   BY MR. ZAJAC:

15          Q.      Besides Mr. Brown's former boat, the

16   50-footer, are there any other boats in which Post has

17   obtained a release without performing any repairs or

18   paying for a third-party to perform repairs?

19          A.      No.

20          Q.      Is there any litigation pending against

21   Post from an owner besides Mr. Hamilton?

22          A.      No.

23          Q.      Have there previously been any

24   litigation against Post from a -- by a former -- by an

25   owner besides Mr. Hamilton?

(JENSEN · ZAJAC)

```
1          A.      No.   Post has been in business for 50
2    years.  Mr. Hamilton is the first person to sue Post
3    in 50 years, and the lawsuit that Post is bringing
4    against CCP is the first lawsuit that I'm aware of in
5    50 years.
6                  Post has always been a company that has
7    tried to accommodate customers, take care of their
8    product and not get involved in these issues.
9          Q.      With regard to its claim against the gel
10   coat manufacturer, has Post quantified its damages for
11   the boats that have not yet been repaired, nor the gel
12   coat has failed?
13         A.      We've put a number out there, which is
14   an average of time.
15         Q.      What is that number?
16         A.      I'm trying to remember.  I believe it
17   was like 220, 225, 225,000, the boat.  I think.
18         Q.      Is Post seeking damages above and beyond
19   its cost of repair for boats that have already been
20   repaired once using the 953 gel coat?
21         A.      We've notified them that those boats --
22   what boats were repaired with 953 gel coat, and we
23   notified them that those boats may crack again in the
24   future based on what we've seen over the years, so
25   they've been notified of that.
```

1        C E R T I F I C A T I O N

2        I, BETTY ANN WASILEWSKI, a Certified

3    Shorthand Reporter of the State of New Jersey, do

4    hereby certify that prior to the commencement of the

5    examination, KENNETH JENSEN was duly sworn by me to

6    testify to the truth, the whole truth and nothing but

7    the truth.

8        I DO FURTHER CERTIFY that the foregoing is a

9    true and accurate transcript of the testimony as taken

10   stenographically by and before me at the time, place

11   and on the date hereinbefore set forth.

12       I DO FURTHER CERTIFY that I am neither a

13   relative nor employee nor attorney nor counsel of any

14   of the parties to this action, and that I am neither a

15   relative nor employee of such attorney or counsel, and

16   that I am not financially interested in this action.

17

18       _____

19       BETTY ANN WASILEWSKI
         Certified Shorthand Reporter
20       License No. XI01032
         Certificate of Merit
21       Registered Professional Reporter
         My Commission expires 12/18/08

22

23

24   DATED:   April 28, 2007.

25   THIS TRANSCRIPT FORMAT COMPLIES WITH NJ ADC 13:43-5.9.

# EXHIBIT

# D

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BOSTON DIVISION
DOCKET NO. 05-11682

|   |   |
|---|---|
| L & T YACHT SALES, INC., | ) |
| Plaintiff | ) |
|  | ) |
| VS. | ) |
|  | ) |
| POST MARINE CO., INC., | ) |
| Defendant | ) |

## AFFIDAVIT OF TODD HAMILTON IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This 13th day of July 2007, Todd Hamilton, President of L&T Yacht Sales Inc., under oath deposes and states as follows:

1. I instructed my legal counsel, Lisa Kane Esquire, during August 2004 that unless Post swiftly agreed in writing to provide numerous needed repairs to my boat as specifically demanded by me, that I wanted her to file a law suit against Post within 30 days.

2. Upon receipt of August 25 letter from Post's legal counsel, I decided not to file against Post but rather decided to incur the expense of time and money to deliver my boat to Post in New Jersey and give Post an opportunity to fix the boat, seeking the clarification contained in the September 2, 2004 letter.

3. I fully expected that I would have my boat back, completely and properly repaired, within 4 to 5 months as Post stated in its letter to me.

4. After more than 9 months of having my boat, Post failed to fully or properly perform any of the 9 promises contained within the August 25 letter or the promises contained within the September 2, 2004 letter from Joe Martorana, particularly with regard to the complete stripping of the gel coat from entire surfaces.

Signed under pains and penalties of perjury this 13th day of July, 2007.

L & T Yacht Sales, Inc.

By: _____

Todd Hamilton, President

1

# EXHIBIT

# E

ORIGINAL

1                UNITED STATES DISTRICT COURT

2                DISTRICT OF MASSACHUSETTS

3                BOSTON DIVISION

4                C.A. NO. 05-11682 MLW

5

6    L & T YACHT SALES, INC.,                        :

7                          Plaintiff,                :

8                    -vs-                            :

9    POST MARINE CO., INC.,                          :

10                        Defendant.                 :

11   - - - - - - - - - - - - - - - - - - - - - - - -

12

13

14           DEPOSITION OF:  JOSEPH MARTORANA

15              WEDNESDAY, APRIL 11, 2007

16

17

18

19

20         Atlantic City Court Reporting, LLC.

21    Certified Shorthand Reporters & Videographers

22          1125 Atlantic Avenue - Suite 416

23          Atlantic City, New Jersey  08401

24                  (609) 345-8448

25              www.accourtreporting.com

2

1          Deposition of JOSEPH MARTORANA, taken in the

2     above-entitled matter before Betty Ann Wasilewski, a

3     Certified Shorthand Reporter, License No. XI01032,

4     Registered Professional Reporter, Certificate of Merit

5     Holder and Notary Public of the State of New Jersey,

6     taken at the offices of ATLANTIC CITY COURT REPORTING,

7     LLC., 1125 Atlantic Avenue, Suite 416, Atlantic City,

8     New Jersey  08401, on Wednesday, April 11, 2007,

9     commencing at 2:14 p.m.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1    A P P E A R A N C E S:

 2

 3              CARMICHAEL & ZAJAC, P.C.

 4              BY:   JOHN E. ZAJAC, ESQ.

 5              170 High Street

 6              Taunton, Massachusetts  02780

 7              (508) 821-2552

 8              For the Plaintiff.

 9

10              SEGREDO & WEISZ

11              BY:   MICHEL O. WEISZ, ESQ.

12              9350 South Dixie Highway

13              Suite 1500

14              Miami, Florida  33156

15              (305) 670-3820

16              For the Defendant.

17

18    ALSO PRESENT:

19              Todd Hamilton

20

21

22

23

24

25
```

(MARTORANA - ZAJAC)

```
 1              J O S E P H    M A R T O R A N A,
 2   having been first duly sworn, testified as follows:
 3                        EXAMINATION
 4   BY MR. ZAJAC:
 5         Q.     Good afternoon, Mr. Martorana.
 6         A.     Good afternoon.
 7         Q.     How are you?  My name is John Zajac and
 8   I represent L & T Yacht Sales, Incorporated in
 9   litigation in the federal district court against Post
10   Marine Company, Incorporated.
11              Have you ever given a deposition before?
12         A.     Yes, I have.
13         Q.     I'm going to assume that you're
14   relatively familiar with the ground rules, but I'm
15   going to state them very briefly, which is that we're
16   here to record your testimony, and I'm going to ask
17   you questions, and you're going to answer them; that
18   it's important that you answer verbally with yes or no
19   if that's the appropriate answer and not uh-huh or
20   uh-uh because that doesn't form a transcript or
21   nodding your head or indicating something, other than
22   verbally.
23              If you don't understand my questions,
24   please feel free to ask me to rephrase them or to
25   explain anything so that you are clear in what I'm
```

(MARTORANA · ZAJAC)

1     A.     I thought it had better flexible

2   properties to it, and it was better -- it was priced

3   better.  It was cheaper to be honest with you.

4          Q.     Had Post already been receiving

5   complaints about boats with the 953 gel coat at that

6   time?

7          A.     At what -- in 19 -- in 2002?

8          Q.     Yes.

9          A.     We had some boats, yes, but not -- yeah,

10   we did have some boats.  Yes, I believe.

11         Q.     Was it the complaints or was it the

12   better performance characteristics of the

13   Interplastic's at that time that made you select

14   Interplastic's over the 953?

15         A.     It was my suspicion of the

16   characteristics of 953 and the better pricing of the

17   other gel coat and the better characteristics of the

18   other gel coat.

19         Q.     Did you begin testing comparing the 953

20   to Interplastic's before or after Post received its

21   first complaint about cracking in the 953 gel coat?

22         A.     I'm not sure of that.  At the time, and

23   I'm talking about in 2000 -- the end of 2001, 2002, I

24   don't believe there was any type of -- there was no

25   wholesale cracking or problems that we had been aware

(MARTORANA - ZAJAC)

1    at that time, but I don't think we had any -- I don't
2    think we had any -- any kind of conversations before
3    that that I can remember.
4        Q.    So did you have any involvement with
5    regard to Mr. Hamilton's boat before it actually
6    arrived at Post?
7        A.    What -- what do you mean?  I'm not sure
8    I understand the question.
9        Q.    Did you speak with Ken about it?  Did
10   you speak to --
11       A.    Yes, I did.
12       Q.    -- anyone about it?
13       A.    Yes, I did.
14       Q.    What did Ken tell you about it?
15       A.    That it was a boat that we were going to
16   repair, and we talked about, you know, when we could
17   bring it in, and when we could get it done.
18       Q.    And what did you discuss with Ken about
19   a time frame for repairing Mr. Hamilton's boat?
20       A.    I believe the boat -- we brought the
21   boat in in November and we were going to work on it
22   over the winter.
23       Q.    Did you work on Mr. Hamilton's boat over
24   the winter of 2004 into 2005?
25       A.    Yes.

(MARTORANA - ZAJAC)

1      Q.      What was the condition of the gel coat
2   on Mr. Hamilton's boat when you first saw it?
3      A.      The overall condition of the boat, I
4   thought, was good.  It looked like it was maintained.
5   There were areas that were cracking, though.  I saw
6   the stress cracking.
7      Q.      Okay.  What areas did you first see
8   cracking in Mr. Hamilton's boat when you took it in
9   for repairs?
10      A.      On the shelter sides, the front deck,
11   the windshield, the cockpit floor, I believe the
12   cockpit side decks.
13      Q.      When did work on Mr. Hamilton's boat
14   start?
15      A.      In November.
16      Q.      Was that right when it first came in?
17      A.      Yes.
18      Q.      Where at your facility was the work
19   being performed?
20      A.      In our production building.
21      Q.      Were there other boats being repaired at
22   the same time?
23      A.      In the building?
24      Q.      Yes.
25      A.      No, I don't believe so.

(MARTORANA - ZAJAC)

```
1          A.      Most of them, yes, I do recall.
2          Q.      What were they?
3          A.      The shelter sides, the windshield, the
4    front deck, the cockpit, the cockpit side decks.  I
5    don't remember if the back bulkhead -- if we did work
6    to the back bulkhead or not or the tackle lockers.
7                  There was, I believe, one or two cracks
8    on one side of the hull and on the other side, I
9    believe, there was a couple small cracks around the
10   vents.
11         Q.      Did you have to strip the bottom of the
12   boat?
13         A.      Did we strip the bottom?
14         Q.      Yes.
15         A.      No, we didn't.
16         Q.      Did you strip the sides of the hull?
17         A.      Did I completely strip the sides?  No, I
18   did not.
19         Q.      What of the hull was stripped?
20         A.      The areas that were affected.
21         Q.      How large were those areas?
22         A.      On the side that we saw a couple cracks,
23   they were running top to bottom, and there was
24   probably two or three areas that we worked on there.
25                 On the other side in the vent area, I
```

(MARTORANA - ZAJAC)

```
1    believe, there were small -- there were spots -- small
2    spots around the radiuses of the vents.
3         Q.    Did you have to strip the exterior of
4    the bridge?
5         A.    Exterior of the bridge?  No.  We didn't
6    see any cracking on the exterior.
7         Q.    Did you strip the inside of the bridge?
8         A.    No, we didn't.
9         Q.    Did you strip the floor of the bridge?
10        A.    I'm not sure.  They might have.  I'm not
11   sure.
12        Q.    Did you strip the hardtop?
13        A.    No, we did not.  I don't believe we did.
14        Q.    While the boat was at Post for repair,
15   did Mr. Hamilton ever come and visit Post?
16        A.    I believe he was, yes.
17        Q.    Did he meet with you on any of those
18   occasions?
19        A.    I talked to him there, yes.  He had been
20   there.
21        Q.    Do you recall how many separate
22   occasions you met with Mr. Hamilton at Post during the
23   repairs of the boat?
24        A.    No, I don't recall how many.  It might
25   have been one or two.
```

(MARTORANA - ZAJAC)

1      Q.      Do you recall when the first time was
2  that you met with Mr. Hamilton at Post?
3      A.      No, I don't.
4      Q.      Do you recall any conversations that you
5  had with him when you met with him?
6      A.      I recall conversations about stripping
7  the bottom, yeah, because we had talked about him
8  sending us down some stripper, some solution to take
9  the bottom paint off.
10      Q.      And did he send that to you?
11      A.      Yes, he did.
12      Q.      What was the reason that he provided the
13  stripper?
14      A.      He had said he had a solution that would
15  take the bottom paint off pretty readily.
16      Q.      Did you use it?
17      A.      We tried.
18      Q.      Did it work?
19      A.      No, it didn't.
20      Q.      What was the problem with it?
21      A.      I don't know.  I don't think it works.
22  We initially tried it with a pressure washer and it
23  didn't work, and then I think Todd suggested that we
24  had to use a hot water pressure washer or something
25  that generated heat so we rented a machine that

(MARTORANA - ZAJAC)

```
1    coat on a boat?
2         A.    Yes.
3         Q.    What is it?
4         A.    Different manufacturers different gel
5    coats, it will vary, but around 20 mils is an average.
6         Q.    And do you know how thick the gel coat
7    on Mr. Hamilton's boat was?
8         A.    No, I don't.
9         Q.    What type of gel coat were you using for
10   the repairs of Mr. Hamilton's boat?
11        A.    We were using -- I believe we used
12   Interplastic's on his house sides.  Everything above
13   the rub rail and on the hull side, I believe we used
14   953.
15        Q.    What would be the reason that you used
16   the 953 on the hull side?
17        A.    Because it blended very well.
18        Q.    Because it was already 953 --
19        A.    Yes.
20        Q.    -- on the boat?
21        A.    Uh-huh.
22        Q.    Could you apply the Interplastic's gel
23   coat over the 953 gel coat?
24        A.    Yes.
25        Q.    So there was some areas that didn't have
```

(MARTORANA - ZAJAC)

1  you needed the space in the production facility?

2      A.    No.   They're not related.   The

3  production facility is inside.   The water has three

4  slips out there or four slips out there.

5      Q.    Did Post deliver a brand new 53-foot

6  boat in July of 2005?

7      A.    I don't know.

8      Q.    Do you know what the total number of

9  hours expended on the repair of Mr. Hamilton's boat

10  was?

11      A.    Yeah.   I believe you asked me that

12  before.   It was somewhere around 2,200 hours.   I don't

13  know the exact number.

14      Q.    And do you know the total cost of the

15  repairs?

16      A.    Personally, no.

17      Q.    Was there some period of time that Post

18  was used -- continuing to use 953 gel coat to repair

19  the boats manufactured with 953 gel coat?

20      A.    Yes, there was.

21      Q.    When was that?

22      A.    Exact time frame, I don't know.   2003

23  possibly.   2002, 2003.

24      Q.    And there was both 953 gel coat and

25  Interplastic's gel coat used in the repairs of Mr.

(MARTORANA - ZAJAC)

1          Q.     Is CCP's 953 gel coat defective?

2          A.     I don't know that.  I'm not a chemist.

3    I believe -- I suspect something's wrong.

4          Q.     And, generally, has it been boats kept

5    in cold climates that have had this cracking problem?

6          A.     Yes.

7          Q.     Has it happened to any boat that's not

8    kept in a cold climate yet?

9          A.     I think there's one boat that I know of

10   that, and I haven't seen it so I can't attest to if

11   it's a normal gel coat crack, you know, because gel

12   coat does crack after a certain amount of time, you

13   know, it raises and all, or it's the type of cracking

14   we've seen on some of the boats we've repaired.

15         Q.     And is it fair to say that the cracking

16   on Mr. Hamilton's boat is the typical kind of major

17   cracking you've seen on boats with 953 gel coat kept

18   in colder climates?

19         A.     In some areas it was, yes.

20         Q.     Which areas?

21         A.     The areas that we repaired.

22                MR. ZAJAC:  If we could take a short

23   break, I'm probably done.

24                MR. WEISZ:  Whatever you want.

25                MR. ZAJAC:  I don't have too much

(MARTORANA · ZAJAC)

1        C E R T I F I C A T I O N

2            I, BETTY ANN WASILEWSKI, a Certified

3    Shorthand Reporter of the State of New Jersey, do

4    hereby certify that prior to the commencement of the

5    examination, JOSEPH MARTORANA was duly sworn by me to

6    testify to the truth, the whole truth and nothing but

7    the truth.

8            I DO FURTHER CERTIFY that the foregoing is a

9    true and accurate transcript of the testimony as taken

10   stenographically by and before me at the time, place

11   and on the date hereinbefore set forth.

12           I DO FURTHER CERTIFY that I am neither a

13   relative nor employee nor attorney nor counsel of any

14   of the parties to this action, and that I am neither a

15   relative nor employee of such attorney or counsel, and

16   that I am not financially interested in this action.

17

18   BETTY ANN WASILEWSKI
     Certified Shorthand Reporter
19   License No. XI01032
     Certificate of Merit
20   Registered Professional Reporter
     My Commission expires 12/18/08

21

22

23   DATED:   April 29, 2007.

24

25   THIS TRANSCRIPT FORMAT COMPLIES WITH NJ ADC 13:43-5.9.

# EXHIBIT

# F

ORIGINAL

```
 1                 UNITED STATES DISTRICT COURT
 2                 DISTRICT OF MASSACHUSETTS
 3                 BOSTON DIVISION
 4                 C.A. NO. 05-11682 MLW
 5
 6  L & T YACHT SALES, INC.,                    :
 7                         Plaintiff,           :
 8                 -vs-                          :
 9  POST MARINE CO., INC.,                       :
10                         Defendant.            :
11  - - - - - - - - - - - - - - - - - - - - - - -
12
13
14             DEPOSITION OF:  CORTEZ MARKS
15             WEDNESDAY, APRIL 11, 2007
16
17
18
19
20         Atlantic City Court Reporting, LLC.
21     Certified Shorthand Reporters & Videographers
22            1125 Atlantic Avenue - Suite 416
23            Atlantic City, New Jersey  08401
24                  (609) 345-8448
25               www.accourtreporting.com
```

2

1              Deposition of CORTEZ MARKS, taken in the

2    above-entitled matter before Betty Ann Wasilewski, a

3    Certified Shorthand Reporter, License No. XI01032,

4    Registered Professional Reporter, Certificate of Merit

5    Holder and Notary Public of the State of New Jersey,

6    taken at the offices of ATLANTIC CITY COURT REPORTING,

7    LLC., 1125 Atlantic Avenue, Suite 416, Atlantic City,

8    New Jersey  08401, on Wednesday, April 11, 2007,

9    commencing at 3:20 p.m.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1   A P P E A R A N C E S:

 2

 3              CARMICHAEL & ZAJAC, P.C.

 4              BY:   JOHN E. ZAJAC, ESQ.

 5              170 High Street

 6              Taunton, Massachusetts   02780

 7              (508) 821-2552

 8              For the Plaintiff.

 9

10              SEGREDO & WEISZ

11              BY:   MICHEL O. WEISZ, ESQ.

12              9350 South Dixie Highway

13              Suite 1500

14              Miami, Florida   33156

15              (305) 670-3820

16              For the Defendant.

17

18   ALSO PRESENT:

19              Todd Hamilton

20

21

22

23

24

25
```

(MARKS - ZAJAC)

```
 1              C O R T E Z    M A R K S,
 2    having been first duly sworn, testified as follows:
 3                        EXAMINATION
 4    BY MR. ZAJAC:
 5          Q.    Good afternoon, Mr. Marks.
 6          A.    Good afternoon.
 7          Q.    How are you?
 8          A.    Very well.  Thank you.
 9          Q.    My name is John Zajac, and I represent
10    L & T Yacht Sales, Incorporated in a lawsuit in the
11    Federal District Court in Massachusetts against Post
12    Marine Company.
13                We're here today to take your
14    deposition.  Have you ever given a deposition before?
15          A.    Yes.
16          Q.    Once or more than once?
17          A.    Once.
18          Q.    I'm going to assume that you probably
19    know the ground rules, but I'll restate them briefly
20    for you.  I'm going to ask you questions and you're
21    going to answer them.  Someone is going to record
22    your -- my questions and your testimony, and to
23    prepare an accurate record of that, it's important
24    that you answer questions verbally, not by nodding
25    your head, not by saying uh-huh or uh-uh, because that
```

(MARKS · ZAJAC)

1   sides of the boat?

2       A.    Yes.  As I remember, there might have

3   been either three or four cracks on the port side, and

4   maybe a couple small ones on the starboard side.

5       Q.    And were those repaired?

6       A.    Yes.

7       Q.    What was the process of repairs that

8   were done to Mr. Hamilton's boat?

9       A.    Well, that was ground out.  The cracks

10  were ground out and filled with a filler, and then it

11  was sanded and sprayed and sanded out.

12      Q.    Do you recall which gel coat Post used

13  to repair Mr. Hamilton's boat, the 953 or

14  Interplastic's or both?

15      A.    I can't remember which one they used at

16  this time.

17      Q.    Was there a period of time that Post was

18  using the 953 because the color blended well over --

19      A.    Yes.

20      Q.    -- 953?

21      A.    Yes.

22      Q.    And does Interplastic's blend less well

23  from a coloring standpoint?

24      A.    Well, the two -- the two may not look

25  exactly the same if you patch with it.  You'd have a

(MARKS - ZAJAC)

```
 1   and he wasn't pleased.
 2          Q.    Did he have any specific complaints that
 3   you recall?
 4          A.    I can't remember.
 5          Q.    Do you remember anything that you said
 6   to him?
 7          A.    I can't remember.
 8          Q.    Besides using Interplastic's gel coat
 9   instead of 953 gel coat, has anything changed in the
10   way that Post has been fixing cracked gel coat since
11   the problem arose?
12          A.    We tried to sand the gel coat off more
13   aggressively than we did in the past.
14          Q.    What do you mean by that?
15          A.    Well, if there's an area where there's
16   cracks, we try to sand it down as close to the
17   laminate as we can.
18          Q.    And how does that differ from the way
19   you had previously been repairing it?
20          A.    Well, previously, we tried to repair the
21   cracks, and refinish it after we repaired the cracks.
22          Q.    Which way was Mr. Hamilton's boat
23   repaired, if you recall?
24          A.    We filled the cracks and sprayed over
25   the cracks.
```

(MARKS - ZAJAC)

```
1        Q.      So it wasn't the aggressive sanding
2   that's now being done?
3        A.      No, no.
4        Q.      Because of the repairs that Post has had
5   to do, has it been required to purchase any equipment
6   to do those repairs?
7        A.      No, other than just the regular tools
8   like sanders, or grinders, or whatever it may be.
9        Q.      Can gel coat be applied over gel coat?
10       A.      Yes.
11       Q.      Is there any danger in applying new gel
12  coat over potentially defective 953 gel coat?
13       A.      That, I don't know.
14       Q.      With regard to the hull of Mr.
15  Hamilton's boat, was the hull stripped?
16       A.      No.
17       Q.      Was any of the gel coat stripped from
18  the hull?
19       A.      No.
20       Q.      Was the bottom of the boat stripped?
21       A.      No.
22       Q.      Was any gel coat removed from the bottom
23  of the boat?
24       A.      No.
25       Q.      Was the stern stripped?
```

(MARKS - ZAJAC)

| | | |
|---|---|---|
| 1 | A. | I can't remember whether it was or not. |
| 2 | Q. | Was the cockpit area stripped? |
| 3 | A. | I believe the cockpit may have been |
| 4 | stripped. | |
| 5 | Q. | Was the freezer area stripped? |
| 6 | A. | I'm not sure.  I don't remember. |
| 7 | Q. | Was the back bulkhead stripped? |
| 8 | A. | I don't remember that. |
| 9 | Q. | Was the front deck stripped? |
| 10 | A. | Front deck was. |
| 11 | Q. | Was the front of the salon stripped? |
| 12 | A. | The front of the salon?  What is the |
| 13 | front of the salon? | |
| 14 | Q. | Where the seat is in the front of the |
| 15 | boat. | |
| 16 | A. | The windshield was stripped.  The front |
| 17 | seat, I recall that wasn't stripped at the time. | |
| 18 | Q. | Was the bridge stripped? |
| 19 | A. | I -- I'm not sure.  I don't think so. |
| 20 | Q. | How about the bridge floor? |
| 21 | A. | The bridge floor, yes. |
| 22 | Q. | And the dashboard? |
| 23 | A. | That wasn't stripped. |
| 24 | Q. | And the hardtop? |
| 25 | A. | I don't think that was stripped either. |

# EXHIBIT

# G

Vol. 1 - 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 05-11682MLW

L & T YACHT SALES, INC.,
                    Plaintiff,

vs.

POST MARINE CO., INC.,
                    Defendant.

DEPOSITION OF TODD J. HAMILTON, taken

pursuant to Notice under the applicable

provisions of the Federal Rules of Civil

Procedure on behalf of the Defendant, before

Simonne J. Elwood, R.P.R. and a Notary Public

in and for the Commonwealth of Massachusetts,

at the office of Bartlett Hackett Feinberg

P.C., 155 Federal Street, 9th Floor, Boston,

Massachusetts, commencing on Tuesday, April 17,

2007 at 9:57 a.m.

NEAL A. SALLOWAY - COURT REPORTERS
FIVE CARDIGAN ROAD
WEST PEABODY, MA 01960
781-581-3993 - 978-535-0313 - FAX 978-536-3142

Vol. 1 - 2

APPEARANCES:

JOHN E. ZAJAC, ESQ.
CARMICHAEL & ZAJAC, P.C.
170 HIGH STREET
TAUNTON, MA   02780
    REPRESENTS THE PLAINTIFF

MICHEL OCIACOVSKI WEISZ, ESQ.
SEGREDO & WEISZ
9350 SOUTH DIXIE HIGHWAY - SUITE 1500
MIAMI, FL 33156
    REPRESENTS THE DEFENDANT

Vol. 1 - 5

T. HAMILTON

1                      S T I P U L A T I O N S

2              It is hereby stipulated and agreed by

3     and between counsel for the respective

4     parties that all objections, except as to

5     form, are reserved until the time of trial,

6     including motions to strike.

7              It is further stipulated and agreed

8     that the reading and signing of the

9     deposition are not waived and to be read and

10    signed under the pains and penalties of

11    perjury.

12            It is further stipulated and agreed

13    that the filing and sealing of the deposition

14    are waived.

15

16                  TODD J. HAMILTON

17           A witness called on behalf of the

18    Defendant, having been satisfactorily

19    identified by the production of his

20    Massachusetts driver's license 022609789 and

21    duly sworn, under oath, by the Court Reporter

22    and Notary Public, was examined and testified

23    as follows:

```
1            DIRECT EXAMINATION
2    Q    (By Mr. Weisz)  Good morning, Mr. Hamilton.
3         I'm going to assume that your lawyer has told
4         you what to expect at the deposition, so I
5         won't go through the ground rules; but if I
6         ask you something that you don't understand,
7         please let me know.
8    A    Okay.
9    Q    If you need a break, please let me know, and
10        we'll try to make this as, I guess, the least
11        uncomfortable as possible.
12             I'm going to show you -- Well, before
13        we do that, let me ask you, please, to state
14        your full name.
15   A    Todd J. Hamilton.
16   Q    And, Mr. Hamilton, what's your relationship
17        to L & T Yacht Sales, Inc.?
18   A    President.
19   Q    How long have you been the President?
20   A    Since it was formed, I guess.
21   Q    Okay.  Do you know when it was formed?
22   A    Not off the top of my head, I don't.
23   Q    Do you have an estimate?
```

| 1  | A | Sometime in '03.  I don't know the exact |
| 2  |   | month or date. |
| 3  | Q | Okay.  What was the purpose of forming L & T |
| 4  |   | Yacht Sales? |
| 5  | A | Just I was advised by attorneys and an |
| 6  |   | accountant. |
| 7  | Q | Was there a business purpose? |
| 8  | A | No, just that's what they told me to do, so I |
| 9  |   | listened to them. |
| 10 | Q | What is the business of L & T Yacht Sales? |
| 11 | A | Just L & T Yacht Sales. |
| 12 | Q | What does the company do? |
| 13 | A | Bought a boat, and it's holding a boat. |
| 14 | Q | Is that the only asset? |
| 15 | A | Yes. |
| 16 | Q | Does L & T Yacht Sales file tax returns? |
| 17 | A | Yeah. |
| 18 | Q | Does it have any income? |
| 19 | A | I'd have to ask the accountant that one.  I |
| 20 |   | don't even know.  I don't handle any of the |
| 21 |   | tax stuff to be honest with you; I don't; the |
| 22 |   | accountant does. |
| 23 | Q | Do you know who signs the tax return? |

```
 1    Q    Okay.  And then you took the boat away?
 2    A    Yeah.  They put it in the water then, and
 3         then I left.
 4    Q    So does that lead you to conclude that the
 5         complaint was filed before you took the boat
 6         out of Post?
 7    A    I'd be lying.  I don't know the answer
 8         whether it was or wasn't.  I don't know.
 9    Q    Okay.  All right.  When you took the boat
10         from Post, were there any areas of gel coat
11         cracking that had not been fixed?
12    A    Yes.
13    Q    Which ones?
14    A    The back deck, the stern, the port side, the
15         bottom, the hard top, the freezer, the sink
16         area in the back, the step area in the back,
17         the gunnels in the back, the dashboard and
18         the compass area and the bridge floor and the
19         opposite side of the port which I'm drawing a
20         blank for some reason, that side of the hull.
21    Q    Okay.  The back deck, is that on the top
22         sides or on the hull?
23    A    It's when you walk in the boat, you step
```

| 1 | A | They wouldn't communicate with me when I |
| 2 | | tried before I took the boat to get an answer |
| 3 | | how we're going to fix the rest of it. |
| 4 | Q | Did they ever tell you that they would not |
| 5 | | fix the items that you claimed were |
| 6 | | outstanding? |
| 7 | A | Yes, they did. |
| 8 | Q | Who told you that? |
| 9 | A | Joe Martorana. |
| 10 | Q | When did he tell you that? |
| 11 | A | That was the week prior -- Let me think now. |
| 12 | | That would be the week that I gave him the |
| 13 | | letter of July 13th. |
| 14 | Q | So he told you that before you gave him the |
| 15 | | letter? |
| 16 | A | Yes. |
| 17 | Q | What did he say? |
| 18 | A | That they would not be stripping the bottom; |
| 19 | | they would not be stripping the hull; they |
| 20 | | wouldn't be doing this; they wouldn't be |
| 21 | | doing that. |
| 22 | Q | So they wouldn't fix the boat the way you |
| 23 | | wanted it, is that right? |

| 1  | A | No, not the way I wanted, the way they said |
|----|---|---------------------------------------------|
| 2  |   | they were going to.                         |
| 3  | Q | How did they say they were going to fix it? |
| 4  | A | They said they were going to strip the hull |
| 5  |   | and the cracked areas.                      |
| 6  | Q | Okay.  Were they going to strip the entire  |
| 7  |   | hull or the areas where there were cracks?  |
| 8  | A | They said they were going to strip the hull, |
| 9  |   | deck, sides, the bottom.                    |
| 10 | Q | Was there ever anything in writing that     |
| 11 |   | indicated what Post was going to do?        |
| 12 | A | Yes.                                        |
| 13 | Q | Okay.  What was there in writing?           |
| 14 | A | A letter from Joe Martorana to me.          |
| 15 | Q | Anything else?                              |
| 16 | A | About the work they were going to do?       |
| 17 | Q | Yes.                                        |
| 18 | A | No, not about -- The only thing in writing  |
| 19 |   | from them about work was the one letter, I  |
| 20 |   | believe, except for the letter from you, of |
| 21 |   | course.                                     |
| 22 | Q | Okay.  Do you think the letter from me      |
| 23 |   | counts?                                     |

Vol. 1 - 32

T. HAMILTON

```
 1                    (Whereupon the Stenographer marked as
 2            Exhibit No. 5 - Fax - To Mr. Hamilton from
 3            Joseph Martorana.)
 4       Q    Do you recognize that letter?  (Indicating)
 5       A    Yes, I do.
 6       Q    Do you know when that letter was sent?
 7       A    I do.  I don't have it in front of me because
 8            it's on the top.
 9       Q    Okay.
10       A    But it's not -- You can't see it here, but
11            the original you can see the date and time it
12            was faxed.  I believe it was in either
13            September or October of 2004.
14       Q    Do you know whether that letter was sent
15            before you brought the boat to Post for
16            repairs?
17       A    Yes, it was.
18       Q    Okay.  And when did you bring the boat to
19            Post for repairs?
20       A    I believe it was the end of October or
21            November 1st, somewhere in there.
22       Q    Did you ever pay Post anything to repair the
23            boat?
```

Vol. 1 - 33

T. HAMILTON

```
1    A    Nope.

2    Q    Do you know what the value of the work was

3         that Post performed on the boat?

4    A    The value that Post did?

5    Q    Yes.

6    A    Zero.

7    Q    Okay.  And why do you say that?

8    A    Because they sprayed gel coat over gel coat

9         that's recracking so now it's double the work

10        to take it off.

11   Q    How do you know that's what they did?

12   A    When you're sanding it off, you could see

13        three layers; it was so thick.

14   Q    And --

15   A    Three different colors.

16   Q    Okay.  Is this something that you have

17        observed yourself?

18   A    Yes.

19   Q    And how do you know it's three layers of gel

20        coat?

21   A    Three different colors.

22   Q    What does that mean; why does that mean three

23        different --
```

Vol. 1 - 39

T. HAMILTON

| | | |
|---|---|---|
| 1 | A | They told me that in March. |
| 2 | Q | Okay. And how did they tell you that, over |
| 3 | | the phone or in person? |
| 4 | A | Over the phone. I kept calling for a |
| 5 | | progress report through the winter. |
| 6 | Q | It would always be Joe or Ken is the only two |
| 7 | | people I'd speak to. |
| 8 | A | All right. |
| 9 | Q | Let's just see what you say here. |
| 10 | A | Okay. |
| 11 | Q | "As a follow up to our conversation on June |
| 12 | | 14, 2005 at Post Marine in New Jersey, --." |
| 13 | | So that was an in-person conversation? |
| 14 | A | Yes, it was. |
| 15 | Q | Okay. And you were at the boat? |
| 16 | A | I went and reviewed the boat. I remember |
| 17 | | when they had the boat. It was outside. |
| 18 | | They had one side covered. They were doing |
| 19 | | something on the back. |
| 20 | Q | Okay. "-- and our subsequent phone |
| 21 | | conversation on June 15, 2005, the following |
| 22 | | are the items we have agreed that I need you |
| 23 | | to repair prior to me picking up the boat |

Vol. 1 - 45

T. HAMILTON

```
 1    A    Correct.

 2    Q    Okay.  And 14 is blank.

 3    A    Yes.

 4    Q    Okay.  And that was your entire list of items

 5         that needed to be done before the boat was

 6         picked up, is that correct?

 7    A    For what I could see.  The boat was half

 8         covered when I got there.

 9    Q    Okay.  Did you ask them to remove the cover?

10    A    They couldn't.  They had guys sanding.  They

11         had the thing all mast off.  So I kept poking

12         my head where I could put it.

13    Q    Okay.  Did you go back and look at the boat

14         again when they took it off?

15    A    When I came back in July, yes.  When it was

16         uncovered when I got there and it was a

17         cloudy day, yes, I did.

18    Q    Okay.

19    A    You can't look at the boat in direct sunlight

20         because it's too blinding.

21    Q    Okay.  So you can see the cracks better on a

22         cloudy day?

23    A    Oh, absolutely.
```

```
1              on a boat that he cannot use.  What do you
2              mean you cannot use?
3      A       Well, for nine months, I couldn't use it
4              because Post had it, and then it came back
5              here and sat for another ten months being
6              stripped and worked on.  That's two years.
7      Q       Why was it taking ten months to strip and
8              work on it after you took it from Post?
9      A       Because they sprayed right over the old gel
10             coat, so I had to redo their work; twice the
11             work.
12     Q       Is the boat completely fixed now?
13     A       Nope.
14     Q       What still needs to be done?
15     A       The sides of the hull, the front deck, the
16             bridge, the hard top, the front of the
17             windshield and where it says, "Post," it all
18             has to be stripped.  It's all cracking.
19             Everything they've touched and sprayed is
20             cracked.
21     Q       Why hasn't that been fixed yet?
22     A       Because it took us six and-a-half months to
23             strip that one section correctly and do it
```

Vol. 1 - 70

T. HAMILTON

# C E R T I F I C A T E

I, Simonne J. Elwood, R.P.R. and a
Notary Public within and for the Commonwealth of
Massachusetts, duly commissioned, qualified and
authorized to administer oaths and to take and
certify depositions, do hereby certify that
heretofore, to wit, on the 17th day of April
2007, personally appeared before me Todd J.
Hamilton, at the office of Bartlett Hackett
Feinberg P.C., 155 Federal Street, 9th Floor,
Boston, Massachusetts, in the aforecaptioned
cause pending in the United States District Court
for the District of Massachusetts; that the
witness was by me duly sworn to testify to the
truth, the whole truth and nothing but the truth;
that thereupon and while said witness was under
oath, the within deposition was taken down by me
in shorthand at the time and place herein named
and was thereafter reduced to computer
transcription under my supervision. I further
certify that I am not interested in the event of
the action.

IN WITNESS WHEREOF, I have hereunto

subscribed my hand and affixed my seal of office

this _____30th____ day of _April_____ , 2007.

_____
Simonne J. Elwood
REGISTERED PROFESSIONAL REPORTER

My Commission Expires:   February 14, 2008

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BOSTON DIVISION
DOCKET NO.  05-11682

| | |
|---|---|
| L & T YACHT SALES, INC. ) | |
| PLAINTIFF, ) | |
| ) | |
| VS. ) | Document Electronically Filed |
| ) | |
| POST MARINE, INC. ) | |
| DEFENDANT ) | **CERTIFICATION OF JOHN E. ZAJAC** |

I, John E. Zajac, of full age, hereby certify:

I am an attorney-at-law of the State of Massachusetts with the law firm of Carmichael, Zajac & Fleury, P.C. attorney for the Plaintiff, L & T Yacht Sales, Inc. I am fully familiar with the matters set forth herein. I make this Certification in support of PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANT'S STATEMENT OF MATERIAL FACTS, which is being filed contemporaneously herewith.

Respectfully submitted,
The Plaintiff,
By its Attorneys,

*/s/ John E. Zajac*

John E. Zajac, Esquire BBO # 560195
CARMICHAEL, ZAJAC & FLEURY, P.C.
170 High Street
Taunton, MA 02780
(508) 821-2552

**CERTIFICATE OF SERVICE**

I, John E. Zajac, Esquire this 13th day of July, 2007 have given notice of the within, Plaintiff's Response Memorandum in Opposition to Defendant's Motion for Summary Judgment by e-mail service, via the Court's CM/ECF system which sent notification of such filing to Howard M. Brown, Esquire, Bartlett Hackett Feinberg P.C., 155 Federal Street, 9th floor, Boston, MA 02110 and by regular mail, postage pre-paid to Michel O. Weisz, Esquire at 9350 S. Dixie Highway, Miami, FL 33156.

*/s/ John E. Zajac*

John E. Zajac, Esquire

1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BOSTON DIVISION
DOCKET NO. 05-11682

L & T YACHT SALES, INC.                    )
                    PLAINTIFF,              )
                                           )
VS.                                        )          Document Electronically Filed
                                           )
POST MARINE, INC.                          )
                    DEFENDANT              )     **CERTIFICATION OF JOHN E. ZAJAC**

I, John E. Zajac, of full age, hereby certify:

I am an attorney-at-law of the State of Massachusetts with the law firm of Carmichael, Zajac & Fleury, P.C., attorney for the Plaintiff, L & T Yacht Sales, Inc. I am fully familiar with the matters set forth herein. I make this Certification in support of PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANT'S STATEMENT OF MATERIAL FACTS, which is being filed contemporaneously herewith.

1. Attached hereto as Exhibit A is a true and accurate copy of Post Marine Co., Inc.'s Answers to Interrogatories 20-22, filed as an exhibit and obtained as a public record from the New Jersey District Court PACER website in Civil Action No. 05-538.

2. Attached hereto as Exhibit B is a true and accurate copy of Post Marine Co., Inc.'s Amended Complaint filed and obtained as a public record from the New Jersey District Court PACER website in Civil Action No. 05-538.

3. Attached hereto as Exhibit C is a true and accurate copy of excerpts from the deposition transcript of Kenneth Jensen of Post Marine Co., Inc.

4. Attached hereto as Exhibit D is a true and accurate copy of an affidavit signed by Todd Hamilton of L & T Yacht Sales, Inc., the original of which is at my office.

5. Attached hereto as Exhibit E is a true and accurate copy of excerpts from the deposition transcript of Joe Martorana of Post Marine Co., Inc.

6. Attached hereto as Exhibit F is a true and accurate copy of excerpts from the deposition transcript of Cortez Marks of Post Marine Co., Inc.

7. Attached hereto as Exhibit G is a true and accurate copy of excerpts from the deposition transcript of Todd Hamilton, President of L & T Yacht Sales, Inc.

1

Respectfully submitted,
The Plaintiff,
By its Attorneys,

_/s/ John E. Zajac_

John E. Zajac, Esquire BBO # 560195
CARMICHAEL, ZAJAC & FLEURY, P.C.
170 High Street
Taunton, MA 02780
(508) 821-2552

Dated this 13th day of July, 2007.