UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. No. 05-11682MLW

| | |
|---|---|
| L & T YACHT SALES, INC. | ) |
| | ) |
|     Plaintiff, | ) |
| VS. | ) |
| | ) |
| | ) |
| POST MARINE CO., INC., | ) |
| | ) |
|     Defendant | ) |

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO L&T'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant Post Marine Co., Inc. ("Post") requests that this Court grant its motion for summary judgment and deny Plaintiff L&T Yacht Sales, Inc.'s ("L&T") motion for partial summary judgment and as grounds in support states:

### I.  STATEMENT OF THE CASE

As set forth more fully in Post's motion for summary judgment and supporting papers, Post is a New Jersey recreational boat manufacturer, which sells its product to boat dealers who then resell the boats to consumers. Boats sold by Post are covered by a written limited warranty. This warranty excludes any defects concerning gel coat, is limited in time to one year, and is not transferrable to subsequent purchasers.

L&T Yacht Sales, Inc. ("L&T") is a Rhode Island corporate entity that privately purchased the Post boat (the "Relentless") as a used boat from an unrelated private third party.

Despite the fact that the boat was out of warranty at the time the defects arose, and the fact that the defects are not covered by the warranty, Post agreed as a gratuitous accommodation

to make very specific repairs to the gel coat on the boat. The full terms of the specific repairs Post agreed to make were set forth unambiguously in two letters dated August 25, 2004 and September 2, 2004 sent by Post to Plaintiff and its attorney. L&T admits receipt of these letters.

L&T's Complaint asserts five causes of action: breach of contract; fraudulent misrepresentation; negligent misrepresentation; breach of implied warranty of merchantability; and negligence arising out of the alleged failure of the boat's "gel coat."[1] Post answered the complaint and asserted ten affirmative defenses.

On or about June 1, 2007 Post filed its motion for summary judgment concurrently with a Motion to Exclude Testimony, Documents, Expert Witnesses and Undisclosed Witnesses. L&T's motion for partial summary judgment was filed June 8, 2007.

L&T seeks partial summary judgment only as to liability with respect to Count I (Breach of Contract), Count II, (Negligent Misrepresentation), and Count V (Negligence). L&T alleges that Post repaired only the affected areas of the boat (as opposed to replacing the boat's entire gel coat) with the same defective gel coat (series 953 gel coat manufactured by Cook Composites and Polymers) and that the repairs took more than four months.

## II.    STANDARD ON A MOTION FOR SUMMARY JUDGMENT

It is axiomatic that on a motion for summary judgment the court is required to view "the evidence in a light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Cochran v. Quest Software, Inc.*, 328 F.3d 1, 6 (1st Cir. 2003).

---

[1] Gel coat is a cosmetic protective gloss covering a boat's hull. Gel coat is not manufactured by Post.

### III. ARGUMENT

As a gratuitous accommodation to L&T, Post agreed to make certain repairs to the gel coat on the boat. This agreement, including the terms and conditions upon which the repairs would be made, was set forth in two letters dated August 25, 2004 and September 2, 2004. These are the only letters memorializing the parties' agreement. *See*, Deposition of Todd Hamilton, p. 27, ln. 10-21 attached as Exhibit I to Post's Statement of Material Facts. L&T did not object to or dispute the terms of the letters.

The letters make clear that the Post was only undertaking to repair gel coat in the boat's "affected areas."

During the repair process, L&T's corporate representative and its sole officer and director, Todd Hamilton, made a number of visits to Post's factory to inspect the repair process. He voiced no objections to the repair process. On June 15, 2005, toward the end of the repair process, he sent Post a written checklist of what remained to be done. What L&T now alleges as a breach of contract, i.e. repairing affected areas rather than replacing the boat's entire gel coat, was never mentioned in this checklist.

On July 15, 2005, after Post had performed over 2,200 hours of repair work, Mr. Hamilton, claiming the scope of work was not what he wanted, ordered Post to stop work on the boat. He then removed the boat from Post's facility.

### A. *L&T is not entitled to summary judgment in its favor on Count I - Breach of Contract*

Count I of the Complaint is for breach of contract. The complaint alleges that "Post breached its contract with L&T by failing to repair the boat as promised and in a good and

workmanlike and timely matter." *See*, Complaint, ¶ 29, attached as Exhibit A to Post's Statement of Material Facts.

L&T's claim assumes that a contract existed between the parties, which Post disputes. In its memorandum, L&T acknowledges that in order to prevail on a claim for breach of contract, the plaintiff must prove that a contract existed. *See*, Plaintiff's memorandum, p. 2. "Under Massachusetts law, a valid contract requires offer, acceptance, and consideration." *Campbell v. General Dynamics Government Systems, Corp.*, 321 F. Supp.2d 142, 148, fn. 3 (D. Mass. 2004). Here, no contract exists because there was never any consideration to bind the agreement.[2]

First, Mr. Hamilton, L&T's designated corporate representative testified that no consideration was paid:

> Q. Did you ever pay Post anything to repair the boat?
>
> A. Nope.

*See*, Deposition of L&T, p. 32, ln. 22-23, p. 33, ln. 1, attached as Exhibit C to Post's Statement of Material Facts.

Further, the August 25, 2004 letter specifically states that the repairs will be made as a <u>gratuitous accommodation</u>. *See*, August 25, 2004 letter of correspondence.

Lastly, in Post's request for production, it requested that L&T produce: "Any and all documentation reflecting any consideration or anything of value paid by Plaintiff to Defendant at any time in exchange for Defendant's promise to undertake repairs to Plaintiff's yacht." L&T responded to this request by stating "None."

---

[2] As additional defenses Post also asserts there was no agreement ast an essential contract term- the scope of repair- and further, that it performed the repairs as promised.

Despite the undisputed evidence, including L&T's corporate representative's deposition testimony, that there was no consideration to bind the agreement, Plaintiff now claims: "Prior to Post's August and September 2004 written and verbal representations to repair L&T's boat, Plaintiff had been seriously considering filing a civil action against Post and had directly expressed to the Defendant its intent to do so." See Plaintiff's memorandum of law, p. 3. L&T asserts that this forbearance from filing suit is sufficient substitute consideration to bind the agreement, although Plaintiff does not support this proposition with case law or other authority. See, Plaintiff's memorandum of law, p. 2.

The problem with this argument is evidentiary in nature. The record is devoid of any evidence of any threatened lawsuit. Although Plaintiff cites to page 81, lines 5-8 of the Deposition of Todd Hamilton, to show the existence of such evidence, Todd Hamilton's deposition is only 72 pages, including the accompanying errata sheets.[3] Moreover, there is absolutely no mention anywhere in Todd Hamilton's deposition about a communicated intent to file suit against Post. Thus, this "communicated intent to sue Post" is an assertion clearly unsupported by the record.[4]

---

[3] In Plaintiff's statement of undisputed facts it specifically cites to this line and page. Plaintiff also attaches various pages of Mr. Hamilton's deposition transcript. A careful reading of those pages indicates there is absolutely no testimony of Mr. Hamilton threatening to file suit.

[4] There is a citation, not mentioned by Plaintiff, on page 81, ln. 5-8 to the deposition of Ken Jensen where Mr. Jensen states that Mr. Hamilton threatened to sue Post. However, there is no evidence that Post agreed to perform the repair because of this threat. *See, McNulty v. Great American Ins. Co.*, 727 F.Supp. 45, 47, 48 (D. Mass.1989). In fact, Post stated explicitly in its letter of August 2004 that the repairs were done as a gratuitous accommodation. Thus there is no evidence that Post agreed to perform any repairs "in consideration" of L & T's forbearance from filing a lawsuit. In fact, the letter does not even mention that the repairs are for compromise or settlement.

Plaintiff also asserts that substitute consideration existed in that "Post benefitted by the opportunity to repair provided by L & T, in that Post had a major public relations problem relative to the series 953 gel coat." Plaintiff's memo, p. 3. Again, Plaintiff makes no citation to the record to support the alleged "major public relations problem" of Post. Nor has Plaintiff disclosed any witnesses, expert or otherwise, who would testify in support of that proposition.[5]

Accordingly, Post has failed to prove consideration to bind the agreement- which of course is its burden to do in order to prevail on a motion for summary judgment. *See generally, McConnell v. Texaco, Inc.,* 727 F.Supp. 751, 755 (D.Mass. 1990).

Given L&T's lack of evidence of consideration to bind the agreement (despite its burden to produce such evidence in support of its motion for partial summary judgment and its obligation to produce evidence of consideration pursuant to a request for production) and in light of the fact that L&T's corporate representative testified that no consideration was paid to repair the boat, and the fact that the August 25, 2004 letter specifically states that the repairs would be made gratuitously, this Court should find that no contract exists as a matter of law and enter summary judgment in Post's favor.

**1.** *Post never agreed to replace the gel coat on the entire boat*

Assuming *arguendo*, that a contract existed, Post still did not breach the contract. L&T alleges that Post breached the agreement by repairing only the affected areas, rather than replacing the boat's entire gel coat. Under Massachusetts law, the interpretation of a contractual provision is an issue of law to be decided by the court, *see, Coll v. PB Diagnostic Systems*, 50 F.3d 1115, 1122 (1st Cir. 1995).

---

[5] Again, Post served a request for production requesting all evidence of any consideration for the agreement. L & T responded that it had no such documents.

Post's August 25, 2004 letter is clear and unambiguous: "Post Marine will inspect the entire vessel to determine the extent of the gel coat repairs to be performed." *See* August 24, 2005 letter, attached as Exhibit D to Post's Statement of Material Facts. In the same letter, Post agreed only that "the areas affected will be treated in the following manner." *Id.*

In the September 2, 2004 letter sent to L&T by Joseph Matorana[6], he specifically states: "To clarify the letter sent to you from Michel Weisz. In making the repairs to your your[sic] boat we will spray gelcoat in such a way as to eliminate any spotting or color variations <u>in the areas to be repaired</u>. Gelcoat will be removed from entire surfaces, examples being shelter sides, cockpit, forward deck, side decks, pulpit and hull to ensure consistency." *See* September 2, 2004 letter attached as Exhibit F to Post's Statement of Material Facts [emphasis added].[7]

The only evidence to support the claim that Post was not performing in accordance with the terms of the August 25, 2004 or September 2, 2004 letters is a single letter from L&T dated June 15, 2005. This letter was a specific and detailed punch-list of the repairs remaining to be done on the boat. *See*, June 15, 2005 letter attached as Exhibit G to Post's Statement of Material Facts. By this time the boat was nearly complete, needing only to have the bottom paint inspected. *See*, Deposition of Joseph Matorana, p.24, ln. 8-19, attached as Exhibit I to Post's Statement of Material Facts.

Not a single reference is made in the June 15, 2005 letter that would support L&T's claim that the boat's entire gel coat should have been replaced, (rather than simply having the affected

---

[6] It is the September 2, 2004 letter upon which L&T bases its claim that the gel coat to the entire boat would be replaced. *See,* complaint, ¶15, attached as Exhibit A to the Statement of Material Facts.

[7] See, supplemental affidavit of Joseph Martorana attached as Exhibit "C" to Post's response to Plaintiff's statement of undisputed facts.

areas repaired), despite the fact that L&T meticulously listed thirteen other minor areas in need of repair.[8]

When the evidence demonstrates that a contract's terms and provisions were complied with, summary judgment is appropriate. *See, Coll v. PB Diagnostic Systems*, supra, 50 F.3d at 1123, 1124. Here L&T has not demonstrated that Post breached the contract by repairing the affected areas of the gel coat rather than the replacing the boat's entire gel coat. In fact, all the evidence demonstrates that Post performed its obligations in accordance with the terms and conditions set forth in the August 25, 2004 and September 2, 2004 letters of correspondence.

### 2. *Post did not perform the repairs in an unworkmanlike manner*

Plaintiff states that the use of series 953 gel coat to repair the boat[9] was a breach of contract since its use violated the implied warranty that work would be performed in a workmanlike manner. Post is entitled to summary judgment since L&T has offered no evidence that series 953 gel coat was used to repair the boat, and/or alternatively, cannot prove that the use of series 953 gel coat was a breach of the agreement.

First, the only evidence that L&T has offered to support its position that series 953 gel coat was used to repair the boat is a single statement by Joseph Martorana. *See*, statement of material facts, ¶31. However, L&T distorts Joseph Martorana's testimony. Joseph Martorana did not testify that series 953 gel coat was used. What he did testify to was that gel coat

---

[8] As set forth more fully in Post's motion for summary judgment, the most L&T can allege is that there was a mutual mistake between the parties as to the scope of the repairs, making the agreement voidable at Post's option.

[9] There is no evidence to support this assertion. Post did not use 953 series gel coat to repair L&T's boat except in one limited area on the hull. *See*, deposition of Kenneth Jensen attached as exhibit "C" to L&T's Statement of Facts; *see also*, affidavit of Jospeh Martorana attached as Exhibit "C" to Post's response to Plaintiff's statement of undisputed facts.

manufactured by Interplastic was used to repair the boat and that series 953 gel coat (which is made by Cook Composites and Polymers, not Interplastic) <u>may have been in certain areas</u>, but that he wasn't sure.

> Q. What type of gel coat were you using for the repairs of Mr. Hamilton's boat?
>
> A. We were using – I believe we used Interplastic's on his house sides. Everything above the rub rail and on the hull side, I believe we used 953.

*See*, deposition of Joseph Martorana, p. 26, ln. 9-14 attached as exhibit "D" to L&T's Statement of Facts. This is clarified in Joseph Martorana's supplemental affidavit where he states that series 953 gel coat was only used in one very specific, very small portion of the boat. *See*, supplemental affidavit of Joseph Martorana attached as Exhibit "C" to Post's response to Plaintiff's statement of undisputed facts.

Despite Mr. Martorana's uncertainty at his deposition, L&T fails to acknowledge that at the deposition of Ken Jensen, Mr. Jensen testified in no uncertain terms that: "Mr. Hamilton's boat was not repaired with 953 gel coat." *See*, deposition of Ken Jensen, p. 40, ln. 10-11, attached as exhibit "C" to L&T's Statement of Facts.[10]

Absent proof that series 953 gel coat was actually used to repair the boat, Post is entitled to summary judgment in its favor on this ground. However, assuming *arguendo* that a contract existed and further assuming that series 953 gel coat was used, the use of series 953 gel coat <u>still</u> cannot be a breach of contract. This is because although the common law implies a covenant that a contract will be performed in a reasonably good and workmanlike manner (*see*, *Wolov v. Michaud Bus Lines, Inc.*, 21 Mass. App. Ct. 60, 63-64 (1985)), this implied warranty may be

---

[10] At most the use of series 953 gel coat would be a disputed issue of material fact.

limited or disclaimed (*see generally*, *Maddalone v. Empresas Lineas Maritimus Argentinus*, 370 Mass. 864 (1976)).

The August 25, 2004 letter had just such a disclaimer: "These repairs are made as an accommodation only and no warranty will be provided other than a 90 warranty of workmanlike performance <u>which will cover only the workmanship of the application of the gel coat. No warranty will be extended with respect to the gel coat, its characteristics, color or finish</u>." *See*, August 25, 2004 letter of correspondence [emphasis added]. As L&T's claim now appears to be that the gel coat is defective (rather than the manner in which the gel coat was applied during the repair process) there was no breach of this limited warranty.[11]

Accordingly, there is no evidence that series 953 gel coat was used to repair the boat, and even if it were, such use cannot be a breach of the agreement, since Post disclaimed all warranties concerning the gel coat's characteristics, and there is no evidence the gel coat was applied incorrectly.

### 3. *Repairing the boat in four months was not a term of the contract*

Plaintiff further states that Post breached the contract by failing "to perform the repairs in nine months, which it estimated would take only 4 months to complete." Plaintiff's memo, p. 4.

As Plaintiff correctly states, the August 25, 2004 letter specifically states the time needed for completion is an <u>estimate</u>. *See*, August 25, 2004 attached as Exhibit D to Post's Statement of Material Facts. It did not establish a date certain for the completion of the repairs. Nor was any time frame stated in the September 2, 2004 letter. *See*, September 2, 2004 letter attached as Exhibit F to Post's Statement of Material Facts.

---

[11] The claim that 953 gel coat was incorrectly used to make repairs is not pleaded in the complaint.

-10-

As Todd Hamilton admitted at deposition these two letters formed the entire basis of the parties' agreement.  *See*, Deposition of Todd Hamilton, p. 27, ln. 10-21, attached as Exhibit C to Post's Statement of Material Facts.

Accordingly, the length of time needed to complete the repairs to the boat was not an agreed-to contract term.  At best whether the length of time it took to repair the boat, despite the fact that full performance of the repairs was prevented by Mr. Hamilton when he removed the boat from the Post facility,[12] was reasonable is a disputed issue of material fact incapable of being decided on summary judgment.

Based on all of the foregoing, L&T is not entitled to summary judgment on its claim for breach of contract because it has not proved a contract existed, and assuming a contract did exist, has not proved that Post breached the contract.

### B.    *L&T is not entitled to summary judgment in its favor for negligent misrepresentation*

With regard to the negligent misrepresentation claim, Plaintiff alleges: "In agreeing to provide the repairs to L&T's boat, Post negligently represented that it was willing, ready, and able to provide the repairs in a TIMELY, complete and workmanlike manner, when it knew or should have known that it could not or would not perform as promised."  *See*, Complaint, ¶37 attached as Exhibit A to Post's Statement of Material Facts (emphasis original).

In its memorandum of law Plaintiff now asserts "Post's failure to remove the defective 953 gel coat from entire surfaces and the continued use of the series 953 gel coat, in its repairs of L& T's boat, are graphic examples of Defendant's negligent misrepresentation that it would

---

[12]  Mr. Hamilton removed the boat after the work was nearly completed.

render repairs in a proper, workmanlike and timely manner." *See*, Plaintiff's memorandum of law, p. 4.

The elements of a claim for misrepresentation are that a defendant: (1) in the course of his business, (2) supplied false information for the guidance of others (3) in their business transactions (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance upon the information, and that he (6) failed to exercise reasonable care or competence in obtaining or communicating the information. *See, Golber v. Baybank Valley Trust Co.*, 46 Mass. App. Ct. 256, 257, 704 NE.2d 1191, 1192 (1999).

The letters which form the basis of the parties' agreement (again assuming an enforceable agreement exists) are clear and unambiguous that only "the affected areas" of the boat would be repaired, not that Post would replace the boat's entire gel coat as L&T now contends. *See*, August 25, 2004 and September 2, 2004 letters of correspondence.

Thus L&T has presented no evidence that Post supplied "false information for the guidance of others" since the repairs were made in accordance with the letters' terms.

The August 25, 2004 letter is also clear and unambiguous that: "No warranty will be extended with respect to the gel coat, its characteristics, color or finish." *See*, August 25, 2004 letter of correspondence.

Thus, there is no evidence that Post supplied "false information for the guidance of others" in light of the disclaimer concerning the gel coat's characteristics (assuming series 953 gel coat was even used, which, again Plaintiff has not proved).

Further, L&T has not demonstrated that the four month estimated time to complete the repairs was a "false representation."

An estimate or promise of this nature is not actionable under a theory of negligent misrepresentation. *See, Blacksmith Investments, LLC v. Cives Steel Co., Inc.*, 228 FRD 66, 72-73 (D.Mass. 2005) holding that false statements that concern matters of opinion, conditions to exist in the future, or matters promissory in nature are not generally actionable. *Id*. In fact, in order to be actionable, such a promise must be shown to be false when made. *Id*. Evidence of intent not to perform "cannot be established merely by its non-performance." *Id.*

Here, Plaintiff has not offered any evidence that the four month estimated time to repair the boat was false when made. Accordingly, Plaintiff's claim for negligent misrepresentation must fail, and Post is entitled to summary judgment in its favor.

    C. <u>L&T is not entitled to summary judgment on its negligence claim.</u>

Lastly, in L&T's claim for negligence (Count V), Plaintiff alleges that Post breached its "duty to L&T" by not performing such repairs at a "certain standard of care." *See*, Complaint, ¶46, 47 attached as Exhibit A to Post's Statement of Material Facts. In Massachusetts, the duty owed by one who enters upon a gratuitous undertaking for the benefit of another is only to refrain from gross negligence. *Wheatley v. Pierce*, 354 Mass. 573, 576 (1968).

Despite L&T's complaint sounding in simple negligence, L&T now asserts (after the filing of Post's motion for summary judgment on the issue) that "Post's use of series 953 gel coat in its repairs upon Plaintiff's vessel, despite Post's knowledge of its causation of 'catastrophic cracking' rises to the level of wanton and gross disregard." *See*, Plaintiff's memo, p. 7.[13]

---

[13] Post is entitled to summary judgment on this cause of action as more fully set forth in its own motion for summary judgment. However, to the extent that L&T has alleged the existence of a contract, a claim in negligence is also barred by the economic loss rule. *Cruickshank v. Clean Seas Co.*, 346 B.R. 571, 582 (D.Mass. 2006).

Thus it appears that the basis of Plaintiff's claim for negligence now is that Post knew 953 series gel coat was defective at the time it was used to repair L&T's boat.[14]

Again this assumes that series 953 gel coat was used on L&T's boat. However, Ken Jensen and Joe Martorana testified that it was not used and L&T has offered no evidence which contradicts this testimony.

However, even if series 953 gel coat were used, its use does not meet the gross negligence standard which has been described as being:

> substantially and appreciably higher in magnitude than ordinary negligence. It is materially more want of care than constitutes simple inadvertence. It is an act or omission respecting legal duty of an aggravated character as distinguished from a mere failure to exercise ordinary care. It is very great negligence, or the absence of slight diligence, or the want of even scant care. It amounts to indifference to present legal duty and to utter forgetfulness of legal obligations so far as other persons may be affected. It is a heedless and palpable violation of legal duty respecting the rights of others. The element of culpability which characterizes all negligence is in gross negligence magnified to a high degree as compared with that present in ordinary negligence. Gross negligence is a manifestly smaller amount of watchfulness and circumspection than the circumstances require of a person of ordinary prudence. But it is something less than the willful, wanton and reckless conduct ...

*Altman v. Aronson*, 231 Mass. 588, 591-592, 121 N.E. 505, 506 (1919).

---

The three cases cited by L&T, *La Esperanza Inc. v. Perez, Inc*., 124 F.3d 10 (1st Cir. 1997), *Todd Shipyard Corp. v. Turbine Serv. Inc*., 674 F2d 401 (5th Cir. 1982) and *Ryan Stevedoring Co., Inc. v. Pan-atlantic Steamship Corporation,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed.2d 133 (1956) are all inapposite to this matter because they were decided by courts sitting in their admiralty jurisdiction and pursuant to the law of the sea. L&T has not invoked this Court's admiralty jurisdiction and has not requested this Court apply any law other than the law of the State of Massachusetts.

[14] To the extent that the negligence claim is based specifically on the use of series 953 gel coat, as discussed *supra*, the quality of the gel coat was disclaimed in the August 25, 2004 letter of correspondence. In addition, this claim was not raised by the pleadings (Plaintiff's complaint states: "In undertaking to perform repairs to the boat, Post had a duty to L&T do so at a certain standard of care." *See*, complaint, ¶ 46.), was not testified to by Mr. Hamilton, is not accompanied by any affidavit, and is refuted by the fact that 953 gel coat was not used to repair the boat.

This is because the manufacturer of series 953 gel coat assured Post that its gel coat was satisfactory prior to its application in the repair process.

> Q. And what was the reason that Post initially used the 953 gel coat to perform those repairs?
>
> A. The – we had the people from CCP come in and, you know, look at what was going on. They assured us their product was good. They assured us that, you know, how we were fixing the boats, that we wouldn't have further problems.
>
> Q. When did those conversations take place?
>
> A. They took place during '04, '02 when they came in. I'm not sure if we ever had them visit us during '03.

*See*, Deposition of Kenneth Jensen, p. 41, ln. 2-12.

The record reflects that Post spent over 2,200 hours repairing the boat in accordance with the terms of its August 25, 2004 letter and that the repair work only ceased upon L&T's demand. L&T is wholly unable to demonstrate that Post was anything other than dutiful, prudent and exercising due care in performing the repairs to the boat.

Accordingly, on the claim of negligence, L&T is not entitled to summary judgment and Post is.

## IV. CONCLUSION

Based on the foregoing, this Court should deny L&T's motion for partial summary judgment. This is because no contract was created between the parties due to a lack of consideration or mutual mistake. To the extent L&T asserts there was consideration it is unsupported by the record; further to the extent a contract was made, Post did not breach any term of the contract but acted in accordance therewith. Similarly, L&T has failed to prove its

claims of negligent misrepresentation in that there have been no false statements made by Post. Post is also entitled to summary judgment on the claim for negligence by operation of the economic loss rule, by the failure of Plaintiff to plead and prove the standard of gross negligence, and because it has not been shown that series 953 gel coat was used in the repair process and to the extent it was used during the repair process, the quality of the 953 series gel coat was disclaimed in the August 25, 2004 letter.

WHEREFORE, Post requests that this Court enter an order striking Plaintiff's motion for summary judgment or in the alternative entering an order denying L&T's motion for partial summary judgment.

/s/ Howard M. Brown
Howard Brown, Esquire
BBO # 547948
Bartlett Hackett Feinberg P.C.
155 Federal Street, 9th floor
Boston, MA 02110

SEGREDO & WEISZ
9350 South Dixie Highway
Suite 1500
Miami, Florida 33156
(305) 670-3820 Telephone
(305) 670-8230 Facsimile

By: /s/ Michel O. Weisz
Michel Ociacovski Weisz, Esquire
Florida Bar No. 336939
Attorney for Post Marine Co., Inc.

Dated July 13, 2007.