UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BOSTON DIVISION
DOCKET NO. 05-11682

L & T YACHT SALES, INC. )
        PLAINTIFF, )
)
VS. )
)
POST MARINE, INC. )
        DEFENDANT )

**PLAINTIFF'S RESPONSE MEMORANDUM IN OPPOSITION TO DEFENDANT'S,
MOTION FOR SUMMARY JUDGMENT**

**(ORAL ARGUMENT REQUESTED)**

1. **Post Marine, Inc. (hereinafter "Post") is not entitled to summary judgment on Count I**

**(Breach of Contract)**

Post has correctly stated in its memorandum that Plaintiff has alleged in its Complaint against Post that "Post breached its contract with L & T by failing to repair the boat as promised and in a good and workmanlike manner." Posts then goes on to incorrectly present far too narrow a focus upon Plaintiff's allegations of Post failure to repair Plaintiff's boat as promised. Contrary to Post's misleading and too narrow of a focus, the evidence at trial will show, consistent with Plaintiff's Statement of Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment and Plaintiff's testimony at his deposition, that Post failed to remove gel coat properly and fully from entire surfaces, as Post specified in its performance clarification letter dated September 2, 2004 and signed by Post's Vice President, Joseph Martorana. (See Plaintiff's Statement of Material Facts #22 -34). Defendant has breached its contract in far more

1

ways than simply failing to remove gel coat from the entire boat. Post failed to remove gel coat from entire surfaces as promised, specifically and clearly mentioned in its own clarification letter. These areas include the shelter sides, cockpit, forward deck, side decks, pulpit and hull, all of which Post admits by deposition. The evidence further shows that Post failed to properly and in a workmanlike manner remove gel coat from these areas as well as other areas ultimately found to be affected areas (suffering from gel coat cracking) such as the bottom of Plaintiff's boat, the bridge, the interior of the bridge, the dashboard, and the hardtop. The evidence at trial will also show, as alleged by Plaintiff and as revealed through discovery, which incredibly Defendant, completely inconsistent with workmanlike standards, utilized in its repairs of Plaintiff's boat, the same series 953 gel coat for which Defendant is currently suing the gel coat manufacturer in New Jersey Federal District Court. Post, in its repair of Plaintiff's boat, utilized the same series 953 gel coat which Post itself has described as being defective and which was experiencing catastrophic cracking on the boats it was first used (including the Plaintiff's). The evidence at trial will also show, as alleged by Plaintiff and as revealed by discovery, that Post failed to perform all nine (9) of its promises contained within the August 25, 2004 letter signed by Post's legal counsel, Michel O. Weisz.

Since Post's numerous breaches of the contract are far more widespread than merely the issue of gel coat being removed from the entire boat, the doctrine of mutual mistake, to which Post gives much lip service, is not applicable to this case. Post can not excuse itself from the contract and its own unworkmanlike performance because of a dispute over one contract obligation interpretation, when there are numerous other obligations that the Defendant clearly stated it would perform but failed to do so.

The doctrine of mutual mistake is also not relevant to the case at hand because there is no

mistaken belief by <u>both</u> Plaintiff and Defendant, as is required. This is not a case where both parties believe that the subject of a contract is land to be sold in Boston when actually the land is in Providence. Williston, in his explanation of mutual mistake, describes by example a mistaken belief shared by both boat owner and boat rescue company that the hypothetical boat was still up on a reef, when in fact it had already sunken to deeper waters, making the job much more difficult. In that example contract reformation for mutual mistake would be allowed. However, if the boat rescue company mistakenly believed that the sea will remain calm for several days and in fact it does not, Williston says "tough" to the boat rescue company, i.e. no reformation for mutual mistake, (See Williston on Contracts Section 70). In the event Post mistakenly believed in August and September of 2004, when it made its promises to repair Plaintiff's boat, that the areas of the boat suffering from gel coat cracking would be much less than they actually were, this is Defendant's unilateral mistake, and does not excuse Post from obligations it mistakenly underestimated. The ***Lafleur*** case, 398 Mass 254, (1986) cited by Post has no bearing whatsoever upon the instant case. ***Lafleur*** centered upon whether the release from a personal injury claim could be set aside based upon mutual ignorance of an essential fact. ***Lafleur*** is distinguishable as herein there is neither mutual ignorance nor mutual mistake. Moreover, Post was already aware of the catastrophic failure of the 953 gel coat. Thus it would not be reasonable or consistent with workmanlike repairs for Post to 1.) assume the problem would not worsen over time; 2.) assume that areas that had not yet cracked would not crack in the future; and 3.) utilize the same defective gel coat to perform the repairs.

    Post also acknowledges in its memorandum that "to the extent Post entered into an enforceable agreement with L & T to repair the boat . . . L & T can not benefit from Post's non performance if L & T stopped the performance", citing ***Frank Fitzgerald Inc. v. Pecella***, 2 Mass

App. Ct. 240 (1974) in support. An accurate reading of *Fitzgerald* reveals, however, that a subcontractor after two (2) days of performance was told by the general contractor's engineer that the job was too big for the subcontractor and to pack up and leave. Ultimately it was decided that the general contractor should pay the sub for its two (2) days of performance. Unlike *Fitzgerald*, the case at bar is not a collection for non payment of services case. This case is rather one where the Plaintiff patiently waited more than nine (9) months for performance, for what Defendant had projected to be four (4) months of repairs. The evidence at trial will show that Plaintiff stopped Defendant's performance because, after more than nine (9) months of control of Plaintiff's boat, Defendant was not even close to completion of its contractual obligations and the work that had been performed had not been done in workmanlike manner.

Post argues in its memorandum that the above described contract, which Plaintiff submits was breached in numerous ways by Defendant, lacked consideration and cites *Neuhotf* v. *Marvin Lumber,* 320 F3d 197, to support its position. The subject of the *Neuhoff* litigation was the free repair of twenty-one (21) decaying windows, subsequent to the repair at no charge of thirty-three (33) decaying windows for the same Plaintiff homeowner, distinguishing it from this case. Clearly the value of the subject twenty-one (21) windows was in the to substantially less that the $143,000.00 in repairs that Post claims to have provided. The subject of our case is a boat with a purchase price of exceeding $700,000.00, suffering from "catastrophic cracking," utilizing Post's own admission.

*Neuhoff* holds that forbearance of a claim is the surrender of a thing of value and sufficient consideration for a contract. The decision went on to indicate that the claim need only be well-founded and made in good faith and not frivolous. The court in *Neuhoff* found that the Plaintiff homeowner never expressly discussed filing a claim or lawsuit if the repairs were not performed

4

nor did the circumstances imply that the homeowner would sue if the repairs were not offered and performed by Defendant. Again, in this case we are dealing with $3,000.00 of decaying windows but rather a yacht having more than two hundred (200) times that value. In light of the wholesale and catastrophic cracking to Plaintiff's boat, a fair and reasonable implication can be made that without the offer of promise of repairs from Post, Plaintiff would have filed suit back in 2004. Post even admits that Todd Hamilton threatened suit before Post agreed to the repairs. Post cannot then self-servingly characterize the repairs as "gratuitous," when they were undertaken after such a threat. Additionally, as part of the discovery process, Plaintiff has stated it would have commenced litigation absent Post's offer of contract to repair. Also, as has been revealed through discovery, Plaintiff, in writing from its legal counsel to Post (sent overnight on August 17, 2004, eight (8) days before Defendant's written offer of contract to perform repair services):

> In conclusion, Mr. Hamilton hopes to work cooperatively with Post to resolve this issue. However, he is immediately prepared to exercise all his legal rights to recoup any damages he incurs as a result of this defective condition and/or Post's failure to provide the requested information. Therefore, please provide your insurance company with notice of this potential claim.

L & T is also clearly distinguished from *Neuhoff,* in that the Court found little or no time and expense from the homeowner as actions in connection with Defendant's promise to repair; action such as getting a second home inspection were found to be actions that would have been taken by *Neuhoff* regardless of Defendant's promise to repair. L & T, in contrast, spent a tremendous amount of time, labor and expense to transport its yacht from Massachusetts

to New Jersey at Defendant's request. L & T, also in connection with Post's promise to repair, gave up an entire boating season with its boat, i.e. November 2004 through August 2005. These most certainly were not actions which would have been undertaken by L & T regardless of Post's promise to repair.

L & T is also greatly distinguishable from *Neuhoff* in viewing of the benefit to Defendant in providing repairs as it impacted upon Defendant's reputation. *Neuhoff* involved potential improvement of Defendant's business reputation by providing several thousand dollars of repair for windows at no charge. L & T gave Post the benefit of much more than potentially improving a business reputation. L & T gave Post the opportunity not to improve a business reputation, but rather saving that reputation. Post, is in the business of building large and expensive boats with, price tags in the range of $500,000 to over $1,000,000.00. Circumstances were evolving where these very expensive boats were experiencing catastrophic cracking. Plaintiff's, giving its boat to Post for nine and one-half (9 ½) months so Post would have an opportunity to control and diminish the fallout to its business reputation was arguably and reasonably vital to Post staying in business. In fact, Post admits that regardless of any warranty expirations or exclusions, it must repair each boat with cracking gel coat to preserve its reputation and is even suing for damages against the gel coat manufacturer for anticipated future expenses for repairing boats that have not even cracked yet. The contract was valid and Post breached it. Post is not entitled to summary judgment on Plaintiff's Count for Breach of Contract.

2. **Defendant is not entitled to Summary Judgment on Count II (Fraudulent Misrepresentation)**

6

Summary Judgment is disfavored in cases where the intent of a party is material. Claims which include fraud are essentially factual matters requiring proof of, in addition to other elements, representations or conduct intended to deceive, or to induce detrimental reliance. ***Gilmore*** v. ***Dynamic U.S.A., Inc.,*** 1992 Mass. App. Div. 100. Appellate review of ***Gilmore*** found that the court hearing plaintiff's motion for summary judgment in a case involving claims of fraud erred in granting said motion. The Appellate Court found defendant's counter-affidavits replete with assertions of fact contrary to those submitted by plaintiff and material to genuine issues raised by defendant's defenses and counterclaims. Therefore, irrespective of the relative merits of the defendant's contentions, the factual issues so raised could NOT be properly resolved upon a trial by affidavits.

Rule 56 does not permit a trial court to engage in fact-finding or to enter judgment for the party whose averments and contentions appear more plausible. ***Attorney General*** v. ***Bailey***, 386 Mass. 367, 370 (1982). State of mind, intentions, time frames and plans to fulfill those intentions need to be decided by a trial on the merits. The court must view the questions of fact intertwined with the aforementioned subjective areas of inquiry in a light most favorable to L & T, and assume that the facts set forth in its Statement of Fact are true.

Plaintiff acknowledges that a trial on the merits is necessary for the court to observe demeanor of witnesses and fully evaluate all the evidence relative to issues related to Defendant's intent. A trial on the merits is necessary for the Court to decide Defendant's intentions to remove gel coat from entire surfaces as it agreed to do and to use the defective 953 gel coat in its repairs, despite representations that it would perform its services in a workmanlike manner.

3. **Defendant is not entitled to Summary Judgment on Count III (Negligent Misrepresentation)**

Any claim by Post that L & T's economic loss arising from negligent misrepresentations by Post are barred by the economic loss doctrine is also without merit. There is a clear exception to the economic loss doctrine for losses resulting from negligent misrepresentation. ***Nota Construction* v. *Keys Association***, 694 N.E.2d 401. Analagous to *Nota* in the case at hand, there are a number of material facts in dispute, such as the falsity of information, care exercised by Defendant in communicating the information and, most of all, whether Plaintiff was justified in reliance upon the misrepresentations argued within Plaintiff's motion for summary judgment.

Defendant argues that the record is void of any evidence that Defendant's (mis)representations [that Post would perform specific repairs (strip entire areas) in a timely (estimated 4 months) and workmanlike (not utilize defective gel coat) manner)] actually induced L & T to deliver its boat to Post. Todd Hamilton's deposition and Plaintiff's letter of August 17, 2004, both expressed with clarity relative to the aforementioned inducement. The August 17 letter clearly stated that time was of the essence to come to an agreement with regard to the needed repairs to be provided by Defendant to Plaintiff's boat. The letter went on to say that Mr. Hamilton "is immediately prepared to exercise all his legal rights to recoup any damages he incurs. Therefore, please provide your insurance company with notice of the potential claim." Eight days later Defendant responded in writing with an offer of contract, which Plaintiff would argue, contains numerous negligent misrepresentations. L & T acted in good faith in reliance upon said representations. Plaintiff filed no insurance claim. Plaintiff filed no litigation. Instead

8

Plaintiff delivered its boat to Post in New Jersey as requested by Post. Fraud and negligent misrepresentation embody two different states of mind and the degree of culpability a Plaintiff must prove to establish liability for negligent misrepresentation is different and less demanding than to establish liability for deceit. For example, mere negligence in discovering the falsity before making the representation is not sufficient for an action in tort for deceit, but it is enough for an action in negligence. *Cummings v. HPG Int'l Inc.*, 244 F.3d 16. In general, Massachusetts courts have treated negligent misrepresentation claims more as negligence actions than deceit actions, focusing on the degree of care exercised by the speaker in making the statement. See *Cummings*, supra.

Hence Defendant, as with Plaintiff's claims arising from Post's negligence, is also not entitled to summary judgment relative to Plaintiff's claims arising from Post's negligent misrepresentations.

3. **Defendant is not entitled to Summary Judgment on Plaintiff's Count IV (Breach of Implied Warranty of Merchantability)**

Defendant argues in its memorandum that there can be no implied warranty of merchantability flowing to L & T as a matter of law because there is no privity of contract between L & T and Post relative to the sale of the boat. This very issue was decided in *Jacobs v. Yamaha Motor Corp.*, 420 Mass 323 (1995). In *Jacobs* the court upheld the plaintiff's breach of implied warranty of merchantability claim despite the fact that the plaintiff lacked privity with the motorcycle manufacturer. In reaching its conclusion, the court carved an exception relative to the privities requirement for breach of implied warranty claims brought against manufacturers

9

of consumer goods reasoning that contract based warranty claims involving commercial transactions may generally call for different treatment than tort based warranty claims. Therefore, there is an implied warranty of merchantability flowing to L & T as a matter of law.

The *Jacobs* court also observed that contract-based warranty-claims of buyers of <u>consumer goods</u> deserve separate consideration because of the special legislation affecting them. <u>Jacobs</u> held that "We respond to this legislative treatment by implementing the purposes of 2-318 and recognizing the right of a *buyer of consumer goods* to sue the manufacturer directly for a breach of implied warranty of merchantability."

L & T purchased the subject boat, a pleasure yacht, as a consumer. Plaintiff does not own other boats and is not in the business of buying and selling boats. According to *Jacobs*, as a consumer, Plaintiff may sue Post directly as the remote manufacturer, for breach of implied warranty of merchantability.

Post admits that it extend no express warranty as to the gel coat. However, failure to offer a warrant creates, rather than avoids, a manufacturer's implied warranty under the Uniform Commercial Code. In fact, Post has made the very same argument as to why the gel coat manufacturer must warranty the gel coat it sold to Post.

5.   **Defendant is not entitled to Summary Judgment on plaintiff's Count V (Negligence)**

Defendant's memorandum correctly states that L & T has asserted a claim for negligence against Post because Post breached its "duty to L & T" by not performing such repairs according to a "certain standard of care." That standard to which Post is held is a duty to effect and provide ship repairs in a workmanlike manner. **Little Beaver Enterprises** v. **Humphreys**, 719 F. 2d

75(YEAR) *Humphreys* found that the workmanlike manner standard reflected an implied warranty of workmanlike service. The decision went on to state, in defining the applicable standard of care, that the warranty of workmanlike service need not be expressed to bind the ship repairer to use the degree of diligence, attention and skill adequate to complete the task. Post did in fact express in writing an acknowledgment of its warranty of workmanlike performance (see August 25, 2004 letter from Post's legal counsel, Michel O. Weisz). The acknowledgement in writing also designed to limit its workmanlike performance warranty to a ninety (90) day term and subject matter (application of gel coat). In the real world, the term is unreasonable, as negligence in workmanship often does not manifest until well beyond ninety (90) days. Limitation of workmanlike standard warranty to cover only one of its many repair obligations is also unreasonable and should not be allowed. Limitations on the warranty of workmanlike service are not looked upon with favor and are strictly constructed. *Elgie* v. *Steamship SA Neederburg,* 599 F. 2d 1177.

   Defendant's memorandum contains a seriously flawed argument that L & T's claim in damages is barred by the economic loss doctrine. While it is true that this doctrine, also known as the economic injury rule, reflects a policy (with exceptions) that there is no need to create a product liability cause of action independent of contract obligations where damages are purely monetary. The first serious flaw to this argument by Post is that the economic loss doctrine cases "are applicable to cases involving the sale (emphasis supplied) of an allegedly defective product." Post cites case *Cruickshank* v. *Clean Seas Co*. 346 B.R. 571 (D. Mass. 2006) where a wholesale seller of paint which had bought defective marine paint from a company which mixed the paint for the manufacturer of the paint brought suit against the manufacturer of the defective paint. The Plaintiff in *Cruickshank*, as with all of other plaintiffs in cases where the economic

loss doctrine is discussed and properly applied, sued the manufacturer of the defective product for *selling* (emphasis supplied) and placing the defective product in the stream of commerce. L & T is not suing the manufacturer of the defective 953 gel coat. Ironically, Post *is* suing the manufacturer of the defective 953 gel coat in its Federal District Court litigation pending in New Jersey. Perhaps the economic loss doctrine is applicable against Post in that New Jersey litigation, but it is not applicable against L & T in this case. L & T's claim for negligence against Post has nothing to do with Post selling the defective gel coat, but has quite a bit to do with Post using the same defective gel coat in its *repairs* upon Plaintiff's boat, after Post was well aware that the defective gel coat caused catastrophic cracking.

Post appears to be quite adept at playing both sides of the fence, so to speak, in more ways than misapplying the economic loss rule. On one hand Post denies the existence of a contract between L & T and Post, yet seeks to invoke a rule that essentially says that a plaintiff has no need to create a cause of action in tort for damages when it can easily resort to the contract.

Finally, the doctrine of judicial estoppel should force Post to decide whether the series 953 gel coat has in fact caused catastrophic cracking to many boats, including Plaintiff's boat, and whether Post is therefore responsible to repair the defective gel coat on boats (including Plaintiff's boat). Post has alleged in its litigation in New Jersey against the gel coat manufacturer that Post is seeking $225,000.00 in damages for each boat experiencing the cracking, including, for Plaintiff's boat as well. Likewise, it is inconceivable that L & T has been exaggerating its claims against Post for a boat that merely has minor cosmetic problems, which Post has spent 2,200 hours to repair. The Court should deny Defendant's Motion for Summary Judgment relative to Plaintiff's negligence claim and should enter summary judgment against Defendant on this claim based upon the doctrine of judicial estoppel.

Application of judicial estoppel is appropriate considering Post's actions. The test is set forth in *New Hampshire v. Maine*, 532 U.S. 742 (2001), whether a party:

(1)  Takes inconsistent positions in separate litigations;

(2)  The perception that party is misleading either of the two (2) courts; and

(3)  Unfair advantage to and and/or unfair detriment to one of the parties.

Post has taken inconsistent positions in the New Jersey and Massachusetts Courts relative to a number of issues, including but not limited to L & T's damages and the cause of those damages. Further, Post has taken an inconsistent position as to whether it is responsible to fix the boats that it manufactured utilizing the defective 953 gel coat. As discussed in full above, there is clearly unfair advantage to Post and unfair detriment to L & T, unless Post is judicially estopped from denying that is responsible for the proper repair of Plaintiff's boat.

Finally, Post somewhat desperately seeks to invoke *Wheatley v. Peirce*, 354 Mass. 573 (1968), and the gratuitous undertaking (or "guest rule") doctrine which is often applied in motor vehicle accident cases where an injured party and negligent party have a special relationship (i.e. host and guest) and there is some type of gratuitous undertaking being passed on to the passenger.

This case is easily distinguished as there is no special relationship between L & T and Post. Expending 2,200 hours to do something purely gratuitous, allegedly with no benefit to Post, flies in the face of reality and common sense inferences. In its suit against the gel coat manufacturer, Post maintains it <u>must</u> fix boats with defective gel coat to maintain its reputation in the industry and then in this instance, seeks to hide behind arguments of warranty and contract to avoid properly fixing Plaintiff's boat. Finally, discovery thus far has shown gross negligence by Post

and the evidence at trial will also show it.

Post's discussion and its quote on page 15 of its memorandum citing the *Altman v. Aronson 1919 case*, 231 Mass 588, is a wonderful descriptive of Post's gross negligence in using the 953 gel coat despite (1) Post knowing the same was defective, (2) Post describing the defective gel coat as causing catastrophic cracking and (3) Post being a Plaintiff in litigation against the gel coat manufacturer and seeking from the gel coat manufacturer damages for damages caused to Plaintiff's boat. Nevertheless, Post used the 953 gel coat to repair the Plaintiff's boat, because the 953 gel coat previously used to manufacture the Plaintiff boat had cracked.

A small portion of that eloquent description of gross negligence cited by Post, "it is very great negligence, or the absence of slight diligence, or the want of even scant case." Post's actions amount to "indifference to present legal duty and to utter forgetfulness of legal obligations so far as other persons may be affected."

6. **CONCLUSION**

For the foregoing reasons, the Court should deny the Defendant's Motion for Summary Judgment.

>Respectfully submitted,
>The Plaintiff,
>By its Attorneys,
>
>  /s/ John E. Zajac
>John E. Zajac, Esquire BBO # 560195
>CARMICHAEL, ZAJAC & FLEURY, P.C.
>170 High Street
>Taunton, MA 02780
>(508) 821-2552

## CERTIFICATE OF SERVICE

I, John E. Zajac, Esquire this 13th day of July, 2007 have given notice of the within, Plaintiff's Response Memorandum in Opposition to Defendant's Motion for Summary Judgment by e-mail service, via the Court's CM/ECF system which sent notification of such filing to Howard M. Brown, Esquire, Bartlett Hackett Feinberg P.C., 155 Federal Street, 9th floor, Boston, MA 02110 and by regular mail, postage pre-paid to Michel O. Weisz, Esquire at 9350 S. Dixie Highway, Miami, FL 33156.

/s/ John E. Zajac
John E. Zajac, Esquire