UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

L & T YACHT SALES, INC.,        )
                                )
        Plaintiff,              )
                                )
        v.                      )    C.A. No.05-11682-MLW
                                )
POST MARINE CO., INC.,          )
                                )
        Defendant.              )

MEMORANDUM AND ORDER

WOLF, D.J.                                      December 27, 2007

I.    INTRODUCTION

        This case arises out of plaintiff L&T Yacht Sales, Inc.'s
("L&T") purchase of a boat that was manufactured by defendant Post
Marine Co, Inc. ("Post").  Post promised to fix the cracking of the
gel coat, a cosmetic protective gloss covering a boat's hull, on
the boat purchased by L&T.  Before Post could finish its repairs,
L&T ordered Post to halt all work on the boat, re-took possession,
and filed the present suit.

        L&T asserts five causes of action: breach of contract (Count
I);  fraudulent  misrepresentation  (Count  II);  negligent
misrepresentation (Count III); breach of implied warranty of
merchantability (Count IV); and negligence arising out of the
alleged failure of the boat's "gel coat" (Count V).

        Because there is diversity of citizenship between the parties,
the court has subject matter jurisdiction over this matter pursuant
to 28 U.S.C. §1332.

        Post has filed a Motion for Summary Judgment.  L&T has filed

a Motion for Partial Summary Judgment, asking the court to enter judgment for it on Counts I (breach of contract), III (negligent misrepresentation), and V (negligence).

Post also filed a Motion to Exclude Testimony, Documents, Expert Witnesses and Undisclosed Witnesses. Post asserts that although the period for discovery has ended, L&T has not submitted any evidence on the issue of damages. Therefore, Post moves that L&T be precluded from introducing any evidence of damages at trial.

For the reasons explained below, the court is allowing in part Post's Motion for Summary Judgment. More specifically, summary judgment for Post is being granted on all claims except for Count 1, L&T's breach of contract claim. In addition, L&T's Motion for Partial Summary Judgment is being denied. A ruling on L&T's Motion to Exclude Testimony, Expert Witnesses and Undisclosed Witnesses is being reserved for trial.

## II.  THE SUMMARY JUDGMENT STANDARD

The motions ripe for resolution are Post's Motion for Summary Judgment and L&T's Motion for Partial Summary Judgment. The court's discretion to grant summary judgment is governed by Federal Rule of Civil Procedure 56. Rule 56 provides, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(c). In addition, the facts are to be viewed in the light most favorable to the non-moving party. Woods v. Friction Materials, Inc., 30 F.3d 255, 259 (1st Cir. 1994). "When a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof at trial, there can no longer be a genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." Smith v. Stratus Computers, Inc., 40 F.3d 11, 12 (1st Cir. 1994).

In determining the merits of a motion for summary judgment, the court is compelled to undertake two inquiries: (1) whether the factual disputes are genuine; and (2) whether any fact genuinely in dispute is material. Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law properly preclude the entry of summary judgment." Id. To determine if the dispute about a material fact is "genuine," the court must decide whether "the evidence is such that a reasonable [fact finder] could return a verdict for the non-moving party." Id.; see also Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990); Oliver v. Digital Equipment Corp., 846 F.2d 103, 105 (1st Cir. 1988). Motions for summary judgment must be decided on the basis

3

of evidence that will be admissible at trial.  See Feliciano v. Rhode Island, 160 F.3d 780, 787 (1st Cir. 1998).

III. THE FACTS

Unless otherwise indicated, the following facts are undisputed.

Post is a recreational boat manufacturer based in New Jersey. It sells its boats to dealers, who resell the boats to their customers.  Post does not sell its boats to retail customers. Kenneth Jensen ("Jensen") is the President of Post.  Post. Ex. B (Jensen Affidavit).

L&T is a Rhode Island corporation.  Post Summary of Undisputed Material Facts ("SUMF") ¶1; L&T SUMF ¶1.  Todd Hamilton ("Hamilton") is L&T's president and sole officer and director.  L&T SUMF ¶2.

A yacht called "The Relentless" is the subject of this action. Post SUMF ¶10.  The Relentless is a 2001 model year boat, manufactured by Post, and sold to the original purchaser in 2001. Post SUMF ¶¶4,5; L&T SUMF ¶3.  In 2003, L&T purchased the boat "used" from an unrelated third party, Jim Zappi ("Zappi").  Post SUMF ¶10.

Post issues a one-year limited warranty (the "Limited Warranty") which covers all boats it manufactures, including The Relentless.  Post SUMF ¶5.  The Limited Warranty is a "repair and replacement" warranty which specifically excludes "[v]arnishes, gel

coats, paints, vinyls, fabrics, glass, chromium plated, stainless steel, and aluminum finishes because of the varying effect resulting from different climatic and use conditions." Post SUMF ¶6, Post Ex. B, ¶2(b). The Limited Warranty covers parts found to be defective within one year from the sale to the original purchaser. Post SUMF ¶9, Post Ex. B, ¶1. The Limited Warranty also specifically limits the duration of the implied warranty of merchantability to the one year of the Limited Warranty, and disclaims all liability for incidental and consequential damages. Post Ex. B, §3. In addition, the Limited Warranty also provides that "[t]he replacement or repair of defective parts as stated in this warranty shall be under [*sic*.] sole remedy of the purchaser and the sole liability of the Dealer and the Company under this warranty and any implied warranties." Post Ex. B, ¶3. The Limited Warranty also declares that, "THIS WARRANTY SHALL NOT APPLY TO: other than the first owner." Post SUMF ¶8, Post Ex. B, ¶2(i).

Post experienced problems with series 953 gel coat, manufactured by Cook Composite and Polymer ("953 gel coat"), which was used on boats manufactured by Post between 1997 and 2002. Post first became aware of this problem in the summer of 2002. L&T SUMF ¶6. When asked in his deposition whether the cracking of 953 gel coat was a "major problem," Jensen stated:

> It's not a structural issue. It's not a major problem
> with the boat. It's a cosmetic issue, which is labor
> intensive to repair, and it's expensive to repair, but it
> is not a major problem in that it prohibits a customer

5

from utilizing the boat and there's no safety issue
involved in this problem.

L&T Ex. C, p. 65, ln. 11-15.

Post repaired approximately 15-18 boats with problems from 953
gel coat.  L&T SUMF ¶12.  It used 953 gel coat to perform gel coat
repairs on some of these boats.  L&T SUMF ¶11.  At least three of
the boats repaired by Post using 953 gel coat have experienced
further cracking since being repaired by Post, and Post no longer
uses 953 gel to repair its boats.  L&T SUMF ¶5.

In May, 2004, L&T discovered gel coat failure on The
Relentless.  Post SUMF ¶11.  In August, 2004, L&T notified Post
that there were gel coat problems with the boat and threatened to
sue Post.  L&T SUMF ¶20; L&T Ex. C, Jensen Deposition Transcript
("Tr.") at 81.

Post subsequently offered to repair the gel coat on The
Relentless.  Post SUMF ¶12.  The terms of Post's offer to repair
were set forth in an August 25, 2004 letter written to L&T's
counsel.  In that letter, Post wrote:

> The warranty in effect at the time the yacht was
> originally sold was for one year from the date of sale.
> Thus the warranty expired well before [L&T] purchased the
> yacht.  In addition, the warranty expressly disclaims
> coverage for gel coat.
>                     * * * *
> Having said that, Post is willing as a matter of
> accommodation and customer good will to gratuitously
> undertake and perform repairs to the gel coat finish.
> This work will be done at no cost to [L&T]....

Post SUMF ¶13; Post Ex. D.  The letter also states that "Post

6

Marine will inspect the entire vessel to determine the extent of the gel coat repairs to be performed." Post Ex. D. After describing the work to be done, the letter continued: "Post Marine will make every attempt to complete these repairs in a timely manner and estimate[s] the process will take approximately four months upon receipt of the vessel at our facility." Post SUMF ¶16; Post Ex. D.

Post sent L&T another letter on September 2, 2004. The letter states, in its entirety:

> To clarify the [August 25, 2004] letter sent to you from Michel Weisz, in making the repairs to [] your boat we will spray gelcoat in such a way as to eliminate any spotting or color variation in the areas to be repaired. Gelcoat will be removed from entire surfaces, example[s] being shelter sides, cockpit, forward deck, side decks, pulpit and hull to ensure consistency.

Post SUMF ¶15; Post Ex. F.

Hamilton brought The Relentless to Post's New Jersey facility on November 1, 2004. Post SUMF ¶¶19. He visited his boat at the facility in February, 2005 and again in May, 2005. Post SUMF ¶¶20, 21.

Post began working on The Relentless at the end of 2004. L&T SUMF ¶25. On June 15, 2005, Hamilton sent Post a letter listing the repair work remaining to be done on the boat. Post SUMF ¶22; Post Ex. G. There is no reference in the letter to Post's failure to re-gel coat the entire boat. Post SUMF ¶22. On July 15, 2005, Hamilton wrote to Post demanding that it cease work on the boat.

Post SUMF ¶23; Post Ex. H (Hamilton Letter).  L&T took its boat back and it made no payment for the repairs that were done.  Post Ex. C, Hamilton Deposition Tr. at 32-33.

The parties dispute the extent of repairs which Post performed on the boat during the time The Relentless was in New Jersey.  L&T claims that Post did not strip the gel coat from the entire affected surfaces of the bottom of the boat, sides of the hull, the bridge, the interior of the bridge, the hardtop, or the bottom of the boat.  L&T SUMF ¶26.  Post denies this assertion and claims that it "did strip gel coat from the entire affected surfaces." Post Response to L&T SUMF ¶26.  L&T also claims that Post did not strip the gel coat from the hull, the back bulkhead, the dashboard, or the hardtop.  L&T SUMF ¶27.  Post responds that "[t]hese areas were not stripped because there was no gel coat cracking in these areas."  Post Response to L&T SUMF ¶27.  In addition, L&T claims that Post never removed any gel coat from the bottom of the boat. L&T SUMF ¶28.  Post responds that L&T was not able to complete repairs on the bottom of the boat "because Todd Hamilton ordered that all repair work on the boat cease."  Post Response to L&T SUMF ¶28.

In essence, L&T claims that when Hamilton removed the boat from Post's facility in August, 2005, there were many areas where the gel coat had not been repaired.  L&T SUMF ¶32.  Post responds that, "[e]xcept for the bottom of the boat, which was not repaired

because Mr. Hamilton ordered that all repair work on the boat cease so that he could remove the boat, all affected areas had been repaired."  Post Response to L&T SUMF ¶32.

In addition, L&T claims that Post used 953 gel coat to perform repairs on The Relentless.  L&T SUMF ¶31. Post responds that it only used series 953 gel coat "in one limited and specific area." Post Response to L&T SUMF ¶31.

Post states that in the more than nine months that it had the boat, it spent 2,200 hours repairing The Relentless.  Post SUMF ¶23, 24.  Post contends that the work it performed on the boat was worth $143,000.  Post SUMF ¶25.

IV. ANALYSIS

1. <u>Count I - Breach of Contract</u>

In Count I, L&T alleges that "Post breached its contract with L&T by failing to repair the boat as promised and in a good and workmanlike and timely manner."  Comp. ¶29.  For the reasons discussed below, neither party is entitled to summary judgment on this claim.

The elements of a cause of action for breach of contract are: the existence of a contract; its breach by the defendant; and damages.  <u>Michelson v. Digital Financial Services</u>, 167 F.3d 715, 720 (1st Cir. 1999).

Post first claims that any alleged contract between L&T and Post to repair the boat is void based on the doctrine of mutual

mistake.    Pursuant  to  this  doctrine,  "where  there  has  been  a
mistake between the parties as to the subject matter of a contract,
there  has  been  no  'meeting  of  the  minds'  and  the  contract  is
voidable at the election of the party adversely affected."  LaFleur
v. C.C. Pierce Co., Inc., 398 Mass. 254, 257-58 (1986).  "The
mistake  must  be  shared  by  both  parties,  and  must  relate  to  an
essential  element  of  the  agreement."  Id. at 258.

       The  purported  mistake  in  this  case  concerns  the  extent  to
which L&T promised to strip and re-gel coat the boat.  L&T claims
that Post only repaired the "affected areas" of gel coat, while it
had promised to replace the boat's entire gel coat.  Post, however,
asserts that it never agreed to remove the gel coat from the entire
boat.  As indicated earlier, Post's August 25, 2004 letter states
that "Post Marine will inspect the entire vessel to determine the
extent of the gel coat repairs to be performed."  Post Ex. D.  In
the same letter, Post agreed to repair only "the affected areas."
Id.  In the September 2, 2004 letter, Post specifically stated,
"[t]o clarify the letter sent to you from Michel Weisz, in making
the repairs to [] your boat we will spray gelcoat in such a way as
to eliminate any spotting or color variations in the areas to be
repaired."  Post Ex. F.  Hamilton acknowledged in his deposition
that these two letters formed the basis of the entire written
agreement between the parties.  Post Ex. C, Hamilton Deposition Tr.
at 27.

Therefore, Post contends that L&T is at most alleging that it believed it was going to receive a different benefit than Post had actually offered.  However, it is incorrect to characterize any such assumption as a mutual mistake.  The mutual mistake doctrine applies only to a mistake shared by both parties.  LaFleur, 398 Mass. at 258.  "The mistake must involve a fact capable of ascertainment at the time the contract was entered into."  Id.  The doctrine applies when there is a material fact of which neither party was aware.  Id.  For example, LaFleur involved an agreement in a personal injury suit where the parties were both unaware at the time it was formed that the victim had suffered an additional, serious injury.  Id. at 255.

The dispute in the instant case involves an evident disagreement as to what Post promised to do.  In this case, L&T asserts that Post promised to strip the entire boat of its gel coat, while Post claims that it only promised to strip "affected areas."  If one party is mistaken about the scope of the undertaking, that mistake was not shared by the other party. Therefore, the doctrine of mutual mistake does not apply in this case.  Id. at 258.

Post also asserts that it is entitled to summary judgment because L&T did not provide consideration for Post's promise to repair the boat.  There are material disputed facts concerning this contention.  Therefore, summary judgment on L&T's breach of

11

contract claim is not justified.

"Under Massachusetts law, a valid contract requires offer, acceptance, and consideration." Campbell v. General Dynamics Government Systems, Corp., 321 F. Supp. 2d 142, 148 n.3 (D. Mass. 2004). Most significantly:

> a contract must have consideration to be enforceable and in order for a contract to have valid consideration, the contract must be a bargained-for exchange in which there is a legal detriment of the promisee or a corresponding benefit to the promisor.

Neuhoff v. Marvin Lumber and Cedar Company, 370 F.3d 197, 201 (1st Cir. 2004) (internal quotation and citation omitted).

> It is well-settled that "abandonment of a claim believed to be well founded ... is the surrender of a thing of value and is a sufficient consideration for a contract." Blair v. Cifrino, 355 Mass. 706, 247 N.E.2d 373, 375 (1969) (quotations and citations omitted). The claim need not be "of such character in law or fact or both as finally to commend itself to the judgment of the tribunal of last resort," rather it need only be "well founded and made in good faith and not frivolous, vexatious or unlawful." Id. (internal quotations and citations omitted). But, "[m]ere forbearance to sue [on] a claim, without any promise either in express terms or by fair implication from all of the circumstances, does not form sufficient consideration...." Merrimac Chem. Co. v. Moore, 279 Mass. 147, 181 N.E. 219, 222 (1932).

Id. at 202.

Neuhoff was a case in which the defendant undertook to replace decaying windows when it had no obligation to do so. Id. at 200, 201. The defendant later refused to replace additional decaying windows and the plaintiff sued for a breach of an alleged oral agreement to replace all defective windows. Id. The First Circuit

12

affirmed the granting of a motion for summary judgment for the defendant because the plaintiffs:

> never expressed their willingness to forbear suit before or after the promise to replace the defective windows was made [and] ... [t]he record show[ed] that the alleged promise to replace all of the windows was not given to induce the Neuhoffs to relinquish a claim against Marvin.

Id. at 202.

However, "'[a]n agreement to forbear to sue may be implied when the circumstances are such as to lead to the reasonable conclusion that the ... thing of value was given to induce the [other party] to forbear.'" Id. (quoting Merrimac Chem. Co., 279 Mass. at 155). In contrast to Neuhoff, in the instant case Post admits that L&T threatened to sue it before Post offered to make any repairs on The Relentless. In McNulty v. Great American Insurance, Co., 727 F. Supp. 45, 47-48 (D. Mass. 1989), such threatened legal action was deemed sufficient to permit a reasonable jury to conclude that the offer at issue was made in exchange for the plaintiff's forbearance and, therefore, that there was consideration for the defendant's undertaking.

This conclusion is equally applicable in the instant case. The fact that L&T threatened to sue Post before Post offered to make any repairs might persuade a reasonable jury that the offer was in exchange for L&T not initiating legal action against Post. However, among other things, the undisputed fact that Post also repaired many boats without any evidence of a threat of suit might

cause a reasonable jury to conclude that any forbearance by L&T was not consideration for Post's undertaking.  Therefore, neither party is entitled to summary judgment on Post's claim that L&T's breach of contract claim fails because of lack of consideration.

L&T's motion for summary judgment on its breach of contract claim is unmeritorious for other reasons as well.  As described earlier, the evidence places genuinely in dispute the issues of how much of The Relentless Post undertook to repair and whether it breached any agreement supported by consideration that a jury might find existed.  Therefore, if a contract is found to exist, the jury must decide if it was breached.  See Michelson, 167 F.3d at 720.[1]

2.  <u>Counts II and III - Fraudulent and Negligent Misrepresentation</u>

In Count II, L&T alleges that, "[i]n agreeing to provide said repairs to L&T's boat, Post, on numerous occasions falsely and fraudulently represented that Post was willing, ready and able to provide the repairs in a TIMELY, complete and workmanlike manner."  Comp. ¶32.  In Count III, L&T alleges that, "[i]n agreeing to provide the repairs to L&T's boat, Post negligently represented that it was willing, ready, and able to provide the repairs in a TIMELY, complete and workmanlike manner, when it knew or should

---

[1] The court assumes, without finding, that evidence of Hamilton's loss of enjoyment of his boat would satisfy the requirement that a meritorious action for breach of contract include evidence of damages.  <u>Michelson</u>, 167 F.3d at 720.  There may be no other admissible evidence of damages.

have known that it could not or would not perform as promised."

Id. at ¶37.

As this court has previously written:

In Massachusetts, a plaintiff may establish liability by proving an intentional, negligent or innocent misrepresentation underlying the formation of a contract. Liability may not be found under these theories where the alleged misrepresentation concerned a matter of opinion, estimate or judgment, which was not susceptible of actual knowledge at the time of its utterance. Snyder v. Sperry & Hutchinson Co., 368 Mass. 433, 444, 333 N.E.2d 421 (1975).

To succeed on a claim of misrepresentation, a plaintiff must show that "the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his damage." Danca v. Taunton Savings Bank, 385 Mass. 1, 8, 429 N.E.2d 1129 (1982) (quoted in Kennedy v. Josephthal & Co., 814 F.2d 798, 805 (1st Cir. 1987)). However, plaintiff does not have to prove an actual intent to deceive, Snyder, 368 Mass. at 444, and "nothing is clearer than the fact that under Massachusetts law plaintiffs need not prove that [defendant] knew his statements to be false," Nickerson v. Matco Tools Corp., 813 F.2d 529, 530 (1st Cir. 1987).

"In this Commonwealth it has been held in a long line of cases that 'the charge of fraudulent intent, in an action for deceit, may be maintained by proof of a statement made, as of the party's own knowledge, which is false, provided the thing stated is not merely a matter of opinion, estimate, or judgment, but is susceptible of actual knowledge; and in such case it is not necessary to make any further proof of an actual intent to deceive.'"

Nickerson, 813 F.2d at 530 (quoting Powell v. Rasmussen, 355 Mass. 117, 118, 243 N.E.2d 167 (1969) (quoting Chatham Furnace Co. v. Moffatt, 147 Mass. 403, 404, 18 N.E. 168 (1888))).

15

<u>Logan Equipment Corp. v. Simon Aerials, Inc.</u>, 736 F. Supp. 1188, 1199 (D. Mass. 1990). <u>See also</u> <u>Yerid v. Mason</u>, 341 Mass. 527, 530 (1960) ("false statements of opinion, of conditions to exist in the future, or of matters promissory in nature are not actionable").

L&T emphasizes that Post's misrepresentations include a promise that the repair work would be completed in a "TIMELY" fashion. Comp. ¶¶32, 37. However, the August 24, 2004 letter stated that Post would "make every attempt to complete the[] repairs in a timely manner and estimate[s] the process will take approximately four months upon receipt of the vessel at our facility." Post. Ex. D. There is no evidence that Post failed to make a proper effort to repair The Relentless. To the contrary, the undisputed evidence is that Post spent about 2,200 hours attempting to do so. While the repairs were not completed in four months, that projection was expressly characterized as an estimate. As explained earlier, such estimates cannot, as a matter of law, provide a basis for a meritorious misrepresentation claim. <u>See</u> <u>Snyder</u>, 368 Mass. at 444; <u>Yerid</u>, 341 Mass. at 530.

L&T also alleges that Post promised to (1) "complete" the repairs, (2) "in a workmanlike manner." Comp. ¶¶32, 37. As discussed earlier, there are genuine disputes of fact as to whether Post substantially completed the repairs, the extent to which Post used gel coat 953 in its repairs, and whether Post would have been able to complete its work fully and adequately if L&T had not

16

halted the repairs and taken the boat from Post.  Even if L&T were able to prove that Post did not complete the repairs, that it had the opportunity to do so, and that the repairs were not done in a workmanlike manner, the promises to do so would only be a basis for a valid misrepresentation claim if L&T could prove that, when the representation was made, Post did not intend to do what it promised.

> The intent with which a person acts is usually a question of fact ... to be determined from his declarations, conduct and motive, and all the attending circumstances, but there must be evidence from which that intent may be found.  Intention not to perform a promise, existing when the promise is made, cannot be shown merely by nonperformance of the promise....  That intention must be shown by other evidence.

Galotti v. U.S. Trust Co., 335 Mass. 496, 501 (1957) (internal citations and quotations omitted).  The record in the present case is devoid of any evidence other than the alleged nonperformance that might suggest to a reasonable jury that Post did not intend to fulfill its promises at the time they were made.  Again, to the contrary, the undisputed evidence indicates that Post invested about 2,200 hours of work, worth about $143,000, in an attempt to repair the gel coat on The Relentless.

Nor is there any evidence that would be sufficient to permit a reasonable jury to conclude that Post was negligent in promising to complete the repairs of the gel coat on The Relentless in a workmanlike manner.  This promise does not involve a fact that is susceptible of actual knowledge at the time it was made and,

therefore, does not provide a basis for a negligent misrepresentation claim. See Nickerson, 813 F.2d at 530.

This court recognizes that in certain circumstances, a party may be liable for negligence if it fails to exercise reasonable care in obtaining information and, as a result, it supplies false information for the guidance of others in their business transactions. See Restatement 2d of Torts, §552, (1) and illustration e. However, in the instant case there is no evidence that Post was unreasonable in undertaking to complete the necessary repairs or to do so in a workmanlike manner. Rather, the undisputed evidence indicates that at the time the promises to L&T were made, Post was an experienced manufacturer that had successfully completed gel coat repairs on at least some other boats. There is no evidence that when these promises were made Post knew or should have known that it was unqualified to perform repairs of the gel coat on The Relentless in a workmanlike manner. Therefore, the evidence is insufficient to prove a negligent misrepresentation claim even if Post's promise to complete the repairs in a workmanlike manner is actionable.

Accordingly, the court is granting Post's motion for summary judgment on L&T's fraudulent and negligent misrepresentation claims, and denying L&T's motion for summary judgment on these claims.

3.  <u>Count IV - Breach of Implied Warranty of Merchantability</u>

Post's motion for summary judgment on L&T's claim of a breach of an implied warranty of merchantability is also meritorious.  The Uniform Commercial Code ("UCC"), as incorporated in Massachusetts law, provides that "a warranty that [] goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."  M.G.L. ch. 106, §2-314. However, L&T is not entitled to the benefit of the implied warranty of merchantability in this case.

The Limited Warranty accompanying the original sale of the boat in 2001 to the original purchaser provided that: "THE DURATION OF ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR OTHERWISE SHALL BE LIMITED TO AND COINCIDENT WITH THE DURATION OF THIS EXPRESS WARRANTY," that is, for one year following the original retail purchase.  Post Ex. B. Massachusetts law allows implied warranties to be limited, modified, or excluded in the manner of Post's Limited Warranty.  It provides that:

> To exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be in writing and conspicuous.

M.G.L. ch. 106, §2-316(2).

The Relentless was purchased from a dealer in 2001.  L&T bought it from Zappi in 2003.  L&T SUMF ¶20.  The Limited Warranty stated that it does not apply to anyone other than the first owner.

19

Id.  L&T was not the first owner of The Relentless.  Therefore, L&T was not entitled to the benefit of the original warranty.  In any event, L&T first complained to Post in 2004, after the Limited Warranty had expired.  Moreover, the Limited Warranty expressly disclaims responsibility for damage to "[v]arnishes, gel coasts, paints," etc., "because of the varying effect resulting from different climatic and use conditions." Id.  The Limited Warranty also states that Post will not be liable for any incidental or consequential damages.  Id.

Under M.G.L. ch. 106, §2-318, a manufacturer may exclude third parties from the protection of express or implied warranties.  See Theo & Sons, Inc. v. Mack Trucks, Inc., 431 Mass. 736, 740 (2000).  A subsequent purchaser is responsible for ascertaining the existence of any limitations on the implied warranties provided by the UCC, and is subject to any disclaimers of the implied warranty of merchantability.  Id. at 241.  In this case there is no argument, let alone evidence, that L&T's Limited Warranty is invalid.  Therefore, by its express terms it displaces the implied warranty of merchantability provided by M.G.L. ch. 106, §2-314 with a limited warranty that disclaims any duty to L&T in the circumstances of this case.  Id.

To the extent that L&T is suing on the alleged contract formed by its communications with Post, the implied warranty of merchantability is not implicated.  The UCC's implied warranties

20

only apply to contracts for goods, not for services. <u>See</u> <u>White v.</u> <u>Peabody Constr. Co.</u>, 386 Mass. 121, 132 (1982); <u>Nickerson v.</u> <u>Nautilus II</u>, 1993 WL 818703, *3 (Mass. Super. Ct. 1993) (to the extent health club membership was a contract for services, "warranty liability would be equally inappropriate").

Finally, although Post does not raise this defense to L&T's implied warranty of merchantability claim, it is also entitled to summary judgment on Count IV because of the economic loss doctrine.

> Under Massachusetts law, the theory of breach of implied warranty is essentially the same as strict liability in tort [citing <u>Guzman v. MRM/Elgin</u>, 409 Mass. 563, 569 (1991)]. Accordingly, unless the plaintiffs are able to show that they sustained personal injury or damage to other property, the economic loss doctrine bars their claims for negligence and breach of implied warranties.

<u>Cruickshank v. Clean Seas Co.</u>, 346 B.R. 571, 582 (D. Mass. 2006). In this case, there is no evidence of any personal injury or damage to property other than to The Relentless.

4.  <u>Count V - Negligence</u>

L&T's negligence claim is also barred by the economic loss doctrine. In Count V, L&T alleges that "[i]n undertaking to perform repairs on the boat, Post had a duty to L&T to do so at a certain standard of care." Comp. ¶46. In essence, L&T alleges again that Post breached its purported contract to repair The Relentless in a workmanlike manner.

However, under Massachusetts law, when, as here, a suit is based on an alleged contract, and "economic loss is the only damage

claimed, recovery is not allowed in tort based on strict liability or negligence." <u>Bay State-Spray & Provincetown S.S., Inc. v. Caterpillar Tractor Co.</u>, 404 Mass. 103, 107 (1989). <u>See also Cruickshank</u>, 346 B.R. at 582.

Therefore, Post's motion for summary judgment on L&T's negligence claim is meritorious.

V.    ORDER

For the foregoing reasons, it is hereby ORDERED that:

1. Post's Motion for Summary Judgment (Docket No. 20) is ALLOWED as to Counts II, III, IV, and V and DENIED as to Count I.

2. L&T's Motion for Partial Summary Judgment (Docket No. 27) is DENIED.

3. The court reserves ruling on Post's Motion to Exclude Testimony, Documents, Expert Witnesses and Undisclosed Witnesses & Supporting Exhibits (Docket No. 23). If Post wishes to maintain its motion, the court will address it prior to trial.

4. A pretrial conference will be held on February 4, 2008, at 3:00 p.m. The parties shall comply with the attached Order concerning that conference.

5. Trial will begin on February 11, 2008, at 9:00 a.m.


                                    /s/ Mark L. Wolf
_____
                        UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

L&T YACHTS, INC.

                          Plaintiff

                          CIVIL ACTION

          V.

                          NO.   05-11682-MLW

POST MARINE CO., INC.

                          Defendant

PROCEDURAL ORDER
RE: FINAL PRETRIAL CONFERENCE/TRIAL

Wolf,   D. J.

The above-entitled action is scheduled for a final pre-trial conference on FEBRUARY 4, 2008 at 3:00PM in Courtroom #10 on the 5th Floor.  Counsel shall be prepared to commence trial of this action on or after  FEBRUARY 11, 2008.  Each party shall be represented at the pretrial conference by trial counsel.

In order to secure the just, speedy and inexpensive determination of this action in accordance with the Civil Justice Reform Act of 1990 and Local Rule 16.5, the parties shall meet prior to this conference to accomplish the following:

(1)    to discuss and negotiate settlement of the action;
(2)    to draft and sign a stipulation as to all uncontested facts;
(3)    to narrow the issues to be tried;
(4)    to exhibit to all parties any and all photographs, documents, instruments and other objects any party intends to offer as exhibits at trial;
(5)    to give notice to all parties of the names and addresses of witnesses a party intends to call at trial, including the names and qualifications of any expert witnesses.

Counsel shall prepare and file, either jointly or separately, pretrial memoranda and/or trial documents which set forth the following:

(1)    a concise summary of the evidence that will be offered by the plaintiff, defendant and other parties with respect to both liability and damages (including special damages, if any);
(2)    a statement of facts established by the pleadings, by admissions or by stipulations. Counsel shall stipulate all facts not in genuine dispute;
(3)    contested issues of fact;
(4)    any jurisdictional questions;
(5)    any question raised by pending motions;
(6)    issues of law, including evidentiary questions, together with supporting authority;
(7)    any requested amendments to the pleadings;
(8)    any additional matters to aid in the disposition of the action;
(9)    the probable length of trial and whether jury or nonjury;
(10)    a list of the names and addresses of witnesses who will testify at trial and the purpose of the testimony, i.e., whether factual, medical, expert, etc.;
(11)    a list of the proposed exhibits (photographs, documents, instruments, and all other objects) in order of their introduction to the Court.  Those exhibits to be introduced without objection shall be identified by a single sequence of numbers and those items to which a party reserves the right to object shall be identified by a single sequence of capital letters, regardless of which party is offering the exhibit.

This material shall be filed, in duplicate, no later than  JANUARY 18, 2008 .  A party who intends to object to any proposed exhibit or witness shall give written notice to all parties setting forth the basis for the objection and file said notice, in duplicate, with the clerk on or before JANUARY 25, 2008 .  A party who intends to file any motion in limine shall do so no later than  JANUARY 18, 2008  .  Any responses to a motion in limine shall be filed no later JANUARY 25, 2008 .

Each party shall file, by  JANUARY 25, 2008 , in duplicate:

(A)    In cases to be tried to a jury, a trial brief including:

    (1)    any proposed questions for the voir dire examination of the jury;
    (2)    requests for instructions to the jury with citation to supporting authority;
    (3)    any proposed interrogatories or special verdict form.

(B)    In nonjury cases, a trial brief including:

    (1)    any proposed findings of fact and requested rulings of law.

If the trial materials required by this Order have been previously filed with the Court, please advise the Court in writing of the filing date and supplement trial documents, as necessary.  Immediately upon receipt of this Order, any counsel who realizes that one or more attorneys have not been notified shall forthwith notify the additional attorney(s) in writing as to the entry of this Order and file a copy of the writing with the clerk.

Compliance with this Order is not excused, absent the actual filing of closing papers or the entry of a Settlement Order of Dismissal in a form prescribed by the Court.

PLEASE NOTE:  The Court requires twenty-four hour notice of settlement.  Any settlement on the eve of trial may result in the imposition of costs, including the costs associated with bringing in jurors unnecessarily.

By the Court,

 December 27, 2007            /s/ Dennis O'Leary
Date          Deputy Clerk

Copies To:

(Pretrial.ord - 09/92)          [proco.]

2