## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| L&T YACHT SALES, INC., | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| POST MARINE CO., INC. | ) |
|  | ) |

## PLAINTIFF, L&T YACHT SALES, INC.'S PRE-TRIAL MEMORANDUM

NOW COMES the, L&T Yacht Sales, Inc. (hereinafter "L&T") in the above-captioned matter and respectfully submits its Pre-Trial Memorandum.

### I. SUMMARY OF EVIDENCE TO BE OFFERED BY THE PLAINTIFF

L & T will prove that Todd J. Hamilton is the sole officer and sole director of L&T. The Defendant, Post Marine Co., Inc. (hereinafter "Post) is a New Jersey Corporation. Post advertises, sells yachts and conducts business throughout the United States as well as in the Commonwealth of Massachusetts, though its authorized dealers. Post manufactured the yacht at issue. It is the sole asset of L & T. In the Spring of 2003, L & T purchased the yacht. In 2004, L & T contacted Post concerning major defects in the yacht, specifically the failure of the gel coat throughout the yacht. Gel coat is the protective outer "skin" of the boat. This complaint by L & T was one of many such complaints received by post from other yacht owners. The gel coat (953 Series Gel Coat) utilized by Post in manufacturing yachts, including the yacht in question, was manufactured by Cook Composites and Polymers. Post agreed to repair yachts experiencing gel coat failure including the yacht purchased by L & T. In May, 2004, Hamilton discovered the

1

gel coat failure in his yacht. At that time, Hamilton had a purchaser for the yacht (William Catauro, Sr.) and notified Post of this fact, as well as the obvious fact that the purchase would have been seriously effected by the gel coat failure, by approximately one hundred fifty thousand dollars ($150,000.00). The defects with the gel coat prevented the sale altogether and L & T, through its attorney, sent a letter to Post that threatened litigation. Post received the letter and responded through its own attorney, acknowledging the problem, admitted to gel coat failures on other yachts and agreed in writing on September 2, 2004 to repair Hamilton's yacht.    In said letter, Post specifically agreed to remove the gel coat from the entire surfaces needing repair and then perform the needed repairs. At or around that time, Post agreed to prevent the spread of dust and to use care not to overspray when applying the new gel coat. Post estimated that the repairs would take four months from the time that the boat was delivered to Post. On November 1, 2004, the yacht was delivered to Post. In February, 2005, Hamilton traveled to inspect the progress of the repairs on the yacht. To his surprise, very little had been done. This prompted Hamilton to inquire of Post regarding the lack of progress on the repairs. Post responded by assuring Hamilton that the repairs would be completed by May, 2005. In May of 2005, in accordance with Post's prior representations, Hamilton traveled to retrieve the yacht. Again, to his surprise, the repairs were incomplete prompting him to document in writing to Post the items that had not been completed. At that time, Post represented that the repairs on the yacht would be completed by mid-July, 2005. On or about July, 11, 2005, Hamilton contacted Post regarding the status of the repairs. Post represented that the repairs on the yacht were completed. As a result, Hamilton made one-way travel arrangements (as he would drive the yacht back), took time off from work and traveled to the repair site.    Upon arrival, contrary to Post's representations, Hamilton discovered that the repairs were still incomplete. As a result, at that

2

time, Hamilton instructed Post to cease any and all further repairs to the side or bottom of the yacht until the parties discussed the situation. Unbeknownst to Hamilton and Post then closed for its two (2) week vacation. After this time, Hamilton returned again and discovered that, contrary to its agreement, Post had not stripped the entire surfaces that had been affected. Thereafter, Post refused to perform the repairs as promised and demanded that the yacht be removed from its facility. Subsequently, Hamilton discovered that Post and sprayed new gel coat over old gel coat and had utilized the same 953 gel coat in performing repairs. As a result, the gel coat has continued to crack and has re-cracked in the areas that Post performed repairs. Hamilton obtained estimates for repairing the boat yacht as promised by Post.

## II.    ESTABLISHED FACTS

1.    Post manufactured the yacht in question, which is owned by L & T.

2.    Post sold the yacht to a private party.

3.    A private party sold the yacht to L & T.

4.    The yacht experienced cracking in its gel coat.

5.    Post had the same or similar defective gel coat issues on this yacht and other yachts.

6.    Post agreed to make repairs to the subject yacht.

7.    Post estimated that the repairs would take four (4) months.

8.    Post had possession of the yacht for eight (8) months.

9. The repairs were not completed within the eight (8) months that Post had possession of the yacht.

10. The gel coat (953 Series Gel Coat) utilized by Post in manufacturing yachts, including the yacht in question, was manufactured by Cook Composites and Polymers.

11. Post used this same 953 series gel coat to perform at least some of the repairs on the

yacht.

12. Post estimates that iy would cost $279,000.00 to repair a yacht such as the one in question.

## III.    CONTESTED FACTS

1.  Whether there was a contract between Post and L & T.

2.  If there was a contract, whether Post performed according to its terms or breached the contract.

3.  Why the yacht was removed from Posts facility in New Jersey.

4.  The extent of the repairs that were completed and the condition of the yacht at the time that it left the facility.

4.  The extent to which Post utilized series 953 gel coat in performing repairs.

5.  The nature and amount of L & T's damages if Post breached its contract with L & T.

## III.    CONTESTED LEGAL ISSUES

1.  Was a contract formed between the parties?

2.  What were the terms of the contract?

3.  Did Post breach the contract?

4.  What are L&T's damages as a result of the contract breach?

## IV. JURISDICTIONAL ISSUES

1.  None.

## V.  ISSUES RAISED BY PENDING MOTIONS

The parties have filed a Joint Motion to Continue the Pre-Trial Conference and Trial by one week each.  Plaintiff's counsel still has the same scheduling conflict resulting in the requested continuance. Post has also filed a motion to exclude evidence regarding damages

4

and expert witness testimony.  L & T has filed an opposition to this motion.  Post has also filed a Supplemental Motion for Summary Judgment outside of the time required to file such motions.  L & T intends to move the court to strike the same.

## VI. EVIDENTIARY ISSUES

Post will raise evidentiary issues concerning the admissibility of evidence of L & T's damages as well as expert witness testimony.  L & T submits that it has provided admissible evidence of its damages.

## VII.    REQUESTED AMENDMENT TO THE PLEADINGS

1. L & T requests to amend its Rule 26(a)(1) disclosures to identify the persons at Composites One, LLC who have discoverable information concerning the matter whose identity was unknown at the time that said disclosures were filed.

## VIII.    ADDITIONAL MATTERS

Post has filed a Supplemental Motion for Summary Judgment which L & T intends to move to strike as being untimely filed.

## IX. LIST OF WITNESSES TO TESTIFY

1. Todd Hamilton -- President of L & T Yacht Sales, Inc., Crimson Drive, Raynham, MA. (Factual as to the attempted sale of the yacht, all dealings between L & T and Post, the condition of the yacht and its repairs)

2. William Catauro, Sr. c/o Quality Beef Company, Inc., 25 Bath Street, Providence, RI 02908 (Factual as to the failed sale of the yacht due to the cracked gel coat and the delay that incurred as a result in repairs)

5

3.  Ken Jensen, Joe Martorana and Cortez Marks, -- Post Marine Co., Inc. (Factual as to the dealings between L & T and Post and the attempted repairs)

4.  Larry Soule, Onset Bay Marine, Buzzard's Bay, MA (Factual – as to the estimated cost of repairs)

5.  Marty Neimic, Neimic Marine, Popes Landing, New Bedford, MA (Factual / rebuttal -- as to the cracking of the gel coat)

6.  Eric Mobilia, 80 North Main Street, Sharon, MA (factual / rebuttal -- as to the cracking of the gel coat)

7.  Juan Beltran and John Kasinski, Viking Yacht Company, Route 9, New Gretna, NJ 08224.  (Factual / rebuttal – as to the method and expense of repairing cracks due to the failure of series 953 gel coat)

8.  Corbett Leach, Composites One, LLC, 723 W. Algonquin Road, Arlington Heights, Illinois.  (Factual – as to cracking of 953 series gel coat)

## X.  PROPOSED EXHIBITS OF L & T

### A.  EXHIBITS

1. Letter dated August 17, 2004 from Lisa A. Kane to Michel Weisz.

2. Letter dated August 25, 2004 from Michel Weisz to Lisa Kane.

3. Letter from Joe Martorana to Todd Hamilton.

4. Letter dated June 15, 2005 from Todd Hamilton to Joe Martorana and Ken Jensen.

5. Letter dated July 13, 2005 from Todd Hamilton to Joe Martorana and Ken Jensen.

6. Letter dated July 15, 2005 from Todd Hamilton to Joe Martorana and Ken Jensen.

6

7.    Letter dated August 10, 2005 from Michel Weisz to Todd Hamilton.

8.    Letter (fax) dated July 14, 2004 from William Catauro, Sr. to Todd Hamilton

9.    Letter (fax) dated August 6, 2004 from William Catauro, Sr. to Todd Hamilton

10.   Photos (105) depicting areas of the yacht.

                              Respectfully submitted,
                              The Plaintiff,
                              By its Attorneys,

                              /s/ *John E. Zajac*

                              John E. Zajac, Esquire BBO # 560195
                              CARMICHAEL & ZAJAC, P.C.
                              170 High Street
                              Taunton, MA 02780
                              (508) 821-2552

7

## CERTIFICATE OF SERVICE

I, John E. Zajac, Esquire this 22nd day of January, 2008 I have given notice of the within,

Plaintiff's Pre-Trial Memorandum by e-mail service, via the Court's CM/ECF system which sent

notification of such filing to Howard M. Brown, Esquire, Bartlett Hackett Feinberg P.C., 155

Federal Street, 9th floor, Boston, MA 02110 and by facsimile and regular mail, postage pre-paid

to Michel O. Weisz, Esquire at 200 South Biscayne Blvd, Suite 1000, Miami, FL 33131.

/s/ *John E. Zajac*

John E. Zajac, Esquire

8