UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BOSTON DIVISION
DOCKET NO. 05-11682

L & T YACHT SALES, INC. )
PLAINTIFF, )
)
VS. )
)
POST MARINE CO., INC., )
DEFENDANT )
)

**PLAINTIFF, L & T YACHT SALES, INC.'S MEMORANDUM
IN SUPPORT OF ITS OPPOSITION TO
SUPPLEMENTAL MOTION TO EXCLUDE EVIDENCE AND MOTION TO
EXCLUDE EVIDENCE**

The Defendant ("Post"), in its several motions and memoranda has attempted to address various evidence, documents and witnesses that it seeks to exclude. The Plaintiff ("L & T") will endeavor, through this memorandum in response, to address each of these, as scattered throughout the multiple pleadings submitted by Post on these issues.

1.   **Mr. Hamilton's testimony on loss of use or enjoyment**

Post has argued that Todd Hamilton should be precluded from testifying as to loss of use or enjoyment of the boat because the plaintiff is a corporation, not Mr. Hamilton. It is undisputed that Todd Hamilton is the sole officer of L & T; that L & T's only asset is the boat in question; and, that Mr. Hamilton provided the money for L & T to purchase the boat. See deposition of Todd Hamilton, (Exhibit G to Defendant's (original) Motion to Exclude (Docket No. 23) pg. 6, ln. 16-20, pg. 7, ln. 7-15, pg. 8, ln. 8-15, pg. 11, ln. 8-

1

10). It is obvious that the boat was purchased by and through L & T for Mr. Hamilton's personal use and recreation. The court has, in several candid discussions, analogized the boat to a summer home. Certainly, if a person owed a real estate through a trust or corporation for tax or liability purposes and lost use of it due to the actionable conduct of another, testimony concerning that lost use would not be prohibited. Mr. Hamilton was never questioned at his deposition regarding the loss of use or enjoyment of the boat, other that the time frame in which it went unused for repairs. Further, he was scarcely questioned as to the cost of insuring, transporting, maintaining or storing the boat (all of which are expenses that would have been incurred whether by a corporation or an individual) during this time frame. There would be no reason to exclude such testimony, regardless of the form to ownership.

2.   **William Catauro, Sr. and documents related to failed sale of the boat**

Prior to discovery of the issues with the gel coat, William Catauro, Sr. had offered to purchase the boat in question for $750,000.00. When he learned of the cracking, he reduced the offer to $625,000.00 if Post would fix the cracking. As a result of the delay in reapirs, the sale fell through. Mr. Catauro eventually purchased another Post boat, manufactured after the use of series 953 gel coat had been discontinued.

L & T's information regarding William Catauro has been known to Post since even prior to the commencement of litigation. The fact that L & T had a buyer for the boat was discussed in August of 2004, relative to L & T's initial contact with Post (see

letter from Lisa Kane dated August 17, 2004 and produced to Post in discovery). In fact, a copy of Mr. Catauro's offer was provided to Post, at their request before Post repaired the boat. Copies of all these correspondence were again subsequently produced in discovery. Mr. Catauro's attempted purchase was also discussed at Mr. Hamilton's deposition p. 31, ln. 11.[1] L & T believes that Mr. Catuaro was also in direct contact with Post concerning both the cracking on L & T's boat when he was interested in purchasing it and relative to his subsequent purchase of another Post boat. Post asked virtually no questions about Mr. Catauro or the attempted sale at Mr. Hamilton's deposition and elected not to depose Mr. Catauro. His identity and anticipated testimony are certainly no surprise to Post and any failure to disclose his name in L & T's initial Rule 26.1 disclosures was harmless and in no way prejudicial to Post.

3.   **Joseph Martorana and Cortez Marks (Post employees)**

In its Memorandum Post noted that L & T listed "for the first time" Joseph Martorana and Cortez Marks (both employees of Post) as witnesses. In its Rule 26(a)(1) disclosures L & T did, in fact, identify "Ken Jensen, Joel Martorama (sic) and/or other employees of Post." L & T subsequently learned the correct spelling of Mr. Martorana's name and determined that Cortez Marks was another Post employee with relevant information. Both Mr. Martorana and Mr. Marks were subsequently deposed. Post has identified Mr. Martorana in its own Pre-Trial Memorandum. There was, in fact, disclosure of Mr. Martorana. Any failure to disclose Mr. Marks was substantially justified. Moreover, there can be no harm or prejudice to Post whatsoever, as both

---

[1] Post never propounded any interrogatories on L & T.

witnesses were deposed and are employees of Post itself.

4.  **Larry Soule of Onset Bay Marine**

Mr. Soule provided L & T with an estimate to repair the boat. The fact that L & T had an estimate for the boat repair was disclosed in L & T's initial Rule 26(a)(1) disclosure on May 24, 2006. L & T did not identify Mr. Soule as a witness in its initial Rule 26(a)(1) disclosures because it did not believe that he had information regarding L & T's claims at that time. L & T subsequently produced the estimate in discovery, which contained Mr. Soule's name and address. His estimate was discussed at Mr. Hamilton's deposition. Post elected not to depose Mr. Soule. Upon L & T's information and belief, Post is familiar with Mr. Soule's marina and his work, as he has worked on other Post boats in the past. Any failure to initially disclose Mr. Soule was substantially justified. His identity was subsequently made known to Post, rendering any prior non-disclosure as harmless. He should be permitted to testify.

5.  **Marty Neimic and Eric Mobilia (proposed rebuttal witness)**

Marty Neimic and Eric Mobilia have been identified by L & T as factual or rebuttal witnesses. At his deposition, Mr. Hamilton testified extensively that many areas of the boat were not repaired when it left Post's facility, and that other areas (both those repaired by Post and those untouched) subsequently cracked. He also testified as to the time and effort that he has personally put in to repairing the boat. Both Mr. Neimic and

4

Mr. Mobilia were discussed at Mr. Hamilton's deposition. Post elected not to depose them.

Since the time of Mr. Hamilton's deposition, Post has argued that "the repairs added value to the boat" and "there is no admissible [expert] testimony that . . . there are any further repairs needed to the boat." Mr. Hamilton's testimony already contradicts this and no expert would be needed on this point. However, Post apparently disputes Mr. Hamilton's testimony as to the condition of the boat and his personal efforts to repair it. Mr. Neimic and Mr. Mobilia have seen the extensive cracking to the boat and Mr. Hamilton's repairs. If Post concedes that the boat was unfinished, in poor condition and that substantial cracking requiring repairs occurred after it left Post's facility, L & T would not call them as witnesses. If Post cross-examines Mr. Hamilton on this issue or its witnesses otherwise seek to contradict this testimony, then they should be allowed to testify. L & T did not consider this to be a disputed issue at the time that it filed its initial disclosures pursuant to Rule 26(a)(1) and did not believe that they had any information relevant to it claims. Further, the deterioration in the areas that were repaired by Post and Mr. Hamilton's own repairs have been on-going and witnessed by Mr. Niemic and Mr. Mobilia after L & T's initial disclosures. Therefore, L & T was substantially justified in not identifying them in May of 2006.

6.     **Juan Beltran and John Kasinski (employees of Viking Yacht Company)**

Post is co-plaintiff with Viking Yacht Company ("Viking") in litigation in the New Jersey Federal District Court against the manufacturer of the series 953 gel coat that

was used on L & T's boat. Mr. Beltran and Mr. Kasinski have been involved with Viking's repairs of its boats and are familiar with the process and cost of repairing boats. In the course of said litigation, excerpts of their deposition became available on-line through PACER, among the voluminous pleadings and exhibits filed in that case. Mr. Beltran was familiar with the process employed by Viking to repairs its affected boats. Viking strips off all of the gel coat, according to Mr. Beltran. Mr. Kasinski was responsible for estimating the cost of repairing the Viking boats. His estimate is $500,000.00 per boat. Their depositions were taken, an excerpt was made available on line and was subsequently discovered by L & T, all well after L & T's initial Rule 26(a)(1) disclosures. Therefore, L & T was substantially justified in not identifying them in May of 2006. Post's counsel also represents Viking in that litigation and he attended both depositions. Therefore, there is no harm or prejudice to Post. If Post wishes to stipulate to their testimony or allow their depositions to be admitted into evidence, there would be no need for L & T to call them as witnesses.

7.      **Corbett Leach (employee of Composite One, LLC)**

Corbett Leach is an employee of Composite One, LLC, the manufacturer of the series 953 gel-coat. In its initial Rule 26(a)(1) disclosures, L & T listed Composite One, LLC as having information regarding its claims. At the time, L & T did not know which employee(s) at Composite One, LLC would have such information. Similar to Viking's employees, excerpts of Mr. Leach's deposition became available through PACER and L & T became aware of his identity well after its initial Rule 26(a)(1) disclosures. At the

time, L & T had never been in contact with the gel coat manufacture. Post's same attorney deposed Mr. Leach in the New Jersey litigation. Therefore, L & T was substantially justified in not identifying him in May of 2006 and there is no harm or prejudice to Post.

8. **Photographs of the boat**

Post apparently objects to admission of photographs of the boat. In its initial Rule 26(a)(1) disclosures, L & T disclosed the Todd Hamilton had documents concerning the boat in his possession. L & T produced documents to Post in the course of litigation. At Mr. Hamilton's deposition, Post's counsel alleged that he did not receive a CD containing pictures of the boat. Post had otherwise acknowledged receipt of all other documents produced by L & T. The photos were subsequently emailed and followed up with in-hand delivery of them to Post's counsel, who has had possession of them for 9 ½ months. L & T's counsel offered to reconvene Mr. Hamilton's deposition relative to the photos that counsel claimed not to have previously received. However, said offer was declined. Thus, even assuming that Post did not receive the initially receive the photographs, it has been in no way prejudiced.

9. **Other evidence of damages**

Post has also alleged, in various pleadings that L & T should be prohibited from admitting "any" evidence of damages. L & T submits that the record and anticipated testimony of identified witnesses, including Todd Hamilton and Ken Jensen's

7

depositions, show proof of L & T's damages. Mr. Hamilton at his deposition testified as to the amount of time and money that he has spent repairing the boat to date. Mr. Jensen is familiar with Post repair of other boats with gel coat issues and the costs thereof and is qualified to testify thereto. Further, he acknowledged that Post is seeking well in excess of $200,000.00 per boat from the gel coat manufacturer to fix each boat. Clearly, then there is relevant, admissible evidence directly from the Defendant as to the cost to repair a boat such as L & T's. Accordingly, there is no basis to exclude "all" evidence as to damages, as requested by Post. Damages are still a question for the jury. It is well settled that they may be proven by inference from known circumstances and need not be proven with mathematical certainty.

For the foregoing reasons, the Defendant's Motion to Exclude Evidence and Supplemental Motion to Exclude Evidence should be denied.

Respectfully submitted,
The Plaintiff,
By its Attorneys,

/s/ *John E. Zajac*
John E. Zajac, Esquire BBO # 560195
170 High Street
Taunton, MA 02780
(508) 821-2552

## CERTIFICATE OF SERVICE

I, John E. Zajac, Esquire this 8th day of February, 2008 have given notice of the within Plaintiff, L & T Yacht Sales, Inc.'s Memorandum in Support of its Opposition to Supplemental Motion to Exclude Evidence and Supplemental Motion to Exclude Evidence, by e-mail service, via the Court's CM/ECF system which sent notification of such filing to Howard M. Brown, Esquire, Bartlett Hackett Feinberg P.C., 155 Federal Street, 9th floor, Boston, MA 02110 and by regular mail, postage pre-paid to Michel O. Weisz, Esquire, BERGER SINGERMAN, 200 South Biscayne Boulevard, Suite 1000, Miami, FL 33131

/s/ *John E. Zajac*
John E. Zajac, Esquire